UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------ x

New York State Professional Process Servers Association, Inc.
on behalf of itself and aggrieved members, and Howard D.
Clarke, and Stephen J. Boyko, Inc. d/b/a Consolidated Claims
Service, Individually, and as Representatives for all similarly
aggrieved New York City Process Server Individuals and Process
Serving Agencies,

14 CV 1266 (DLC) (MHD)

Plaintiffs,

against

City of New York, and Michael T. Bloomberg, Bill de Blasio,
Jonathan Mintz, Alba Pico, Nancy Schindler, Esq., Bruch
Dennis, Esq., James Plotkin, Esq., Nicholas J. Minella, Esq.,
Alvin Liu, Esq., Shannon Bermingham, Jordan Cohen, Esq.,
Philip Kimball, Esq., Lori Barrett, Esq., Megan Roberts, Esq.,
Wanda Day, Esq., Fred Cantor, Esq., Allison Rene Johnson,
Esq., Margarita Marsico, Esq., David Cho, K. James, Wilfredo
Lopez, Esq., Eunice Rivera, G. Pikulina, P. Kumar, Michele
Mirro, Esq., Mitchell B. Nisonoff, Esq., Lee Fawkes, Esq.,
Steven T. Kelly, Esq., Nancy Tumelty, Esq., Susan Kassapian,
Esq., Maurice Nwikpo-Oppong, Esq., Eryn A. DeFontes, Esq.,
Richard Zeitler, Jr., Esq., David Scott Paul, Esq., Shanet Viruet,
Esq., and Judith Gould, Esq., all Individually and in their
capacities as officials and employees of the City of New York,

Defendants.

------------------------------------------------------------------------ x

## CITY DEFENDANTS' MEMORANDUM OF LAW
## IN SUPPORT OF THEIR MOTION TO DISMISS

ZACHARY W. CARTER
Corporation Counsel of the City of New York
Attorney for City Defendants
100 Church Street, Room 5-179
New York, New York  10007
(212) 356-2210

SHERYL R. NEUFELD
MARK W. MUSCHENHEIM
JASMINE M. GEORGES
        *of Counsel*

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................ 1

ARGUMENT ........................................................................................................ 4

    A. THE CITY CHARTER AND THE ADMINISTRATIVE CODE DO NOT LIMIT
       ENFORCEMENT OF THE PROCESS SERVER RULES TO ONLY CRIMINAL
       COURT PROCEEDINGS ............................................................................... 4

    B. PLAINTIFFS' PROCEDURAL DUE PROCESS CLAIM FAILS.................................. 7

    C. PLAINTIFFS' SUBSTANTIVE DUE PROCESS CLAIM FAILS .................................. 9

    D. PLAINTIFFS CANNOT ESTABLISH THAT DEFENDANTS' ACTIONS VIOLATE
       THE RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT ........ 10

          I.      PLAINTIFFS FAIL TO STATE A CLAIM FOR
                 MAIL FRAUD AND WIRE FRAUD ............................................. 11

          II.     PLAINTIFFS FAIL TO STATE A CLAIM FOR
                 OBSTRUCTION OF JUSTICE...................................................... 12

          III.    PLAINTIFFS FAIL TO STATE A CLAIM FOR
                 WITNESS TAMPERING............................................................. 13

          IV.    PLAINTIFFS FAIL TO STATE A CLAIM FOR INTERFERENCE WITH
                 COMMERCE, ROBBERY OR EXTORTION .............................. 14

    E. THE COMPLAINT DOES NOT ALLEGE A VALID CAUSE OF ACTION FOR
       VIOLATION OF FEDERAL ANTITRUST LAW ....................................... 16

    F. THE COMPLAINT FAILS TO STATE A CAUSE OF ACTION
       FOR DEFAMATION ................................................................................. 17

    G. THE COMPLAINT FAILS TO STATE A CAUSE OF ACTION FOR AN EIGHTH
       AMENDMENT EXCESSIVE PENALTY VIOLATION................................ 18

    H. PLAINTIFFS' EQUAL PROTECTION CLAIM FAILS ................................... 20

    I. THE PROCESS SERVER RULES ARE NOT VOID FOR VAGUENESS.................... 21

    J. PLAINTIFFS' CLAIMS AGAINST THE INDIVIDUAL DEFENDANTS BASED ON
       THEIR INVOLVEMENT IN THE DCA ENFORCEMENT PROCESS ARE SHIELDED
       BY ABSOLUTE IMMUNITY ..................................................................... 23

K.  THE COURT SHOULD DECLINE SUPPLEMENTAL JURISDICTION...................... 24

CONCLUSION........................................................................................................24

The City defendants,[1] by their attorney, Zachary W. Carter, Corporation Counsel of the City of New York, submit this memorandum of law in support of their motion to dismiss the complaint.

## PRELIMINARY STATEMENT

This case stems from the pervasive failure of licensed process servers to properly serve legal papers, including engaging in sewer service (deliberately not notifying individuals of lawsuits filed against them, and then filing an affidavit of service that falsely states that service was in fact accomplished). A 2010 New York City Council report sets forth in detail this failure, and notes that when these lawsuits involve debt collection and landlord-tenant disputes against the disabled, elderly, and working poor, enforcement of unknown default judgments through garnishment of wages, and seizure of bank accounts and homes can be catastrophic.[2] As a result of this pervasive failure, in 2010 the City Council amended the New York City Administrative Code ("Administrative Code") provisions applicable to process servers. See Local Law 7 of 2010 ("Local Law 7"), annexed as Exhibit "B." In accordance with these amendments, in 2014 the New York City Department of Consumer Affairs ("DCA") issued a report that detailed DCA's enforcement efforts, and showed that many licensed process servers had failed to comply

---

[1] This office represents the defendant City of New York ("City") and all of the individually named defendants except defendants Michele Mirro and Susan Kassapian. In addition, this office has not been able to confirm whether it will be representing Shanet Viruet, Lee Fawkes, or Enrique Rivera; however, for the same reasons that this motion to dismiss should be granted in favor of the City of New York, it likewise should be granted as to these defendants.

[2] See New York City Council's Committee Report of the Governmental Affairs Division, March 2, 2010, at 4, annexed as Exhibit "A." All Exhibits referenced herein are annexed to the accompanying Declaration of Jasmine M. Georges in Support of City Defendants' Motion to Dismiss, dated April 25, 2014 ("Georges Declaration").

with the applicable legal provisions; for instance, 133 of the 187 process servers that DCA investigated were found to have violated the law.  See Exhibit "A" at 4.

