# EXHIBIT

# A

Staff:     Lacey C. Clarke,
           Legislative Counsel

           Damien M. Butvick,
           Legislative Policy Analyst



### THE COUNCIL

**Committee Report of the Governmental Affairs Division**
Robert Newman, Legislative Director
Alix Pustilnik, Deputy Director, Governmental Affairs

**COMMITTEE ON CONSUMER AFFAIRS**
Hon. Karen Koslowitz, Chair

**March 2, 2010**

**Proposed Int. No. 6-A:**   By Council Member Garodnick, Brewer, Gonzalez, James, Koppell, Koslowitz, Lappin, Palma, Seabrook and Vallone, Jr.

**TITLE:**   A Local Law to amend the administrative code of the city of New York, in relation to process servers.

1

## I.   INTRODUCTION

On Tuesday, March 2, 2010, the Committee on Consumer Affairs, chaired by Council Member Karen Koslowitz, will conduct its first hearing on Proposed Introductory Bill Number 6-A ("Proposed Intro. 6-A"), a Local Law to amend the administrative code of the city of New York, in relation to process servers. Those invited to testify include the Department of Consumer Affairs ("DCA"), consumer advocacy groups, the New York Civil Liberties Union, representatives from the process server industry and other interested parties.

## II.   BACKGROUND

According to a 2008 study by MFY Legal Services, the number of consumer debt cases filed in the New York City Civil Court has increased rapidly in recent years. In 2007, there were about 598,000 cases brought in New York City Civil Court, the majority of which were consumer debt collection filings. This represents a threefold increase from the number of cases brought in 2000.[1] According to the Urban Justice Center, consumer debt collection cases filed against New Yorkers totaled almost $1 billion in 2006 alone.[2] Despite the high number of cases, over 90 percent of defendants in consumer debt cases never appear in court, which invariably results in a default judgment in favor of the plaintiff.[3] Approximately 80 percent of the consumer debt cases filed in New York City Civil Court end in default judgments.[4] For the defendants, against whom the judgments

---

[1] "Justice Disserved," MFY Legal Services, Inc., June 2008, Available at www.mfy.org/Justice_Disservde.pdf, Accessed on November 3, 2009.
[2] Singh, A., "Debt Weight – The Consumer Credit Crisis in New York City and Its Impact on the Working Poor," Urban Justice Center, October 2007, at 1.
[3] *Supra* note 2, at 9.
[4] *Supra* note 2, at 1.

2

are often made, their financial burden includes not only repayment of the debt owed but additional penalties, interest, attorney fees and other associated legal fees.[5] In order to recuperate this money, a creditor can garnish a debtor's wages or freeze his or her bank account for a sum totaling twice of that which is owed.[6]

While financial institutions may make the initial attempts to recover a debt from a client, these tasks are eventually contracted to debt collection agencies[7] that will often purchase the debt at heavily reduced rates and profit from the difference.[8] Though debt collection practices used to include such outreach to the debtor as phone calls, letters and offers to negotiate under a repayment plan, the new crop of collectors have opted instead to go directly to the New York City Civil Court.[9] Hence, proper service of process is integrally linked to the proliferation of debt collection cases in New York City. In many cases, improper or incomplete service of process may mean a defendant is unaware of a case filed against him or her. In fact, many New Yorkers only discover that they were involved in a claim once a default judgment is entered and their assets have been partially seized.[10]

According to New York State Law, a summons notice may be served upon a defendant in a number of ways, including (1) personal service, in which notice is delivered in person;[11] (2) substitute service, in which notice is delivered to a person of "suitable age and discretion" at the defendant's workplace, residence or dwelling in

---

[5] *Id.*, at 4.
[6] *Id.*
[7] *Supra* note 2, at 7.
[8] "Report by the Civil Court and Consumer Affairs Commitees in Support of Intro. 0660-2007," New York City Bar, February 5, 2009.
[9] *Supra* note 1, at 3.
[10] *Id*, at 6.
[11] CPLR § 308(1)

addition to being mailed to his or her place of business or last known residence;[12] and (3) so-called "nail and mail" service, in which, if the first two options are not feasible, a summons is both mailed and physically posted to the door of the person's workplace, home, or known dwelling.[13] Unfortunately for many New Yorkers, there is an increasing prevalence of illegal "sewer service" – the deliberate failure to deliver the notification of a court filing followed by a false affidavit of successful delivery.[14]