Plaintiffs here attempt to derail DCA's enforcement efforts.  As set forth below, that attempt fails since it is well established that DCA can license process servers, and can also initiate administrative proceedings if these licensees fail to comply with the regulations governing their conduct.  To start, New York City Charter ("Charter") § 2203 sets forth the powers of the DCA, and provides, in pertinent part, that DCA may issue, renew, revoke and suspend licenses.[3]  Charter § 2203(c).  See also Administrative Code § 20-101 et seq.  Charter section 2203 also provides that "upon due notice and hearing" DCA may "impose civil penalties for the violation of any laws or rules the enforcement of which is within the jurisdiction of the department pursuant to this charter, the administrative code or any other general, special or local law."  Charter § 2203(h)(1).[4]  See also Administrative Code § 20-104.

Plaintiffs' complaint stems in large part from their contention that DCA does not have the authority to administratively enforce alleged violations of the Process Server Rules.  Their contention is based on a flawed interpretation of an Administrative Code provision (§ 20-

---

[3] The Administrative Code mandates that process servers obtain a license from DCA.  See Administrative Code § 20-403.  The Administrative Code sets forth procedures relating to process server license applications, renewals and revocations, as well as record keeping and bonding requirements.  Administrative Code §§ 20-404 - 20-409.  In addition, DCA has broad authority to promulgate rules necessary for the proper implementation and enforcement of the provisions governing process servers.  Administrative Code § 20-408.  Regulations promulgated pertaining to process servers are set forth in the Rules of the City of New York ("RCNY").  See 6 RCNY §§ 2-231, et seq.  The Administrative Code and RCNY provisions applicable to process servers are collectively referred to as the "Process Server Rules."

[4] The  Charter explicitly provides various enforcement options in addition to administrative penalties.  See Charter § 2203(h)(1) (the "remedies and penalties provided for in this subdivision shall be in addition to any other remedies or penalties provided for the enforcement of such provisions under any other law including, but not limited to, civil or criminal actions or proceedings").

2

106), and seemingly ignores the fact that the Charter (§ 2203(h)(1)) and the Administrative Code (§§ 20-104(e)(1) & (4)) specifically authorize DCA to administratively enforce the Process Server Rules. Indeed, plaintiffs' interpretation would render these two provisions a nullity, which would violate a black letter law of statutory construction. And based on their flawed interpretation, plaintiffs assert procedural and substantive due process, RICO, anti-trust, defamation and excessive fine claims; they all fail for a host of reasons. Similarly flawed are plaintiffs' claim that the "new" rules (adopted more than two and half years ago) -- which set forth clear requirements for process servers -- are void for vagueness.

In addition to failing on the merits, the complaint is defective since it contains limited (if any) specific information about the plaintiffs or their purported injuries. For instance, while plaintiff New York State Professional Process Servers Association ("NYSPPSA") contends that some of its members are engaged in the process serving business in New York City, it fails to identify any such members. Compl. ¶ 2. And while individual plaintiffs Howard Clarke and Stephen J. Boyko, Inc. ("Boyko") are identified in the caption of the complaint, the complaint itself contains no information about these two plaintiffs.[5]

Finally, in addition to naming the City of New York as a defendant, the complaint names more than 35 individual defendants (in their official and individual capacity) based on their purported involvement in DCA's administrative enforcement proceedings (such as, for instance, Administrative Law Judges ("ALJ")). See, e.g., Compl. ¶ 11 (identifying 13 individual

---

[5] As noted in City defendants' opposition papers to the plaintiffs' application for a temporary restraining order, Clarke was subject to a DCA administrative proceeding that resulted in the revocation of his license (and which he never challenged in a state court pursuant to Article 78 of the New York Civil Practice Law and Rules). See Exhibits "D" and "E." Boyko was also subject to a DCA administrative hearing which was resolved in an April 2012 consent order in which it agreed to voluntarily surrender its process server license. See Exhibit "F."

defendants "assigned to preside over adjudication proceedings") & ¶ 27 (allegations relating to various individual defendants' involvement in the issuances of DCA notices of hearings or notices of violations).  The claims against all these defendants fail since their conduct is shielded by absolute judicial and prosecutorial immunity.

## ARGUMENT

Defendants move pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss plaintiffs' complaint.  In deciding such a motion, a Court may look to the facts alleged in the complaint, documents attached thereto or incorporated by reference therein, and documents that are "integral" to plaintiff's claims, as well as matters of public record and documents in plaintiff's possession or that plaintiff knew of or relied on in bringing suit.  Roth v. Jennings, 489 F.3d 499, 509 (2d Cir. 2007).  A motion to dismiss should be granted where a complaint fails to plead enough facts to state a claim that is plausible on its face.  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007).  Plaintiffs must plead facts plausibly demonstrating all the elements of their claims.  Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009).  The factual allegations must be more than speculative, and show the grounds on which a plaintiff is entitled to relief beyond "labels and conclusions, and a formulaic recitation of the elements of a cause of action." Twombly, 550 U.S. at 555.

**A.    The City Charter and the Administrative Code do not Limit Enforcement of the Process Server Rules to Only Criminal Court Proceedings.**

Plaintiffs' claims are premised in large part on the flawed theory that DCA does not have the authority to conduct civil administrative proceedings against process servers.  See, e.g., Compl. ¶ 35 (defendants did not have "jurisdiction to adjudicate allegations of violations" of rules regulating process servers).  Plaintiffs base their argument on Administrative Code § 20-106, which provides in pertinent part: "Except as otherwise specifically provided in chapter two

4

of this title[6] … any person … who violates [chapter two or an implementing regulation] shall, upon conviction thereof, be punished … by a fine [between twenty-five and] five hundred dollars, or by imprisonment not exceeding fifteen days, or both." Plaintiffs essentially claim that the "[e]xcept as otherwise specifically provided" language of section 20-106 indicates that criminal courts have exclusive jurisdiction over Chapter two licensees.[7] Plaintiffs are wrong.