In a study of three randomly-selected process serving companies in consumer debt cases, MFY Legal Services found that personal service was only performed about 6 percent of the time, whereas substitute service and "nail and mail" service was performed 54 and 40 percent of the time, respectively.[15] Among 350 consumer debt cases handled by MFY Legal Services, only a few clients ever received personal service while the vast majority claimed to receive no notice whatsoever.[16] In some cases, court papers were delivered to old or inaccurate mailing addresses and in other cases, the summonses served via substitute service were left with individuals with whom the defendant either had no relationship or did not know.[17] Needless to say, the failure of a process server to successfully provide notice to a debtor of a court case against him can be devastating when he or she later finds his or her wages garnished and his assets frozen as a result of a default ruling. Individuals who believe they were improperly served, however, may exercise their right to a traverse hearing, in which the court determines whether or not an individual was properly served.[18] In those cases, the creditor or financial institution

---

[12] CPLR § 308(2)
[13] CPLR § 308(4)
[14] Glater, J. D., "Cuomo Tries To Enforce Notification to Debtors," *N.Y. Times*, April 14, 2009, at B1
[15] *Supra* note 1, at 6.
[16] *Id.*
[17] *Id.* at 7.
[18] *Id*, at 5.

4

almost always chooses to terminate its case, suggesting that the creditor itself knows that it cannot defend the integrity of its process server affidavits.[19]

The problem of improper process serving practices has caught the attention of State Attorney General Andrew Cuomo who announced in April 2009 that he was filing criminal charged against American Legal Process, a Long Island-based process service company that allegedly failed to properly serve court summonses and then covered up its failures by falsifying sworn affidavits of service.[20] The Attorney General also announced his intention to sue the company's President and Chief Executive Officer, William Singler, as well as the law firm of Forster & Garbus, which he claims did not properly supervise American Legal Process and accepted affidavits it should have known were false.[21] According to the Attorney General's office, the company processed the majority of its 98,000 complaints through the "nail and mail" method, the least secure method of delivery.[22]

The relationship between improper service and default judgments in debt collection cases has recently been addressed by the Federal Trade Commission. In their February 2009 report, "Collecting Consumer Debts: The Challenges of Change- A Workshop Report", the FTC concurs that "that consumers frequently do not appear to contest debt collection lawsuits because they have not been properly served, and, if they do not appear, the court enters a default judgment."[23]

---

[19] *Id.* at 7.
[20] Office of the New York State Attorney General, "Attorney General Cuomo Announces Arrest of Long Island Business Owner for Denying Thousands of New Yorkers Their Day in Court," Press Release, Available at http://www.oag.state.ny.us/media_center/2009/apr/apr14a_09.html, Accessed on November 6, 2009, at 1.
[21] *Id.*
[22] *Id*, at 2.
[23] FTC Report, "Collecting Consumer Debts: The Challenges of Change- A Workshop Report" available at http://www.ftc.gov/bcp/workshops/debtcollection/dcwr.pdf at 57.

Furthermore, participants in an FTC sponsored roundtable discussion series entitled "Protecting Consumers in Debt Collection Litigation and Arbitration" held in Chicago on August 5, 2009, noted that ineffective substitute service and fraudulent personal service by process servers is a major problem in many Midwestern states, including Illinois, Indiana, Iowa, and Minnesota.[24] In commenting on the recent suit filed against process servers by Attorney General Cuomo, one panelist noted that the discrepancies in servers' affidavits in the case were discovered by an audit of process server activities, highlighting the importance of external oversight of process servers.[25] The topics of improper process service and default judgments were revisited at the final roundtable discussion held on December 4, 2009 in Washington, DC.[26]

### III.     EXISTING REGULATION

Local law requires anyone "doing business" as a process server in New York City to be licensed by the Department of Consumer Affairs.[27] A person is considered to be "doing business" as a process server if he or she serves five or more processes in one year,[28] although federal, state, and city employees and attorneys are exempt from the licensing requirement.[29] This definition has been interpreted to include process service agencies, not just individual process servers.[30] License applicants are required to be fingerprinted for purposes of performing a criminal background check.[31]