The "[e]xcept as otherwise specifically provided" language is set forth for the limited purpose of referencing specific chapter two provisions that establish criminal penalties that differ from those in section 20-106(a). For instance, chapter two's provision concerning home improvement contractors provides that it is a misdemeanor, punishable by up to six months imprisonment, to operate a home improvement business without a DCA license. Administrative Code § 20-401(1)(a).[8]

Plaintiffs, however, propose an interpretation that ignores on-point provisions of the Charter and the Administrative Code, the well established New York rule that an agency's interpretation of legal provisions is entitled to deference, and a black letter rule of statutory construction. To start, the Charter provides an array of options to enforce the legal provisions set forth in Administrative Code Title 20 and its implementing regulations. Thus, the Charter provides for civil penalties in administrative proceedings, as well as other remedies and penalties

---

[6] Chapter 2 sets forth the various categories of licenses issued by DCA, including process servers. Administrative Code §§ 20-201 - 20-538.

[7] See, e.g., Pls.' Prelim. Inj. Mem. [Docket # 38], at 13 ("Since [Administrative Code] § 20-106 vest jurisdiction over enforcement of chapter two and the Rules with the criminal courts, unless specifically provided otherwise in chapter two, and chapter two does not provide otherwise with regard to process servers, §20-106 applies, and § 20-104(e) is inapplicable to empower Defendants to exercise jurisdiction over enforcement of process server regulations.").

[8] See also Administrative Code §§ 20-216, 20-275, 20-288, 20-358, 20-472, 20-483(e) & 20-522(a).

"under any other law including … civil or criminal actions or proceedings." Charter § 2203(h)(1).

The Administrative Code similarly provides an array of enforcement options: criminal penalties can be sought under the provision relied on by plaintiffs, Administrative Code § 20-106, or civil administrative penalties pursuant to Administrative Code § 20-104(e).[9] The legislative intent supports this reading: "The council finds further that … to carry out responsibilities for supervising and regulating licensed activities … the commissioner of consumer affairs requires powers, remedies and sanctions which are equitable, flexible and efficient," and that the "sanctions and penalties applied by the commissioner and by the courts for the violation of laws and regulations by [entities] engaging in various licensed activities … must be sufficient to achieve these above-mentioned purposes of licensing." Administrative Code § 20-101(emphasis added).[10] Indeed, section 20-104 explicitly provides that any "of the remedies provided for in this section shall be in addition to any other remedies provided under any other provision of law." Administrative Code § 20-104(e)(5).[11]

Plaintiffs' flawed interpretation of Administrative Code § 20-106 also ignores the well established New York rule that an agency's interpretation of legal provisions is entitled to

---

[9] In addition, Administrative Code § 20-106(d) permits a civil action to enjoin violations of Administrative Code Title 20.

[10] See also Administrative Code § 20-103 ("The provisions of this chapter and chapter two of this title shall be liberally construed in accordance with the legislative declaration of the city council set forth in section 20-101.").

[11] New York courts routinely uphold determinations following a DCA administrative proceeding. See, e.g., Barr v. Dep't of Consumer Affairs, 70 N.Y.2d 821 (1987) (upholding determination assessing fines and license revocation of process server following DCA administrative proceeding). See also Aaron's Const. Corp. v. Gould, 29 Misc. 3d 1216(A), 918 N.Y.S.2d 396 (Sup. Ct. N.Y. Co. 2010) ("DCA is … authorized to … impose civil penalties").

deference.   An agency exercising its statutory authority is presumed to have developed an expertise and judgment that requires the courts to accept the agency judgment, if not unreasonable.  Lynbrook v. N.Y. State Public Employment Relations Bd., 48 N.Y.2d 398, 404 (1979).   Thus, a "presumption of regularity attends to the action of the [agency], and it is incumbent upon the petitioner to overcome that presumption and establish the action to have been without reasonable foundation." Kayfield Constr. Corp. v. Morris, 15 A.D.2d 373, 379 (1st Dep't 1962).  See also Sai Kwan Wong v. Doar, 571 F.3d 247, 262 (2d Cir. 2009) (courts "give 'substantial weight' to an agency's construction of a statute that it is charged with enforcing"); North Haven Bd. of Educ. v. Bell, 456 U.S. 512, 522 n.12 (1982) ("In construing a statute, this Court normally accords great deference to the interpretation, particularly when it is longstanding, of the agency charged with the statute's administration.").

Finally, plaintiffs' flawed interpretation would eliminate the array of enforcement options available to DCA by essentially eliminating Administrative Code § 20-104(e) and portions of Charter § 2203(h)(1).   Doing so violates a well established rule that statutory provisions should be construed as a whole so as not to eliminate a particular provision. Gustafson v. Alloyd Co., 513 U.S. 561, 569 (1995) (courts must interpret a statute "as a symmetrical and coherent regulatory scheme").  See also N.Y. McKinney's Statutes § 97 (noting the "general principle that a statute must be construed as a whole and that its particular parts, provisions, or sections be considered together and with reference to each other have been applied in the construction" of numerous statutory provisions).

**B.     Plaintiffs' Procedural Due Process Claim Fails.**

While they fail to allege any specific instance involving a named individual plaintiff or a member of the organizational plaintiff, plaintiffs nonetheless claim that their procedural due process rights were violated.  See, e.g., Compl. ¶¶ 57, 59, 61, 62.  Plaintiffs

appear to allege due process violations stemming from their claim that DCA did not have jurisdiction to adjudicate alleged violations by process servers.  Id. at ¶ 61.  As set forth in point A above, that claim has no merit.  Nor is their any merit to plaintiffs' claim that DCA's adjudications of alleged violations by process servers violates procedural due process.

Due process is "flexible and calls for such procedural protections as the particular situation demands . . . a recognition that not all situations calling for procedural safeguards call for the same kind of procedure."  Morrissey v. Brewer, 408 U.S. 471, 481 (1972).  Generally, "something less than a full adversarial hearing is sufficient prior to adverse administrative action."  Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 545 (1985).[12]  Here, DCA's rules provide process servers with due process.  After being notified of charges by DCA, a process server can contest those charges in an administrative hearing before an ALJ, and can administratively appeal an adverse ALJ determination.  See Administrative Code §§ 20-409 & 20-409.1; Chapter 6 of the RCNY (DCA Administrative Hearings).

Plaintiffs Clarke and Boyko availed themselves of these procedures.  Plaintiff Clarke administratively appealed an ALJ's Decision and Order which, after notice and a hearing, imposed a fine of $53,000 and revoked Mr. Clarke's process server license.  See Exhibit "D." On September 10, 2013 that appeal was denied by DCA's Appeals Judge David Wolfe, and Mr. Clarke did not contest this final administrative determination in a CPLR Article 78 proceeding.