Other states and/or municipalities impose additional requirements on process

---

[24] FTC transcript, "Protecting Consumers in Debt Collection Litigation and Arbitration" available at http://www.ftc.gov/bcp/workshops/debtcollectround/090805-CHIL/transcript-90805.pdf at 28-34. (hereafter "FTC Transcript").
[25] FTC Transcript at pg 34-35
[26] http://www.ftc.gov/bcp/workshops/debtcollectround/091204-DC/transcript.pdf
[27] NYC Admin Code §20-403.
[28] Admin Code 20-404(b).
[29] Admin Code §20-405.
[30] ABC Process Serving Bureau v. City of New York, 310 N.Y.S.2d 859 (N.Y. Sup.Ct. 1970).
[31] Admin Code §20-406

servers including educational and insurance standards, and/or requiring that all servers post a bond, ranging from $2,000 in California to $100,000 in Montana.[32]

### IV.   PROPOSED LEGISLATION

Proposed Intro. 6-A seeks to increase accountability for process servers and to ensure that service is properly effectuated by revising citywide regulations pertaining to process servers. The legislation would separate the current licensing category into two separate types of licenses- one for individual servers and one for process service agencies. A process service agency would be defined as, "any person, firm, partnership, association or corporation, other than an attorney or law firm located in this state, who maintains an office, bureau or agency the purpose of which is to assign or distribute process to individual process servers for actual service." Applicants for a process server license or renewal would be required to pass an examination administered by DCA demonstrating an understanding of proper service of process in New York City.

Proposed Intro. 6-A would also add a bond requirement as a condition of licensure. Each individual process server licensee would be required to post a surety bond of $10,000, payable to the city of New York, although an individual engaged in the business of serving process solely as the employee of a licensed process service agency would be exempt from this requirement. Each licensed process service agency would be required to post a surety bond for $100,000.

The bond would be conditioned upon the licensee's compliance with any rules and regulations issued pursuant to the section of the Administrative Code pertaining to

---

[32] National Association of Process Servicers, "State Laws Licensing Process Servers", http://www.napps.org/laws_state_licensing.asp

process servers and could be used to cover the cost of any fine imposed upon the licensee or against any final judgment received by any person injured by the licensee's violation of any provision of the section. The legislation would create a presumption that in any prosecution arising out a violation of this section, any employee of a licensed process service agency is acting in the course of his or her employment when serving process as directed by the agency.

Proposed Intro. 6-A would also create additional requirements for process service agencies, including mandating that they:

- Comply with all applicable federal and state laws;
- Provide each employee with a written statement indicating the employee's rights and the agency's obligations under city, state, and federal law including statements about minimum wage, overtime, hours of work, record keeping, insurance requirements and worker's compensation; and
- Maintain signed statements for each employee for three years indicating that he or she has received a copy of the written statement described above.

In an effort to ensure that proper records are maintained for the duration of the statute of limitations in debt collection suits, individual process servers and process service agencies would be required to maintain records for seven years for each process served. Individual process servers who work exclusively as employees of process service agencies would be exempt from the foregoing requirement, as their agency would be maintaining records on their behalf. The Commissioner of DCA would be able to periodically audit these records to ensure compliance.

The Commissioner of DCA would be required to develop a handbook of all laws

and regulations pertaining to service of process in New York City. Such handbook would be distributed to all licensed process servers and process service agencies.

Proposed Intro. 6-A would also provide individuals who have suffered as a result of improper service of process with a civil cause of action against the process server or process serving agency to cover compensatory and punitive damages; injunctive and declaratory relief; attorneys' fees and costs; and other appropriate relief.

Twenty-four months after the law has taken effect, the Commissioner of DCA would be required to submit to the Speaker of the City Council a report detailing the effectiveness of these provisions on proper service and on the process serving industry as a whole.

Finally, in order to ensure that a licensed process server has fulfilled his or her contracted responsibilities, he or she would be required to carry and operate an electronic device, such as a global positioning system, while serving process. Such device would record the time, date and location of service. Electronic records produced by this device would be retained for seven years.