---

[12] In evaluating a due process claim, the role of the federal courts is not to determine whether a local agency complied with every applicable state and local legal provision, but rather "to determine only whether the state has provided adequate avenues of redress to review and remedy arbitrary action.  Section 1983 is not a means for litigating in a federal forum whether a state or local administrative decision was wrong or even whether it was arbitrary and capricious."  Alfaro Motors Inc. v. Ward, 814 F.2d 883, 888 (2d Cir. 1987) (citations omitted)).  Consequently, to the extent plaintiffs argue that DCA acted contrary to local law, those assertions do not ipso facto

See Exhibit "E."  Plaintiff Boyko was also the subject of an administrative proceeding at DCA, which was resolved by way of an April 2012 Consent Order.  See Exhibit "F."  Accordingly, the only process servers actually identified in the plaintiffs' papers were afforded the due process which they erroneously claim is lacking.

Plaintiffs also claim -- again without any specificity --  that their due process rights were violated since DCA did not provide a hearing before denying process server license renewal applications.[13]  Compl. ¶¶ 45, 69.  Plaintiffs' claim fails since they cannot establish a property interest in the renewal of a license, the threshold to maintaining a due process claim.  See Gabris v. TLC, 2005 U.S. Dist. Lexis 23391, *7 (S.D.N.Y. Oct. 6, 2005) (there is "no property interest in a prospective application for a license to be issued by a state or municipal agency"); Big Apple Food Vendors' Ass'n v. City of New York, 168 Misc.2d 483, 490 (Sup. Ct. N.Y. Co. 1995), aff'd 228 A.D.2d 282, app. dismissed 88 N.Y.2d 1064 (1996) (due process "does not guarantee that a license … may be held in perpetuity).

## C.    Plaintiffs' Substantive Due Process Claim Fails.

Plaintiffs' substantive due process claims (presumably stemming from their misguided lack of jurisdiction allegation) fail as well.  Compl. ¶¶ 56, 57.  "[T]he doctrine of substantive due process prevents the deprivation of life, liberty or property for arbitrary reasons."  See Mallinckrodt Med., Inc. v. Assessor of Argyle, 292 A.D. 2d 721; 740 N.Y.S.2d 467 (3d Dep't 2002).  To state a substantive due process claim, a party must demonstrate that the government acted in an arbitrary, conscience-shocking or constitutionally-oppressive manner and

---

state a cognizable claim under the due process clause.  See McDarby v. Dinkins, 907 F.2d 1334, 1337 (2d Cir. 1990).

[13] Neither individual plaintiff applied for a renewal application, and plaintiffs fail to identify any member of the organizational plaintiff that applied and was denied a license.

that such state action has deprived them of a protected property interest.  See Big Apple Food Vendors' Ass'n, 168 Misc.2d at 490; Kaluczky v. City of White Plains, 57 F.3d 202, 211 (2d Cir. 1995); Story v. Green 978 F.2d 60, 62 (2d Cir. 1992).  As noted, DCA had the authority to enact regulations relating to process servers, as well as the authority to administratively adjudicate alleged violations of these regulations.   Administrative Code § 20-408; Point A supra. Consequently, when plaintiffs' lack of jurisdiction claims are set aside, plaintiffs fail to allege that the City defendants acted in an arbitrary, conscious-shocking or constitutionally-oppressive manner.

**D.      Plaintiffs Cannot Establish That Defendants' Actions Violate the Racketeer Influenced and Corrupt Organizations Act.**

Plaintiffs also allege that they were injured by the City defendants' violation of the Racketeering Influenced and Corruption Organizations Act ("RICO"), 18 U.S.C. §§ 1961 et seq.  See Compl. ¶¶ 82-128.  As an initial matter, a RICO claim cannot lie against defendant City of New York because a municipality cannot form the intent that is required to establish a RICO predicate act.  Liang v. City of New York, 2013 U.S. Dist. Lexis 136795, *39 (E.D.N.Y. 2013). "[W]hile a municipality is undoubtedly a 'person' within the meaning of 18 U.S.C. § 1961(3), it is incapable of forming the requisite criminal intent for RICO liability."   Frooks v. Town of Cortlandt, 997 F. Supp. 438, 457 (S.D.N.Y. 1998).  Furthermore, because the City cannot be held liable in a RICO case as a matter of law, its employees also may not be held liable in their official capacities.  Liang, 2013 U.S. Dist. Lexis 136795, *40.  Accordingly, to the extent that the individual City defendants are sued in their official capacities, such claims must be dismissed. Moreover, as set forth in Point J below, the individual defendants involved in enforcing the Process Server Rules have absolute immunity from suits for damages allegedly arising from such involvement.

Even if plaintiffs could assert a RICO claim against the City defendants, plaintiffs' allegations of various crimes as predicate acts to establish a RICO violation fail as a matter of law.[14]  Here, plaintiffs allege five acts as predicate acts of racketeering activity: (1) mail fraud, 18 U.S.C. § 1341 (Compl. ¶¶ 95-98, 107); (2) wire fraud, 18 U.S.C. § 1343 (Compl. ¶¶ 95-98, 107, 109); (3) obstruction of justice, 18 U.S.C. § 1503 (Compl. ¶ 94); (4) witness tampering, 18 U.S.C. § 1512 (Compl. ¶¶ 92, 102, 103); and (5) interference with commerce, robbery, or extortion, 18 U.S.C. § 1951 (Compl. ¶ 111).  Although a violation of these provisions may constitute predicate acts, plaintiffs fail to allege facts sufficient to state a violation of any of the above-referenced statutes.