Proposed Intro. 6-A would take effect 180 days after enactment.

Case 1:14-cv-01266-DLC   Document 91-1   Filed 06/06/14   Page 11 of 18

Proposed Int. 6-A

By Council Member Garodnick, Brewer, Gonzalez, James, Koppell, Koslowitz, Lappin, Palma, Seabrook and Vallone, Jr.

A Local Law

To amend the administrative code of the city of New York, in relation to process servers.

Be it enacted by the Council as follows:

Section 1. Section 20-403 of the administrative code of the city of New York is amended to read as follows:

a. Process server license. It shall be unlawful for any person to do business as, be employed as or perform the services of a process server without a license therefor.

b. Process serving agency license. It shall be unlawful for any process serving agency to assign or distribute process to individual process servers for actual service in the city of New York without a license therefore.

§2. Section 20-404 of the administrative code of the city of New York is amended to read as follows:

a. A process server is a person engaged in the business of serving or one who purports to serve or one who serves personally or by substituted service upon any person, corporation, governmental or political subdivision or agency, a summons, subpoena, notice, citation or other process, directing an appearance or response to a legal action, legal proceeding or administrative proceedings.

b. A process serving agency is any person, firm, partnership, association or corporation, other than an attorney or law firm located in this state or deputized city marshal, who maintains an office, bureau or agency, the purpose of which is to assign or distribute process to individual process servers for actual service in the city of New York.

11

[b.] c. For the purposes of this subchapter the service of five or more process in any one year shall be deemed to constitute doing business as a process server.

§3. Section 20-406 of the administrative code of the city of New York is amended by adding a new subdivision c to read as follows:

c. Each such applicant for a process server license or renewal thereof shall be required to pass an examination satisfactorily. Such examination shall be under the supervision of the commissioner and shall test the knowledge of the applicant concerning proper service of process within the city of New York and familiarity with relevant laws and rules.

§4. Subchapter 23 of chapter 2 of title 20 of the administrative code of the city of New York is amended by adding new sections, 20-406.1, 20-406.2, 20-406.3 and 20-406.4 to read as follows:

20-406.1 Bond required. a. As a condition of the issuance of a process server license, each applicant for such license or a renewal thereof shall furnish to the commissioner a surety bond executed by the applicant in the sum of ten thousand dollars, payable to the city of New York, and a surety approved by the commissioner. Such bond shall be conditioned upon the applicant's compliance with the provisions of this subchapter and any rules promulgated thereunder, and upon the further condition that the applicant will pay (i) to the city any fine, penalty or other obligation the city imposes relating to a violation of this subchapter and any rules promulgated thereunder, and (ii) to a plaintiff any final judgment recovered in an action arising out of the violation of any of the provisions of this subchapter within thirty days of its imposition. The commissioner may by rule authorize an individual applicant, in lieu of furnishing a bond, to satisfy the

requirements of this section by depositing cash in an amount equal to the amount of the surety bond required by this section.

b. A process server licensed under this subchapter who engages in the business of serving process exclusively as an employee of a process serving agency licensed under this subchapter shall not be required to furnish a surety bond pursuant to subdivision (a) of this section.

c. As a condition of the issuance of a process serving agency license, each applicant for such license or a renewal thereof shall furnish to the commissioner a surety bond in the sum of one hundred thousand dollars executed by the applicant payable to the city of New York, and a surety approved by the commissioner. Such bond shall be conditioned upon the applicant's compliance with the provisions of this subchapter and any rules promulgated thereunder, and upon the further condition that the applicant will pay (i) to the city any fine, penalty or other obligation the city imposes relating to a violation of this subchapter and any rules promulgated thereunder, and (ii) to a plaintiff any final judgment recovered in an action arising out of the violation of any of the provisions of this subchapter within thirty days of its imposition.   The commissioner may by rule authorize an applicant, in lieu of furnishing a bond, to satisfy the requirements of this section by depositing cash in an amount equal to the amount of the surety bond required by this section.