### i.    Plaintiffs Fail to State a Claim for Mail Fraud and Wire Fraud.

Plaintiffs claim that defendants committed mail and wire fraud in the course of their alleged scheme to defraud plaintiffs.  See Compl. ¶¶ 82-128.  The federal mail and wire fraud statutes criminalize the use of those means of transmission in furtherance of "any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises."  See 18 U.S.C. §§ 1341, 1343.  Mail and wire fraud allegations are subject to enhanced pleading requirements.  Rule 9(b) of the Federal Rules of Civil Procedure ("Rule 9(b)"), which applies to RICO claims involving fraud, provides that the complaint must: "(1) specify the statements that the plaintiff contends were fraudulent, (2)

---

[14] To prove a criminal RICO violation, a plaintiff must establish seven elements: "(1) that the defendant (2) through the commission of two or more [predicate] acts [set forth in § 1961] (3) constituting a 'pattern' (4) of 'racketeering activity' (5) conducts or participates in (6) an 'enterprise' (7) the activities of which affect interstate or foreign commerce.'" Berk v. Tradewell, Inc., 2003 U.S. Dist. Lexis 12078 (S.D.N.Y. 2003) (citing Moss v. Morgan Stanley, Inc., 719 F.2d 5, 17 (2d Cir. 1983)).  Proof of a civil RICO claim requires the additional showing that the plaintiff suffered: i) injury to its business or property; ii) "by reason of" the RICO violation.  See

identity the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." Shields v. Citytrust Bancorp., Inc., 25 F.3d 1124, 1128 (2d Cir. 1994) (quoting Mills v. Polar Molecular Corp., 12 F.3d 1170, 1175 (2d Cir. 1993)). Furthermore, where, as here, there are multiple defendants, Rule 9(b) requires that the plaintiff allege facts specifying each defendants' contribution to the fraud. See DiVittorio v. Equidyne Extractive Industries, Inc., 822 F. 2d 1242, 1247 (2d. Cir. 1987) ("Where multiple defendants are asked to respond to allegations of fraud, the complaint should inform each defendant of the nature of his alleged participation in the fraud.").

Here, plaintiffs failed to plead their allegations of mail and wire fraud with sufficient particularity under Rule 9(b). Specifically, plaintiffs failed to identify the content, time, place, and speaker of each alleged mailing or wire transmission, and consequently, fail to establish mail and wire fraud as predicate criminal acts for a RICO claim.

### ii. Plaintiffs Fail to State a Claim for Obstruction of Justice.

Plaintiffs claim that "defendants' subpoenas prohibiting Plaintiffs from disclosing the existence of the subpoenas to anyone were intended to prevent Plaintiffs from communicating any complaints against Defendants to law enforcement officials in violation of 18 U.S.C. 1503." Compl. ¶ 94. Pursuant to 18 U.S.C. § 1503, it is an obstruction of the due administration of justice to intentionally influence or injure a juror or officer "in or of any court of the United States." To constitute an offense under 18 U.S.C. § 1503, the alleged criminal act must relate to a proceeding in a federal court of the United States. See United States v. Biaggi, 853 F.2d 89, 104 (2d Cir. 1988); Kashelkar v. Rubin & Rothman, 97 F. Supp. 2d 383, 392

---

Laborers Local 17 Health and Benefit Fund v. Philip Morris, Inc., 191 F.3d 229, 235-36 (2d Cir. 1999).

(S.D.N.Y. 2000) ("the federal obstruction of justice statute only applies to proceedings in federal court") (citation omitted).   The alleged obstruction of justice in this case, which involves subpoenas issued by DCA in administrative proceedings, is not a cognizable violation of 18 U.S.C. § 1503, since there was no pending federal court proceeding where an officer or jury could be unduly influenced.   Therefore, plaintiffs failed to establish obstruction of justice as a predicate act for RICO purposes.

### iii.   Plaintiffs Fail to State a Claim for Witness Tampering.

Plaintiffs allege that defendants' subpoenas prohibiting plaintiffs from disclosing the existence of the subpoenas (Compl. ¶ 92), and written or verbal directives to DCA ALJs to find in favor of DCA in adjudication proceedings against plaintiffs, and to impose excessive fines (Compl. ¶¶ 102 and 103) constitute witness tampering, in violation of 18 U.S.C. § 1512. Title 18 U.S.C. § 1512 proscribes using physical force, threats, or persuasion to tamper with a witness in an "official proceeding" or to hinder, delay or prevent the communication to a law enforcement official or federal judge of information relating to the possible commission of a federal offense.   See 18 U.S.C. § 1512.   The term "official proceeding" as used in 18 U.S.C. § 1512 is defined in 18 U.S.C. § 1515 as "a proceeding before a judge or court of the United States, a United States magistrate [United States magistrate judge], a bankruptcy judge, a judge of the United States Tax Court, a special trial judge of the Tax Court, a judge of the United States Claims Court [United States Court of Federal Claims], or a Federal grand jury."   18 U.S.C. § 1515(a)(1)(A).   The statute does not apply to proceedings in state courts or before state or city administrative bodies, as they are not "official proceedings."   See Miller v. Cappinello, 2007 U.S. Dist. Lexis 86395, *22-23 (S.D.N.Y. 2007); Park South Assoc. v. Fischbein, 626 F. Supp. 1108, 1113 (S.D.N.Y.1986), aff'd, 800 F.2d 1128 (2d Cir. 1986).

Here, plaintiffs do not allege that any "official proceeding" was pending at the time that the alleged witness tampering occurred.  Rather, plaintiffs specifically reference DCA adjudication proceedings throughout the complaint.  In addition, plaintiffs do not allege with any particularity that any of the named defendants hindered, delayed, or prevented the communication of information to any law enforcement official or federal judge relating to any federal offense.  Consequently, plaintiffs may not rely on alleged violations of 18 U.S.C. § 1512 as predicate acts to support a RICO claim.

    iv.    **Plaintiffs Fail to State a Claim for Interference With Commerce, Robbery or Extortion.**

Plaintiffs assert that defendants' actions "were intended to collect unlawful debt from Plaintiffs by creating fear of economic harm and loss to Plaintiffs in furtherance of Defendants' scheme to [sic] in violation of 18 U.S.C. 1951 and 18 U.S.C. 1961 et seq."  Compl. ¶ 111.  Under the Hobbs Act, 18 U.S.C. § 1951, it is an offense to attempt or conspire to obstruct, delay or affect commerce, or the movement of any article or commodity in commerce, in any way or degree, by means of robbery or extortion. See 18 U.S.C. § 1951. A person commits extortion by obtaining property from another, with his consent, which consent was induced by the wrongful use of actual or threatened force, violence, or fear, or under color of official right. See 18 U.S.C. § 1951. Extortion "under color of official right" is established by a public official's wrongful use of office. See United States v. Margiotta, 688 F.2d 108, 130 (2d Cir. 1982); City of New York v. Joseph L. Balkan, Inc., 656 F. Supp. 536, 546 (E.D.N.Y. 1987). Further, extortion under color of official right is committed where "the victims were motivated to make payments as a result of the defendant's control or influence over public officials and that the defendant was aware of this motivation." United States v. McDonough, 56 F.3d 381, 388 (2d Cir. 1995) (citing United States v. Margiotta, 688 F.2d at 132-33).