§20-406.2 Responsibilities of process serving agencies.   Every process serving agency licensed under this subchapter shall:

a. Comply with all applicable state and federal laws;

b. be legally responsible for any failure to act in accordance with the laws and

13

rules governing service of process by each process server to whom it has distributed, assigned or delivered process for service;

c. Provide to each process server employed by such agency a written statement indicating the rights of such employee and the obligations of the process serving agency under city, state and federal law. Such statement of rights and obligations shall include, but not be limited to, a general description of employee rights and employer obligations pursuant to laws regarding minimum wage, overtime and hours of work, record keeping, social security payments, unemployment insurance coverage, disability insurance coverage and workers' compensation;

d. Keep on file in its principal place of business for a period of three (3) years a statement for each employee, signed by such employee, indicating that the employee read and understood the statement of rights and obligations such employee received pursuant to subdivision (c) of this section.

§20-406.3 Records, Audits.  a. Every process server and process serving agency licensed under this subchapter shall retain records in compliance with section 89-cc of the New York state general business law for no less than seven (7) years of each process served.  Such records shall be retained in electronic form.  Tampering with any such electronic records shall be prohibited.

b. A process server licensed under this subchapter who engages in the business of serving process exclusively as an employee of a process serving agency licensed under this subchapter shall not be subject to the provisions of subdivision (a) of this section, but shall be required to comply with all other applicable laws.

c. The commissioner may conduct audits of the information required to be kept

pursuant to subdivision (a) of this section in order to monitor compliance with this subchapter.

§20-406.4 Educational materials. The commissioner shall develop educational materials to be provided to all process servers and process serving agencies licensed under this subchapter. Such materials shall at a minimum identify the laws and regulations pertaining to service of process in the city of New York.

§5. Section 20-409 of the administrative code of the city of New York is amended by adding a new subdivision c to read as follows:

c. Upon application for renewal of a license issued pursuant to this subchapter, applicants subject to subdivision (a) of section 20-406.3 of this subchapter shall certify in writing compliance with the record keeping provisions of such section.

§6. Subchapter 23 of chapter 2 of title 20 of the administrative code of the city of New York is amended by adding new sections 20-409.1 and 20-409.2 to read as follows:

§20-409.1 Violations and penalties. Any person who, after notice and hearing shall be found guilty of violating any provision of this subchapter, shall be punished in accordance with the provisions of chapter one of this title and shall be subject to a penalty of not less than seven hundred dollars nor more than one thousand dollars for each violation.

§20-409.2 Civil Cause of Action. Any person injured by the failure of a process server to act in accordance with the laws and rules governing service of process in New York state, including this subchapter and regulations promulgated thereunder, shall have a cause of action against such process server and process serving agency, which distributed or assigned process for service, in any court of competent jurisdiction for any

or all of the following relief:

a. compensatory and punitive damages, provided that punitive damages shall only be awarded in the case of willful failure to serve process;

b. injunctive and declaratory relief;

c. attorneys' fees and costs; and

d. such other relief as a court may deem appropriate.

§20-409.3 Reporting. Twenty-four months after the local law that added this section becomes effective, the commissioner shall submit a report to the speaker of the council regarding the effectiveness of these provisions on effectuating proper service and improving oversight over the process service industry. Such report shall include, among other things, the results of audits the commissioner has completed of process servers and process serving agencies, including information regarding their compliance with the provisions of this subchapter.

§ 7. Subchapter 23 of chapter 2 of title 20 of the administrative code of the city of New York is amended by adding a new section 20-410 to read as follows:

§ 20-410 Electronic record of service. A process server licensed pursuant to this subchapter shall carry at all times during the commission of his or her licensed activities and operate at the time process is served or attempted an electronic device that uses a global positioning system, wi-fi device or other such technology as the Commissioner by rule shall prescribe to electronically establish and record the time, date, and location of service or attempted service. All records created by such electronic device shall be maintained in an electronic database by the process server, or if such process server is

<u>acting exclusively as an employee of a process service agency, by the process service agency, for seven (7) years from the date such record is created.</u>

§8. This local law shall take effect one hundred eighty days after enactment provided, however that the commissioner of consumer affairs shall take all actions necessary for its implementation, including the promulgation of rules, prior to such effective date.

LCC
LS #188
Int. 1037-2009
1/20/10

17