14

Plaintiffs allege that defendants' extortionate threats are contained in: (1) subpoenas ordering plaintiffs not to disclose the existence of the subpoenas; (2) letters delivered to plaintiffs stating that plaintiffs' records violated the Process Server Rules, and demanding payment of fines of thousands of dollars and execution of "Assurance of Discontinuance" agreements and/or "Consent Orders" as a condition of license retention or renewal;[15] (3) "Notice of Hearing" and/or "Notice of Violations" containing false representations of Defendants' legal authority and jurisdiction to enforce and adjudicate the Process Server Rules; and (4) "Decisions and Orders" after hearing and appeal of administrative proceedings presided over by ALJs who allegedly lacked jurisdiction. See Compl. ¶ 113.

As an initial matter, plaintiffs' claims fail because they do not plead their allegations of extortion with sufficient particularity under Rule 9(b).  Indeed, plaintiffs have failed to identify the content, time, place, and speaker of each alleged extortionate threat. Moreover, plaintiffs do not put forth allegations of duress sufficient to support a claim of extortion as a matter of law.  Defendants' actions were merely the exercise of defendants' authority under the Process Server Rules, which, as demonstrated above, are entirely legal. Threats to act in accordance with one's legal rights do not and cannot constitute extortion.  See Feeley v. Whitman Corp., 65 F. Supp. 2d 164, 174 (S.D.N.Y. 1999); Teachers Insur. Annuity Assoc. v. Wometco Enter., Inc., 833 F. Supp. 344, 348 (S.D.N.Y. 1993).  Here, the City defendants' authority to enforce the Process Server Rules and impose fines and penalties resulting from violations of the Process Server Rules is well-established in Point A above.

---

[15] Plaintiffs' challenge to any Consent Orders or other agreements should be dismissed, as parties waive their rights to litigate issues when they enter into a Consent Order.  Cf. United States v. Armour & Co., 402 U.S. 673, 681 (1971) (when entering into a consent decree, the "parties

Thus, any actions by the City defendants pursuant to the Process Server Rules cannot constitute a predicate RICO extortion act.   As plaintiffs cannot establish any predicate criminal acts, plaintiffs fail to state a cause of action for a RICO violation, and plaintiffs' RICO claim should be dismissed.

**E.      The Complaint Does Not Allege a Valid Cause of Action for Violation of Federal Antitrust Law.**

In addition to its RICO claim, plaintiffs allege antitrust violations against defendant City of New York, pursuant to 15 U.S.C. § 15, section 4 of the Clayton Antitrust Act. See Compl. ¶¶ 145-168.  Plaintiffs' claims fail as a matter of law.  First, an association has no standing to assert the rights of its members under the antitrust laws.  See Nassau County Assoc. of Insurance Agents, Inc. v. Aetna Casualty & Surety Co., 345 F. Supp. 645, 647 (S.D.N.Y. 1972); Cordova v. Bache & Co., 321 F. Supp. 600, 604 (S.D.N.Y. 1970).  Therefore, plaintiff NYSPPSA cannot state a cause of action against City defendant for antitrust violations.

In addition, the individual plaintiffs cannot state a cause of action for antitrust violations as they have not suffered an antitrust injury.  To state an antitrust claim, a plaintiff must show: "(1) 'that the defendants' conduct caused [plaintiffs'] injury,' and (2) that such injury is an 'antitrust injury, which is to say injury of the type the antitrust laws were intended to prevent and that flows from what makes defendants' acts unlawful.  The injury should reflect the anticompetitive effect either of the violation or of anticompetitive acts made possible by the violation.'"  Altman v. Bayer Corporation, 125 F. Supp. 2d 666, 673 (S.D.N.Y. 2000) (citing Balaklaw v. Lovell, 14 F. 3d 793, 797 (2d Cir. 1994)).  Further, the Second Circuit requires a private antitrust plaintiff to allege that it suffered (1) "a special kind of antitrust injury" and (2)

---

waive their right to litigate the issues involved in the case and thus save themselves the time, expense, and inevitable risk of litigation").

that it is a suitable plaintiff to pursue the alleged antitrust violations.  See Gatt Communications, Inc. v. PMC Associates, LLC, 711 F. 3d 68, 76 (2d Cir. 2013).  Injuries resulting from competition alone are not sufficient to constitute antitrust injuries.  See Balaklaw, 14 F. 3d at 797. "It is not enough for the actual injury to be 'causally linked' to the asserted violation." Gatt Communications, 711 F. 3d at 76.

Here, plaintiffs allege that they have suffered from "payment of fines and penalties, and loss of business profits" as a result of the City's enforcement of the Process Server Rules.  Compl. ¶ 159.  This is not the type of injury that the antitrust laws were meant to prevent, nor is it the kind of injury that is actionable under the Clayton Act.  Plaintiffs' alleged lost profits and payments of fines and penalties is not an injury that flows from defendants' purportedly unlawful acts.  Rather, plaintiffs' injuries flow from plaintiffs' failure to comply with the Process Server Rules, which, as demonstrated in Point A above, are entirely lawful, rational, and reasonable.  All plaintiffs have alleged is that they have been harmed as individual competitors in the process server market.  That is not enough to confer antitrust standing under the Clayton Act.

**F.      The Complaint Fails to State a Cause of Action for Defamation.**

Plaintiffs purport to assert a cause of action for defamation pursuant to New York State law.  See Compl. ¶¶ 129-144.  To state a cause of action for defamation, the plaintiff must allege: (a) an oral defamatory statement; (b) of or concerning the plaintiff; (c) that was published by the defendant to a third party; and (d) that caused injury to the plaintiff.  See Weldy v. Piedmont Airlines, Inc., 985 F.2d 57, 61-62 (2d Cir. 1993); 43A N.Y. Jur. Defamation and Privacy § 4 (2003).

The complaint should be dismissed for failing to plead with particularity a cause of action for defamation.  According to Rule 3016(a) of the CPLR, in a cause of action for defamation "the particular words complained of  shall be set forth in the complaint, but their

application to the plaintiff may be stated generally." See e.g. Sinrod v. Stone, 20 A.D.3d 560, 562 (2d Dep't 2005). Here, plaintiffs fail to set forth the particular words which plaintiffs claim are defamatory. The complaint, therefore, does not satisfy the specificity requirement of CPLR 3016(a). Moreover, to the extent that the complaint alleges conduct that occurred more than one year prior to the commencement of this action in support of the claim for defamation, the claim is time-barred by CPLR 215(3). See Spinale v. Guest, 270 A.D.2d 39, 40 (1st Dep't 2000). Finally, to the extent that the claims are premised on plaintiffs' theory that DCA could not civilly adjudicate process server violations, that too fails for the reasons set forth in Point A above.

**G.     The Complaint Fails to State a Cause of Action for an Eighth Amendment Excessive Penalty Violation.**

Plaintiffs allege that defendants' imposition and collection of fines "were and are so disproportionate to the offenses charged so as to shock the moral sense of the community in violation of Plaintiffs' constitutional right to due process under the Eighth and Fourteenth Amendments to the United States Constitution." Compl. ¶ 68. "The Excessive Fines Clause protects individuals against abusive penalties imposed by the government." United States v. Emerson, 107 F.3d 77, 80 (1st Cir. 1997). "A fine is unconstitutionally excessive if (1) the payment to the government constitutes punishment for an offense, and (2) the payment is grossly disproportionate to the gravity of the defendant's offense." United States v. Mackby, 243 F.3d 1159, 1167 (9th Cir. 2001) citing United States v. Bajakajian, 524 U.S. 321, 327-28 (1998).

While not mentioned in the complaint, a fine was imposed on plaintiff Clarke following an administrative proceeding. Plaintiffs' Eighth Amendment challenge is otherwise

not ripe for review.[16]  Here, plaintiffs have not made any allegations regarding fines or penalties specifically imposed against them, and thus, their Eighth Amendment claims are otherwise not ripe and should be dismissed.

On the merits, as the Court held in <u>Kirsh v. City of New York, et.al.</u>, 1995 U.S. Dist. Lexis 8896, *24 (S.D.N.Y. June 27, 1995), "[t]he Eighth Amendment does not apply to sanctions intended to secure compliance..."  Moreover, there is no violation of the Eighth Amendment when an individual has the ability to mitigate the accrual of fines.  <u>See Kraebel v. Michetti</u>, 1994 U.S. Dist. Lexis 11796, *32 (S.D.N.Y. 1994), <u>aff'd unpublished decision</u>, 53 F.3d 1063, <u>citing Seril v. N.Y. State Div. of Housing & Community Renewal</u>, 613 N.Y.S.2d 157, 157 (1st Dep't 1994).  In addition, in determining whether an assessed fine is commensurate with the gravity of the offense, one of the factors to be considered is whether the amount of the fine is required to achieve the desired deterrence.  <u>See Mackby</u>, 243 F.3d at 1167.

Here, the penalties set forth in the Process Server Rules do not trigger an Eighth Amendment analysis as they are designed to secure compliance with the applicable provisions of the Administrative Code and RCNY regarding process serving in New York City.  Moreover, the Process Server Rules are designed to deter process servers from engaging in sewer service or inadequate record keeping.  Even assuming <u>arguendo</u> that the penalties contemplated by the Process Server Rules are a form of punishment, the penalties are not "grossly disproportionate to the gravity of the offense."  <u>Mackby</u>, 243 U.S. at 1167.  "Judgments about the appropriate punishment for an offense belong in the first instance to the legislature."  <u>Bajakajian</u>, 524 U.S. at 335. The fines established by DCA are not excessive given the history of blatant disregard of the

---

[16] "Eighth Amendment challenges are not ripe until the imposition, or immediately impending imposition, of a challenged punishment or fine."  <u>Cheffer v. Reno</u>, 55 F.3d 1517, 1523 (11th Cir.

regulations applicable to process servers. See City Council Report, Exhibit "A." Accordingly, plaintiffs' claim that defendants' imposition and collection of fines violates the Eighth Amendment should be dismissed.

## H.  Plaintiffs' Equal Protection Claim Fails.

Plaintiffs claim that their equal protection rights are violated since they must pass an examination to obtain a process server license while others licensed by DCA are not required to do so. Compl. ¶¶ 48 - 54. Their claim fails. "The Equal Protection Clause requires that the government treat all similarly situated people alike."[17] Harlen Assocs. v. Village of Mineola, 273 F.3d 494, 499 (2d Cir. 2001) (citing City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985)). Since process servers are not members of any suspect class, and the examination provision, Administrative Code 20-406(c), does not impinge upon fundamental rights, in order to withstand an equal protection challenge, the provision need only further a legitimate state interest. Cleburne, 473 U.S. at 439-441 ("Unless a classification warrants some form of heightened review because it jeopardizes the exercise of a fundamental right or categorizes on the basis of an inherently suspect characteristic, the Equal Protection Clause requires only that the classification rationally further a legitimate state interest."). A statute which is subject to rational basis scrutiny "is presumed to be constitutional, and the party challenging the statute bears the heavy burden of proving that there is no reasonably conceivable state of facts which rationally supports the distinction," D'Amico v. Crosson, 93 N.Y.2d 29 (1999), citing Heller,

---

1995).

[17] Preliminarily, process servers are not similarly situated to others licensed by DCA, such as, for instance, newsstand operators or retail cigarette dealers. Administrative Code, Title 20, Chapter 2.

509 U.S. at 320 (1993); Henry v. Milonas, 91 N.Y.2d 264, 268 (1998); Maresca v. Cuomo, 64 N.Y.2d 242, 250 (1984), app. dismissed 474 U.S. 802.

Plaintiffs cannot plausibly allege that there was no rational basis when the examination provision was adopted.  To start, the extensive legislative history supporting the adoption of the Process Server Rules demonstrates a rational basis for their adoption, including the examination provision.  The City Council first authorized DCA to license process servers when it enacted Local Law 80 of 1969.   Then, as now, process servers were found to be engaging in questionable process serving practices, and the City Council granted DCA broad authority "to promulgate any rules and regulations deemed necessary for the proper implementation and enforcement of the provisions governing process servers."  Administrative Code § 20-408.  See, e.g., United States v. Wiseman, 445 F.2d 792 (2d Cir.), cert. denied, 404 U.S. 967 (1971) (upholding convictions of process servers).  The adoption of the examination provision, which requires applicants to demonstrate an understanding of proper service of process, was a rational response to the pervasive problems identified in the City Council report. See Exhibit "A."

## I.     The Process Server Rules Are Not Void for Vagueness.

Plaintiffs allege that Administrative Code § 20-406.2 and 6 RCNY §§ 2-233, 2-233a, 2-233b, 2-234a, 2-235, and 2-236 are vague on their face and/or as applied to plaintiffs because they "fail to provide notice of required conduct and/or forbid acts in terms so vague that persons of ordinary intelligence must guess at its meaning and differ as to its application . . . ." Compl. ¶¶ 148-149.[18]  There is no merit to this allegation.[19]

---

[18] The complaint has two sets of paragraphs numbered 146 - 152.  The cited paragraphs appear on pages 42-44 of the complaint.

A law is unconstitutionally vague if it fails to provide a person of ordinary intelligence fair notice of what is prohibited.  See United States v. Rybiki, 354 F.3d 124, 132 (2d Cir. 2003).  There is certainly no vagueness as to the responsibilities of process serving agencies as set forth in Administrative Code § 20-406.2.  Pursuant to that section, process serving agencies shall: "(a) Comply with all applicable state and federal laws;" and "(b) Be legally responsible for any failure to act in accordance with the laws and rules governing service of process by each process server to whom it has distributed, assigned or delivered process for service."  It is thus clear that process serving agencies are responsible for ensuring that their process servers comply with the Process Server Rules and all applicable state and federal laws.

Moreover, the Process Server Rules to which plaintiffs object, which were adopted and became effective approximately three years ago in 2011, clearly and simply set forth what they prohibit and require.  Specifically, 6 RCNY §§ 2-233 sets forth record keeping requirements for process servers consistent with the provisions of 89-cc of the General Business Law; 6 RCNY § 2-233a sets forth the requirements for maintaining electronic records; 6 RCNY

---

[19] Plaintiffs also claim that DCA violated a provision of the New York City Administrative Procedure Act, Charter § 1043(d)(1)(c), because of technical irregularities in the notice of adoption that accompanied pertinent regulations that were adopted and became effective in 2011. Compl. at 42, ¶¶ 146 - 148. (The regulations are collectively attached as Exhibit "C.") Even if accurate, such a claim does not indicate that plaintiffs' federal rights were violated. See, e.g., McDarby v. Dinkins, 907 F.2d 1334, 1337 (2d Cir 1990) (city pension fund's "failure to adhere to [Administrative Code] requirements does not, without more, constitute a deprivation of procedural due process under the federal constitution"). Moreover, plaintiffs' time to challenge any technical infirmities via state law has long since passed. Such challenges are governed by the four month statute of limitations applicable to New York CPLR Article 78 proceedings. CPLR 217(1). New York County Lawyers' Ass'n v. Bloomberg, 30 Misc. 3d 921 (Sup. Ct. N.Y. Co. 2011) (applying Article 78 statute of limitations to challenge to adoption of City regulations). Finally, Charter § 1043(d)(3) provides that this "subdivision shall not be construed

§ 2-233b sets forth the requirements for carrying a device to establish an electronic record of service; 6 RCNY § 2-234a sets forth the duties of process serving agencies; 6 RCNY § 2-235 sets forth the duties of a process server to report a process serving agency that assigns them service when applying for a process server license or renewal of a license; and 6 RCNY § 2-236 sets forth the requirements for the preparation of affidavits of service.  The Process Server Rules' terms are neither obscure nor arcane, and persons of common intelligence can understand and conform their behavior to the requirements of the law.  Accordingly, the Process Server Rules are not void for vagueness on their face or as applied to plaintiffs.

**J.  Plaintiffs' Claims Against the Individual Defendants Based on Their Involvement in the DCA Enforcement Process are Shielded by Absolute Immunity.**

Finally, plaintiffs' claims against the individual defendants based on their purported involvement in the DCA enforcement process must be dismissed, as their alleged conduct is shielded by absolute judicial immunity.  See Montero v. Travis, 171 F.3d 757, 760 (2d Cir. 1999); Nash v. Califano, 613 F.2d 10, 15 (2d Cir. 1980) ("ALJs enjoy absolute immunity from liability in damages for actions taken in their quasi-judicial capacity"); Imbler v. Pachtman, 424 U.S. 409 (1976) (absolutely immunity for prosecutor).  "It is . . . well established that officials acting in a judicial capacity are entitled to absolute immunity against § 1983 actions . . . this immunity also extends to administrative officials performing functions closely associated with the judicial process because the role of the 'hearing examiner or administrative law judge . . . is 'functionally comparable' to that of a judge.'"  Montero, 171 F.3d at 760 (quoting Butz v. Economou, 438 U.S. 478, 513 (1978)).  Furthermore, the absolute judicial immunity of ALJs and administrative officials "is not overcome by allegations of bad faith or malice," nor can an ALJ

---

to create a private right of action to enforce its provisions" and that inadvertent "failure to comply with this subdivision shall not result in the invalidation of any rule."

or administrative official be deprived of immunity "because the action he took was in error or was in excess of his authority." Mireles v. Waco, 502 U.S. 9, 11, 13 (1991).  Since plaintiffs allege that the individual defendants violated plaintiffs' rights while acting in their judicial or prosecutorial capacities (e.g. Compl. ¶¶ 11, 14), the named defendants are shielded by absolute immunity.  Accordingly, the claims against these defendants must be dismissed.

**K.     The Court Should Decline Supplemental Jurisdiction.**

To the extent that plaintiffs' complaint can be construed to assert any state law claims that are not dismissed by this Court, it should decline to exercise supplemental jurisdiction pursuant to 28 U.S.C. § 1367(c) since this case is in its early stage.  See Kolari v. New York-Presbyterian Hosp., 455 F.3d 118, 122 (2d Cir. 2006) (when "federal claims are eliminated in the early stages of litigation, courts should generally decline to exercise pendent jurisdiction over remaining state law claims").

**CONCLUSION**

For the reasons set forth above, plaintiffs' complaint should be dismissed.

Dated:      New York, New York
            April 25, 2014

ZACHARY W. CARTER
Corporation Counsel of the
  City of New York
Attorney for City Defendants
100 Church Street
New York, New York 10007
(212) 356-2210

By:   _Jasmine Georges_
      Jasmine M. Georges (JG-5412)
      Assistant Corporation Counsel

24

SHERYL R. NEUFELD
MARK MUSCHENHEIM
JASMINE M. GEORGES,
    Of Counsel