UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------------- x

New York State Professional Process Servers Association, Inc. on
behalf of itself and aggrieved former and current members, and
Howard D. Clarke, and Stephen J. Boyko, Inc. d/b/a Consolidated
Claims Service, Individually, and as Representatives for all similarly
situated Process Server Individuals and Process Serving Agencies as
defined by the New York City Administrative Code, Title 20, Chapter:
2, § 20-404,

14 CV 1266 (DLC) (MHD)

Plaintiffs,

Against

City of New York, and Michael T. Bloomberg, Bill de Blasio, Jonathan
E. Mintz, Alba Pico, Marla Tepper, Esq., Sandford Cohen, Esq., Nancy
Schindler, Esq., Bruce Dennis, Esq., James M. Plotkin, Esq., Nicholas
J. Minella, Esq., Alvin Liu, Esq., Shannon Bermingham, Jordan Cohen,
Esq., Philip Kimball, Esq., Lori Barrett, Esq., Megan Roberts, Esq.,
Wanda Day, Esq., Fred R. Cantor, Esq., Allison Rene Johnson, Esq.,
Margarita Marsico, Esq., David Cho, K. James, Wilfredo Lopez, Esq.,
Eunice Rivera, Galina Pikulina, P. Kumar, Michele Mirro, Esq.,
Mitchell B. Nisonoff, Esq., Lee Fawkes, Esq., Steven T. Kelly, Esq.,
Nancy Tumelty, Esq., Susan Kassapian, Esq., Maurice Nwikpo-
Oppong, Esq., Eryn A. DeFontes, Esq., Richard Zeitler, Jr., Esq.,
David Scott Paul, Esq., Shanet Viruet, Esq., and Judith Gould, Esq., all
Individually and in their capacities as officials and employees of the
City of New York,

Defendants.

------------------------------------------------------------------------------- x

## CITY DEFENDANTS' MEMORANDUM OF LAW
## IN SUPPORT OF THEIR MOTION TO DISMISS

ZACHARY W. CARTER
Corporation Counsel of the City of New York
Attorney for City Defendants
100 Church Street, Room 5-179
New York, New York  10007
(212) 356-2210

SHERYL R. NEUFELD
MARK W. MUSCHENHEIM
JASMINE M. GEORGES
*of Counsel*

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ..................................................................................1

ARGUMENT ........................................................................................................3

    A.  THE CITY CHARTER AND THE ADMINISTRATIVE CODE DO NOT LIMIT
        ENFORCEMENT OF THE PROCESS SERVER RULES TO ONLY CRIMINAL
        COURT PROCEEDINGS ...................................................................................4

    B.  PLAINTIFFS' PROCEDURAL DUE PROCESS CLAIM FAILS....................................7

    C.  PLAINTIFFS' SUBSTANTIVE DUE PROCESS CLAIM FAILS ................................10

    D.  PLAINTIFFS CANNOT ESTABLISH THAT DEFENDANTS' ACTIONS VIOLATE
        THE RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT .........11

           I.      PLAINTIFFS FAIL TO STATE A CLAIM FOR
                    MAIL FRAUD AND WIRE FRAUD ..........................................13

           II.     PLAINTIFFS FAIL TO STATE A CLAIM FOR
                    OBSTRUCTION OF JUSTICE.......................................................14

           III.    PLAINTIFFS FAIL TO STATE A CLAIM FOR INTERFERENCE WITH
                    COMMERCE, ROBBERY OR EXTORTION .............................15

    E.  THE AMENDED COMPLAINT FAILS TO STATE A CAUSE OF ACTION FOR AN
        EIGHTH AMENDMENT EXCESSIVE PENALTY VIOLATION................................17

    F.  PLAINTIFFS' EQUAL PROTECTION CLAIM FAILS ................................................18

    G.  THE PROCESS SERVER RULES ARE NOT VOID FOR VAGUENESS ...................19

    H.  THE AMENDED COMPLAINT FAILS TO STATE A CAUSE OF ACTION FOR
        DEFAMATION .................................................................................................21

    I.  PLAINTIFFS' CLAIMS AGAINST THE INDIVIDUAL DEFENDANTS BASED ON
       THEIR INVOLVEMENT IN THE DCA ENFORCEMENT PROCESS ARE SHIELDED
       BY ABSOLUTE IMMUNITY ..............................................................................22

    J.  THE COURT SHOULD DECLINE SUPPLEMENTAL JURISDICTION ....................23

CONCLUSION.............................................................................................24

The City defendants,[1] by their attorney, Zachary W. Carter, Corporation Counsel of the City of New York, submit this memorandum of law in support of their motion to dismiss the amended complaint.

## PRELIMINARY STATEMENT

This case stems from the pervasive failure of licensed process servers to properly serve legal papers, including the practice of engaging in sewer service (deliberately not notifying individuals of lawsuits filed against them, and then filing an affidavit of service that falsely states that service was in fact accomplished). A 2010 New York City Council report sets forth in detail this failure, and notes that when these lawsuits involve debt collection and landlord-tenant disputes against the disabled, elderly, and working poor, enforcement of unknown default judgments through garnishment of wages, and seizure of bank accounts and homes can be catastrophic.[2] As a result of this pervasive failure, in 2010 the City Council amended the New York City Administrative Code ("Administrative Code") provisions applicable to process servers. See Local Law 7 of 2010 ("Local Law 7"), annexed as Exhibit "B." In accordance with these amendments, in 2014 the New York City Department of Consumer Affairs ("DCA") issued

---

[1] This office represents the defendant City of New York ("City") and all of the individually named defendants, except defendants Michele Mirro and Susan Kassapian (both represented by Walter Kretz) and Enrique Rivera (sued herein as Eunice Rivera). It does not, however, appear that Mr. Rivera was properly served; while Mr. Rivera has not worked at DCA since December 2013, the affidavit of service claims that Mr. Rivera was served on March 11, 2014 by delivering a copy of the summons and complaint to a person of suitable age and discretion at DCA, and mailing a copy of these documents to Mr. Rivera at DCA. See Declaration of Jasmine M. Georges in Support of City Defendants' Motion to Dismiss, dated June 6, 2014 ("Georges Declaration"), ¶ 2 & Ex. I. In any event, for the same reasons that this motion to dismiss should be granted in favor of the City of New York and the individual defendants, it likewise should be granted as to Mr. Rivera.

[2] See New York City Council's Committee Report of the Governmental Affairs Division, March 2, 2010, at 4, annexed as Exhibit "A." All Exhibits referenced herein are annexed to the accompanying Georges Declaration.

a report that detailed DCA's enforcement efforts, and showed that many licensed process servers had failed to comply with the applicable legal provisions; for instance, 133 of the 187 process servers that DCA investigated were found to have violated the law.  See Exhibit "A" at 4.

Plaintiffs here attempt to derail DCA's enforcement efforts.  See Am. Compl. Wherefore Clause.  That attempt fails since it is well established that DCA can license process servers, and can also initiate administrative proceedings if these licensees fail to comply with the regulations governing their conduct.  To start, New York City Charter ("Charter") § 2203 sets forth the powers of the DCA, and provides, in pertinent part, that DCA may issue, renew, revoke and suspend licenses.[3]   Charter § 2203(c).  See also Administrative Code § 20-101 et seq. Charter § 2203 also provides that "upon due notice and hearing" DCA may "impose civil penalties for the violation of any laws or rules the enforcement of which is within the jurisdiction of the department pursuant to this charter, the administrative code or any other general, special or local law." Charter § 2203(h)(1).[4]  See also Administrative Code § 20-104.

Plaintiffs' amended complaint is primarily premised on their contention that DCA does not have the authority to administratively enforce alleged violations of the Process Server

---

[3] The Administrative Code mandates that process servers obtain a license from DCA.  See Administrative Code § 20-403.  The Administrative Code also sets forth procedures relating to process server license applications, renewals and revocations, as well as record keeping and bonding requirements.  Administrative Code §§ 20-404 - 20-409.  In addition, DCA has broad authority to promulgate rules necessary for the proper implementation and enforcement of the provisions governing process servers.  Administrative Code § 20-408.  Regulations promulgated pertaining to process servers are set forth in the Rules of the City of New York ("RCNY").  See 6 RCNY §§ 2-231, et seq.  The Administrative Code and RCNY provisions applicable to process servers are collectively referred to as the "Process Server Rules."

[4] The Charter explicitly provides various enforcement options in addition to administrative penalties.  See Charter § 2203(h)(1) (the "remedies and penalties provided for in this subdivision shall be in addition to any other remedies or penalties provided for the enforcement of such provisions under any other law including, but not limited to, civil or criminal actions or proceedings").

Rules.  Their contention is based on a flawed interpretation of an Administrative Code provision (§ 20-106), and seemingly ignores the fact that the Charter (§ 2203(h)(1)) and the Administrative Code (§§ 20-104(e)(1) & (4)) specifically authorize DCA to administratively enforce the Process Server Rules.  Indeed, plaintiffs' interpretation would render these two provisions a nullity, which would violate a black letter law of statutory construction.  And based on their flawed interpretation, plaintiffs assert procedural and substantive due process, RICO, defamation and excessive fine claims; they all fail for a host of reasons.  Similarly flawed is plaintiffs' claim that the "new" rules (adopted more than two and half years ago) -- which set forth clear requirements for process servers -- are void for vagueness.

Finally, in addition to naming the City of New York as a defendant, the complaint names more than 35 individual defendants (in their official and individual capacity) based on their purported involvement in DCA's administrative enforcement proceedings (such as, for instance, Administrative Law Judges ("ALJ")).  See, e.g., Am. Compl. ¶ 25 (allegations relating to various individual defendants' involvement in administrative proceedings).  The claims against all these defendants fail since their conduct is shielded by absolute judicial and prosecutorial immunity.

## ARGUMENT

Defendants move pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss plaintiffs' amended complaint.  In deciding such a motion, a Court may look to the facts alleged in the complaint, documents attached thereto or incorporated by reference therein, and documents that are "integral" to plaintiff's claims, as well as matters of public record and documents in plaintiff's possession or that plaintiff knew of or relied on in bringing suit.  Roth v. Jennings, 489 F.3d 499, 509 (2d Cir. 2007).  A motion to dismiss should be granted where a

complaint fails to plead enough facts to state a claim that is <u>plausible</u> on its face. <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007). Plaintiffs must plead facts plausibly demonstrating all the elements of their claims. <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 669 (2009). The factual allegations must be more than speculative, and show the grounds on which a plaintiff is entitled to relief beyond "labels and conclusions, and a formulaic recitation of the elements of a cause of action." <u>Twombly</u>, 550 U.S. at 555.

**A.      The City Charter and the Administrative Code do not Limit Enforcement of the Process Server Rules to Only Criminal Court Proceedings.**

Plaintiffs' claims are premised on the flawed theory that DCA does not have the authority to conduct civil administrative proceedings against process servers. <u>See</u>, <u>e.g.</u>, Am. Compl. ¶ 35 (defendants "acted with a complete absence of jurisdiction in prosecuting and/or adjudicating alleged violations of" the Process Server Rules). Plaintiffs base their argument on Administrative Code § 20-106, which provides in pertinent part: "Except as otherwise specifically provided in chapter two of this title[5] … any person … who violates [chapter two or an implementing regulation] shall, upon conviction thereof, be punished … by a fine [between twenty-five and] five hundred dollars, or by imprisonment not exceeding fifteen days, or both." Plaintiffs essentially claim that the "[e]xcept as otherwise specifically provided" language of section 20-106 indicates that criminal courts have exclusive jurisdiction over Chapter two licensees.[6] Plaintiffs are wrong.

---

[5] Chapter 2 sets forth the various categories of licenses issued by DCA, including process servers. Administrative Code §§ 20-201 - 20-538.

[6] <u>See</u>, <u>e.g.</u>, Pls.' Prelim. Inj. Mem. [Document # 38], at 13 ("Since [Administrative Code] § 20-106 vest jurisdiction over enforcement of chapter two and the Rules with the criminal courts, unless specifically provided otherwise in chapter two, and chapter two does not provide otherwise with regard to process servers, §20-106 applies, and § 20-104(e) is inapplicable to empower Defendants to exercise jurisdiction over enforcement of process server regulations.").

The "[e]xcept as otherwise specifically provided" language is set forth for the limited purpose of referencing specific chapter two provisions that establish criminal penalties that differ from those in section 20-106(a).  For instance, chapter two's provision concerning home improvement contractors provides that it is a misdemeanor, punishable by up to six months imprisonment, to operate a home improvement business without a DCA license.  Administrative Code § 20-401(1)(a).[7]

Plaintiffs, however, propose an interpretation that ignores on-point provisions of the Charter and the Administrative Code, the well established New York rule that an agency's interpretation of legal provisions is entitled to deference, and a black letter rule of statutory construction.  To start, the Charter provides an array of options to enforce the legal provisions set forth in Administrative Code Title 20 and its implementing regulations.  Thus, the Charter provides for civil penalties in administrative proceedings, as well as other remedies and penalties "under any other law including … civil or criminal actions or proceedings."   Charter § 2203(h)(1).

The Administrative Code similarly provides an array of enforcement options: criminal penalties can be sought under the provision relied on by plaintiffs, Administrative Code § 20-106, or civil administrative penalties pursuant to Administrative Code § 20-104(e).[8]  The legislative intent supports this reading: "The council finds further that … to carry out responsibilities for supervising and regulating licensed activities … the commissioner of consumer affairs requires powers, remedies and sanctions which are equitable, flexible and

---

[7] See also Administrative Code §§ 20-216, 20-275, 20-288, 20-358, 20-472, 20-483(e) & 20-522(a).

[8] In addition, Administrative Code § 20-106(d) permits a civil action to enjoin violations of Administrative Code Title 20.

efficient," and that the "sanctions and penalties applied by the <u>commissioner and by the courts</u> for the violation of laws and regulations by [entities] engaging in various licensed activities ... must be sufficient to achieve these above-mentioned purposes of licensing."   Administrative Code § 20-101(emphasis added).[9]   Indeed, section 20-104 explicitly provides that any "of the remedies provided for in this section shall be in addition to any other remedies provided under any other provision of law." Administrative Code § 20-104(e)(5).[10]

Plaintiffs' flawed interpretation of Administrative Code § 20-106 also ignores the well established New York rule that an agency's interpretation of legal provisions is entitled to deference.   An agency exercising its statutory authority is presumed to have developed an expertise and judgment that requires the courts to accept the agency judgment, if not unreasonable.   <u>Lynbrook v. N.Y. State Public Employment Relations Bd.</u>, 48 N.Y.2d 398, 404 (1979).   Thus, a "presumption of regularity attends to the action of the [agency], and it is incumbent upon the petitioner to overcome that presumption and establish the action to have been without reasonable foundation." <u>Kayfield Constr. Corp. v. Morris</u>, 15 A.D.2d 373, 379 (1st Dep't 1962).   <u>See also</u> <u>Sai Kwan Wong v. Doar</u>, 571 F.3d 247, 262 (2d Cir. 2009) (courts "give 'substantial weight' to an agency's construction of a statute that it is charged with enforcing"); <u>North Haven Bd. of Educ. v. Bell</u>, 456 U.S. 512, 522 n.12 (1982) ("In construing a statute, this

---

[9] <u>See also</u> Administrative Code § 20-103 ("The provisions of this chapter and chapter two of this title shall be liberally construed in accordance with the legislative declaration of the city council set forth in section 20-101.").

[10] New York courts routinely uphold determinations following a DCA administrative proceeding. <u>See, e.g.</u>, <u>Barr v. Dep't of Consumer Affairs</u>, 70 N.Y.2d 821 (1987) (upholding determination assessing fines and license revocation of process server following DCA administrative proceeding).   <u>See also</u> <u>Aaron's Const. Corp. v. Gould</u>, 29 Misc. 3d 1216(A), 918 N.Y.S.2d 396 (Sup. Ct. N.Y. Co. 2010) ("DCA is ... authorized to ... impose civil penalties").

Court normally accords great deference to the interpretation, particularly when it is longstanding, of the agency charged with the statute's administration.").

Finally, plaintiffs' flawed interpretation would eliminate the array of enforcement options available to DCA by essentially eliminating Administrative Code § 20-104(e) and portions of Charter § 2203(h)(1).  Doing so violates a well established rule that statutory provisions should be construed as a whole so as not to eliminate a particular provision. Gustafson v. Alloyd Co., 513 U.S. 561, 569 (1995) (courts must interpret a statute "as a symmetrical and coherent regulatory scheme"). See also N.Y. McKinney's Statutes § 97 (noting the "general principle that a statute must be construed as a whole and that its particular parts, provisions, or sections be considered together and with reference to each other have been applied in the construction" of numerous statutory provisions).

**B.      Plaintiffs' Procedural Due Process Claim Fails.**

Plaintiffs also claim that their procedural due process rights were violated.  Am. Compl. ¶¶ 48 - 58.  Plaintiffs appear to allege due process violations stemming from their claim that DCA did not have jurisdiction to adjudicate alleged violations by process servers.  Id. at ¶ 52.  That claim has no merit.  See Point A *supra.*  Nor is there any merit to plaintiffs' claim that DCA's adjudications of alleged violations by process servers violates procedural due process.

Due process is "flexible and calls for such procedural protections as the particular situation demands . . . a recognition that not all situations calling for procedural safeguards call for the same kind of procedure."  Morrissey v. Brewer, 408 U.S. 471, 481 (1972).  Generally, "something less than a full adversarial hearing is sufficient prior to adverse administrative

action." Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 545 (1985).[11]  Here, DCA's rules

provide process servers with due process.  After being notified of charges by DCA, a process

server can contest those charges in an administrative hearing before an ALJ, and can

administratively appeal an adverse ALJ determination.  See Administrative Code §§ 20-409 &

20-409.1; 6 RCNY Chapter 6 (DCA Administrative Hearings).

Plaintiffs Howard Clarke and Stephen J. Boyko, Inc. ("Boyko") availed

themselves of these procedures.  Plaintiff Clarke administratively appealed an ALJ's Decision

and Order which, after notice and a hearing, imposed a fine of $53,000 and revoked Mr. Clarke's

process server license.  See Exhibit "D."  On September 10, 2013 that appeal was denied by

DCA's Appeals Judge David Wolfe, and Mr. Clarke did not contest this final administrative

determination in a CPLR Article 78 proceeding.  See Exhibit "E."  Plaintiff Boyko was also the

subject of an administrative proceeding at DCA, which was resolved by way of an April 2012

---

[11] In evaluating a due process claim, the role of the federal courts is not to determine whether a local agency complied with every applicable state and local legal provision, but rather "to determine only whether the state has provided adequate avenues of redress to review and remedy arbitrary action.  Section 1983 is not a means for litigating in a federal forum whether a state or local administrative decision was wrong or even whether it was arbitrary and capricious." Alfaro Motors Inc. v. Ward, 814 F.2d 883, 888 (2d Cir. 1987) (citations omitted)).  Consequently, to the extent plaintiffs assert that DCA acted contrary to local law in any particular instance, those assertions do not ipso facto state a cognizable claim under the due process clause.  See McDarby v. Dinkins, 907 F.2d 1334, 1337 (2d Cir. 1990).

consent Order.[12]  See Exhibit "F."  Accordingly, the named individual plaintiffs were afforded the due process they erroneously claim is lacking.[13]

Plaintiffs also claim that the due process rights of Robert Winckelmann, a "former member" of the plaintiff New York State Professional Process Server Association ("NYSPPSA"), were violated since DCA did not provide a hearing before denying his renewal application for a process server license.  Am. Compl. ¶¶ 37, 59.  Assuming *arguendo* that plaintiffs have standing to pursue this claim,[14] Plaintiffs' claim fails since they cannot establish a

---

[12] Plaintiffs' challenge to any Consent Orders or other agreements should be dismissed, as parties waive their rights to litigate issues when they enter into a Consent Order.  Cf. United States v. Armour & Co., 402 U.S. 673, 681 (1971) (when entering into a consent decree, the "parties waive their right to litigate the issues involved in the case and thus save themselves the time, expense, and inevitable risk of litigation").

[13] Plaintiffs' claim that their due process rights were violated due to purported *ex parte* communications between ALJs and DCA also fail.  Am. Compl. ¶ 53.  An *ex parte* communication occurs when information about a particular case is provided by an adversary to the decision-maker without notice to an affected party.  If the decision-maker considers charges or evidence that comes to it *ex parte*, i.e., without notice and an opportunity to respond, then due process protections are implicated.  See D'Acquisto v. Washington, 640 F. Supp. 594 (N.D. Ill. 1986) (citing Wolff v. McDonnell, 418 U.S. 539, 563 (1974)).  However, general communications -- unrelated to a particular process server's case -- between an ALJ and DCA do not constitute improper *ex parte* communications.  See New York City Administrative Procedure Act ("CAPA"), Charter § 1046(c) (*ex parte* communications prohibited except as to "ministerial matters").  Similarly misplaced is plaintiffs' claim that in 2012 and 2013 the Public Advocate's Office did not properly handle purported reports made to it on this issue.  Am. Compl. ¶ 29.  As noted, the underlying claim is meritless.  Moreover, the claim relating to the Public Advocate is not cognizable on any number of grounds; for instance, the Charter provisions relied on by plaintiffs do not create a private right of action.  See Lindsay v. New York City Housing Authority, 1999 U.S. Dist. Lexis 1893, *27-28 (E.D.N.Y. Feb. 24, 1999) ("Under New York law, a private right of action only exists where the legislature intended to create one as a matter of general policy regulation." (citation omitted)).

[14] Neither individual plaintiff applied for a renewal application, and the organizational plaintiff, NYSPPSA, "does not have standing to assert the rights of its members in a case brought under 42 U.S.C. § 1983, as we have 'interprt[ed] the rights [§ 1983] secures to be personal to those purportedly injured.'"  Nnebe v. Daus, 644 F.3d 147, 156 (2d Cir. 2011) (quoting League of Women Voters of Nassau Cnty. v. Nassau Cnty. Bd. of Supervisors, 737 F.2d 155, 160 (2d Cir. 1984)).  Moreover, in 2013 the "former member" of NYSPPSA, Mr. Winckelmann, commenced

property interest in the renewal of a license, the threshold to maintaining a due process claim. See Gabris v. TLC, 2005 U.S. Dist. Lexis 23391, *7 (S.D.N.Y. Oct. 6, 2005) (there is "no property interest in a prospective application for a license to be issued by a state or municipal agency"); Big Apple Food Vendors' Ass'n v. City of New York, 168 Misc.2d 483, 490 (Sup. Ct. N.Y. Co. 1995), aff'd 228 A.D.2d 282, app. dismissed 88 N.Y.2d 1064 (1996) (due process "does not guarantee that a license … may be held in perpetuity").

Finally, plaintiffs assert a state-based claim that DCA violated Administrative Code § 20-104(g) when it denied former NYSPPSA member Winckelmann's renewal application without first providing a hearing. Am. Compl. ¶¶ 92, 121. But plaintiffs' reliance on this provision is misplaced. A full reading of Administrative Code § 20-104(g) and its sub-parts indicates that a hearing is limited to situations in which DCA has already issued a license: "The Commissioner may refuse to issue or renew any license … and may suspend or revoke any [license after] notice and opportunity to be heard…." Moreover, this provision is limited as a whole to situations in which a licensee (or an applicant for a license, either initial or renewal) has engaged in identity theft: the Commissioner may refuse to issue or suspend or revoke license "upon the occurrence of any one or more of the following conditions" set forth in subsections (1)-(3) that relate to identity theft. Administrative Code § 20-104(g).

## C.     Plaintiffs' Substantive Due Process Claim Fails.

Plaintiffs' substantive due process claim (stemming from their misguided lack of jurisdiction allegation) fails as well. Am. Compl. ¶¶ 48 - 58; see, e.g., id. at ¶ 49 ("Defendants'

---

a CPLR Article 78 proceeding in New York State Supreme Court challenging the denial of his renewal application. Venue in that proceeding was transferred from Nassau County to New York County, but the proceeding has not been placed on a calendar in New York County. Georges Decl. ¶ 2 & Ex. H.

… policy and practice to enforce the [Process Server Rules as] creating a violation for which a penalty could be imposed violated the [Charter and] exceed the outer limits of said Defendants' legitimate government action, was outrageously arbitrary, and, was a gross abuse of government authority, and deprived Plaintiffs' … rights to substantive … due process").

"[T]he doctrine of substantive due process prevents the deprivation of life, liberty or property for arbitrary reasons." See Mallinckrodt Med., Inc. v. Assessor of Argyle, 292 A.D. 2d 721; 740 N.Y.S.2d 467 (3d Dep't 2002).  To state a substantive due process claim, a party must demonstrate that the government acted in an arbitrary, conscience-shocking or constitutionally-oppressive manner and that such state action has deprived them of a protected property interest.  See Big Apple Food Vendors' Ass'n, 168 Misc.2d at 490; Kaluczky v. City of White Plains, 57 F.3d 202, 211 (2d Cir. 1995); Story v. Green 978 F.2d 60, 62 (2d Cir. 1992). As noted, DCA had the authority to enact regulations relating to process servers, as well as the authority to administratively adjudicate alleged violations of these regulations.   Administrative Code § 20-408; Point A supra.  Consequently, when plaintiffs' lack of jurisdiction allegations are set aside, plaintiffs fail to plausibley allege that the City defendants acted in an arbitrary, conscious-shocking or constitutionally-oppressive manner.

**D.      Plaintiffs Cannot Establish That Defendants' Actions Violate the Racketeer Influenced and Corrupt Organizations Act.**

Plaintiffs also allege that they were injured by the City defendants' violation of the Racketeering Influenced and Corruption Organizations Act ("RICO"), 18 U.S.C. §§ 1961 et seq.  See Am. Compl. ¶¶ 72-116.[15]  Because of the devastating effects that a civil RICO claim

---

[15] To sustain a civil action under RICO, a plaintiff must establish seven elements: "(1) that the defendant (2) through the commission of two or more [predicate] acts [set forth in § 1961] (3) constituting a 'pattern' (4) of 'racketeering activity' (5) conducts or participates in (6) an 'enterprise' (7) the activities of which affect interstate or foreign commerce.'" Berk v. Tradewell,

may have, courts examine such claims with "particular scrutiny" to ensure that the statute is used for the purposes intended by Congress.  Goldfine v. Sichenzia, 118 F. Supp. 2d 392, 397 (S.D.N.Y. 2000).

As an initial matter, a RICO claim cannot lie against defendant City of New York because a municipality cannot form the intent that is required to establish a RICO predicate act. Liang v. City of New York, 2013 U.S. Dist. Lexis 136795, *39 (E.D.N.Y. 2013).  "[W]hile a municipality is undoubtedly a 'person' within the meaning of 18 U.S.C. § 1961(3), it is incapable of forming the requisite criminal intent for RICO liability."  Frooks v. Town of Cortlandt, 997 F. Supp. 438, 457 (S.D.N.Y. 1998).  Furthermore, because the City cannot be held liable in a RICO case as a matter of law, its employees also may not be held liable in their official capacities. Liang, 2013 U.S. Dist. Lexis 136795, *40.  Accordingly, to the extent that the individual City defendants are sued in their official capacities, such claims must be dismissed.  Moreover, as set forth in Point I below, the individual defendants involved in enforcing the Process Server Rules have absolute immunity from suits for damages allegedly arising from such involvement.

Even if plaintiffs could proceed against the City defendants, plaintiffs' allegations of various crimes as predicate acts to establish a RICO violation fail as a matter of law.  Here, plaintiffs allege four acts as predicate acts of racketeering activity: (1) mail fraud, 18 U.S.C. § 1341 (Am. Compl. ¶¶ 80, 83, 85, 87, 91, 93); (2) wire fraud, 18 U.S.C. § 1343 (Am. Compl. ¶¶ 80, 83, 85, 87, 91, 93, 94); (3) obstruction of justice, 18 U.S.C. § 1512(b)(3) (Am. Compl. ¶ 81, 89); and (4) interference with commerce, robbery, or extortion, 18 U.S.C. § 1951 (Am. Compl. ¶

---

Inc., 2003 U.S. Dist. Lexis 12078 (S.D.N.Y. 2003) (citing Moss v. Morgan Stanley, Inc., 719 F.2d 5, 17 (2d Cir. 1983)).  Proof of a civil RICO claim requires the additional showing that the plaintiff suffered: i) injury to its business or property; ii) "by reason of" the RICO violation.  See

88, 96).  Although a violation of these provisions may constitute predicate acts, plaintiffs fail to

allege facts sufficient to state a violation of any of the above-referenced statutes.

  **i.**  **Plaintiffs Fail to State a Claim for Mail Fraud and Wire Fraud.**

    Plaintiffs claim that defendants committed mail and wire fraud in the course of

their alleged scheme to collect unlawful debt.[16]  See Am. Compl. ¶¶ 80, 83, 85, 87, 91, 93, 94.

The federal mail and wire fraud statutes criminalize the use of those means of transmission in

furtherance of "any scheme or artifice to defraud, or for obtaining money or property by means

of false or fraudulent pretenses, representations, or promises."  See 18 U.S.C. §§ 1341, 1343.

Mail and wire fraud allegations are subject to enhanced pleading requirements.  Rule 9(b) of the

Federal Rules of Civil Procedure ("Rule 9(b)"), which applies to RICO claims involving fraud,

provides that the complaint must: "(1) specify the statements that the plaintiff contends were

fraudulent, (2) identity the speaker, (3) state where and when the statements were made, and (4)

explain why the statements were fraudulent."  Shields v. Citytrust Bancorp., Inc., 25 F.3d 1124,

1128 (2d Cir. 1994) (quoting Mills v. Polar Molecular Corp., 12 F.3d 1170, 1175 (2d Cir. 1993)).

Furthermore, where, as here, there are multiple defendants, Rule 9(b) requires that the plaintiff

allege facts specifying each defendants' contribution to the fraud.  See DiVittorio v. Equidyne

---

Laborers Local 17 Health and Benefit Fund v. Philip Morris, Inc., 191 F.3d 229, 235-36 (2d Cir. 1999).

[16] The Court should note that "unlawful debt" under the RICO statute means "a debt (A) incurred or contracted in gambling activity which was in violation of the law of the United States, a State or political subdivision thereof, or which is unenforceable under State or Federal law in whole or in part as to principal or interest because of the laws relating to usury, and (B) which was incurred in connection with the business of gambling in violation of the law of the United States, a State or political subdivision thereof, or the business of lending money or a thing of value at a rate usurious under State or Federal law, where the usurious rate is at least twice the enforceable rate[.]" 18 U.S.C. § 1961(6).  Here, plaintiffs cannot establish, nor have they alleged, that defendants engaged in a scheme to collect "unlawful debt" as defined in § 1961(6), which is required to state a violation of § 1962.

Extractive Industries, Inc., 822 F. 2d 1242, 1247 (2d. Cir. 1987) ("Where multiple defendants are asked to respond to allegations of fraud, the complaint should inform each defendant of the nature of his alleged participation in the fraud.").

Here, plaintiffs failed to plead their allegations of mail and wire fraud with sufficient particularity under Rule 9(b).  Specifically, plaintiffs failed to identify the content, time, place, and speaker of each alleged mailing or wire transmission, and consequently, fail to establish mail and wire fraud as predicate criminal acts for a RICO claim.

> ## ii.     Plaintiffs Fail to State a Claim for Obstruction of Justice.

Plaintiffs claim that "Defendants' . . . directive prohibiting disclosure of the existence of the subpoenas were made without official authority, to intimidate, threaten, or corruptly persuade, or an attempt to do so, with intent to hinder, delay, or prevent communication by said Plaintiffs to a law enforcement officer or judge of the United States, of information relating to Defendants' . . . deprivation or possible deprivation, and conspiracy to deprive said Plaintiffs of their constitutional or civil rights . . . in violation of 18 USC 1512(b)(3)."  Am. Compl. ¶ 81.  Title 18 U.S.C. § 1512(b)(3) requires a specific intent to interfere with the communication of information.  See United States v. Hertular, 562 F.3d 433, 443 (2d Cir. 2009); United States v. Genao, 343 F.3d 578, 586 (2d Cir. 2003).  Here, plaintiffs have not alleged facts regarding defendants' alleged intent to interfere with plaintiffs' communication to a law enforcement officer or judge of the United States.  Indeed, plaintiffs do not allege with any particularity that any of the named defendants hindered, delayed, or prevented the communication of information relating to any federal offense.  18 U.S.C. § 1512(b)(3).  Therefore, plaintiffs failed to establish obstruction of justice as a predicate act for RICO purposes.

### iii.  Plaintiffs Fail to State a Claim for Interference With Commerce, Robbery or Extortion.

Plaintiffs assert that defendants' actions were "in furtherance of Defendants' scheme to acquire, maintain, and conduct prosecution and adjudication of violation of process server regulations, and collect unlawful fines and retain maximum proceeds of fines collected in violation of 18 U.S.C. 1951 and 18 U.S.C 1961 et. seq." Am. Compl. ¶ 96.  Under the Hobbs Act, 18 U.S.C. § 1951, it is an offense to attempt or conspire to obstruct, delay or affect commerce, or the movement of any article or commodity in commerce, in any way or degree, by means of robbery or extortion. See 18 U.S.C. § 1951.  A person commits extortion by obtaining property from another, with his consent, which consent was induced by the wrongful use of actual or threatened force, violence, or fear, or under color of official right.  See 18 U.S.C. § 1951.  Extortion "under color of official right" is established by a public official's wrongful use of office.  See United States v. Margiotta, 688 F.2d 108, 130 (2d Cir. 1982); City of New York v. Joseph L. Balkan, Inc., 656 F. Supp. 536, 546 (E.D.N.Y. 1987).  Further, extortion under color of official right is committed where "the victims were motivated to make payments as a result of the defendant's control or influence over public officials and that the defendant was aware of this motivation." United States v. McDonough, 56 F.3d 381, 388 (2d Cir. 1995) (citing United States v. Margiotta, 688 F.2d at 132-33).

Plaintiffs allege that defendants' extortionate threats are contained in: (1) subpoenas directing plaintiffs not to disclose the existence of the subpoenas[17]; (2) letters denying

---

[17] Plaintiffs' vague claims that their First Amendment rights were violated by the directive in the DCA subpoenas fails. E.g., Am. Compl. ¶¶ 18 - 19, 46 & 79.  To start, as noted in fn 14 supra, plaintiff NYSPPSA cannot assert a section 1983 claim on behalf of its members.  As to the individual plaintiffs, the amended complaint fails to set forth any allegations that Clarke or employees of Boyko even complied with the directive, to their detriment or otherwise; nor are

renewal of licenses; (3) Notice of Hearing/Violation; (4) letters coercively soliciting settlements; and (5) "Assurance of Discontinuance" agreements and "Consent Orders." [18]   See Am. Compl. ¶ 88.

       As an initial matter, plaintiffs' claims fail because they do not plead their allegations of extortion with sufficient particularity under Rule 9(b).   Indeed, plaintiffs have failed to identify the content, time, place, and speaker of each alleged extortionate threat. Moreover, plaintiffs do not put forth allegations of duress sufficient to support a claim of extortion as a matter of law.   Defendants' actions were merely the exercise of defendants' authority under the Process Server Rules, which, as demonstrated above, are entirely legal. Threats to act in accordance with one's legal rights do not and cannot constitute extortion.   See Feeley v. Whitman Corp., 65 F. Supp. 2d 164, 174 (S.D.N.Y. 1999); Teachers Insur. Annuity Assoc. v. Wometco Enter., Inc., 833 F. Supp. 344, 348 (S.D.N.Y. 1993).   Here, the City defendants' authority to enforce the Process Server Rules and impose fines and penalties resulting from violations of the Process Server Rules is well-established in Point A above. Thus, any actions by the City defendants pursuant to the Process Server Rules cannot constitute a predicate RICO extortion act.   As plaintiffs cannot establish any predicate criminal acts, plaintiffs fail to state a cause of action for a RICO violation, and plaintiffs' RICO claim should be dismissed.

---

there any allegations that but for the directive they would have, for instance, discussed the existence of the subpoenas with anyone, or even any information as to how their speech was chilled in any way whatsoever.   See Iqbal, 556 U.S. at 669 (facts must be pled plausibly demonstrating all elements of a claim).   And the same failings hold true for the current or former members of plaintiff NYSPPSA.

[18] As noted in fn 12 supra, plaintiffs' challenge to consent orders or other agreements fails.

E.       **The Amended Complaint Fails to State a Cause of Action for an Eighth Amendment Excessive Penalty Violation.**

Plaintiffs allege that defendants' "policy to impose multiple punishments for the same offense constitutes excessive fines, exceeded the outer limits of said Defendants' legitimate government action, was outrageously arbitrary, was a gross abuse of government authority, and shocks the conscience, and deprives [plaintiffs'] right to protections from excessive fines and cruel and inhuman punishment under the U.S. Constitution, 8th Amendt. . . . ." Am. Compl. ¶ 57. "The Excessive Fines Clause protects individuals against abusive penalties imposed by the government." United States v. Emerson, 107 F.3d 77, 80 (1st Cir. 1997). "A fine is unconstitutionally excessive if (1) the payment to the government constitutes punishment for an offense, and (2) the payment is grossly disproportionate to the gravity of the defendant's offense." United States v. Mackby, 243 F.3d 1159, 1167 (9th Cir. 2001) citing United States v. Bajakajian, 524 U.S. 321, 327-28 (1998).

Here, the Process Server Rules are designed to deter process servers from engaging in sewer service or inadequate record keeping. Even assuming arguendo that the penalties contemplated by the Process Server Rules are a form of punishment, the penalties are not "grossly disproportionate to the gravity of the offense." Mackby, 243 U.S. at 1167. "Judgments about the appropriate punishment for an offense belong in the first instance to the legislature." Bajakajian, 524 U.S. at 335. The fines established by the City Council are not excessive given the history of blatant disregard of the regulations applicable to process servers. See City Council Report, Exhibit "A." Accordingly, plaintiffs' claim that defendants' imposition and collection of fines violates the Eighth Amendment should be dismissed.

**F.      Plaintiffs' Equal Protection Claim Fails.**

Plaintiffs claim that their equal protection rights are violated since they must pass an examination to obtain a process server license while others licensed by DCA are not required to do so.  Am. Compl. ¶¶ 39 - 44.  Their claim fails.  "The Equal Protection Clause requires that the government treat all similarly situated people alike."[19]  Harlen Assocs. v. Village of Mineola, 273 F.3d 494, 499 (2d Cir. 2001) (citing City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985)).  Since process servers are not members of any suspect class, and the examination provision, Administrative Code 20-406(c), does not impinge upon fundamental rights, in order to withstand an equal protection challenge, the provision need only further a legitimate state interest.  Cleburne, 473 U.S. at 439-441 ("Unless a classification warrants some form of heightened review because it jeopardizes the exercise of a fundamental right or categorizes on the basis of an inherently suspect characteristic, the Equal Protection Clause requires only that the classification rationally further a legitimate state interest.").  A statute which is subject to rational basis scrutiny "is presumed to be constitutional, and the party challenging the statute bears the heavy burden of proving that there is no reasonably conceivable state of facts which rationally supports the distinction," D'Amico v. Crosson, 93 N.Y.2d 29 (1999), citing Heller, 509 U.S. at 320 (1993); Henry v. Milonas, 91 N.Y.2d 264, 268 (1998); Maresca v. Cuomo, 64 N.Y.2d 242, 250 (1984), app. dismissed 474 U.S. 802.

Plaintiffs cannot plausibly allege that there was no rational basis when the examination provision was adopted.  To start, the extensive legislative history supporting the adoption of the Process Server Rules demonstrates a rational basis for their adoption, including

---

[19] Preliminarily, process servers are not similarly situated to others licensed by DCA, such as, for instance, newsstand operators or retail cigarette dealers.  Administrative Code, Title 20, Chapter 2.

the examination provision.   The City Council first authorized DCA to license process servers when it enacted Local Law 80 of 1969.   Then, as now, process servers were found to be engaging in questionable process serving practices, and the City Council granted DCA broad authority "to promulgate any rules and regulations deemed necessary for the proper implementation and enforcement of the provisions governing process servers." Administrative Code § 20-408.  See, e.g., United States v. Wiseman, 445 F.2d 792 (2d Cir.), cert. denied, 404 U.S. 967 (1971) (upholding convictions of process servers).   The adoption of the examination provision, which requires applicants to demonstrate an understanding of proper service of process, was a rational response to the pervasive problems identified in the City Council report. See Exhibit "A."

**G.     The Process Server Rules Are Not Void for Vagueness.**

Plaintiffs allege that Administrative Code § 20-406.2 and 6 RCNY §§ 2-233, 2-233a, 2-233b, 2-234a, 2-235, and 2-236 are vague on their face and/or as applied to plaintiffs because they "fail to provide notice of required conduct, and/or forbid acts in terms so vague that persons of ordinary intelligence must guess at [their] meaning and differ as to [their] application . . . ." Am. Compl. ¶¶ 137.  There is no merit to this allegation.

A law is unconstitutionally vague if it fails to provide a person of ordinary intelligence fair notice of what is prohibited.  See United States v. Rybiki, 354 F.3d 124, 132 (2d Cir. 2003).  There is certainly no vagueness as to the responsibilities of process serving agencies as set forth in Administrative Code § 20-406.2.   Pursuant to that section, process serving agencies shall:  "(a)  Comply  with  all  applicable  state  and  federal  laws;"  and "(b) Be legally responsible for any failure to act in accordance with the laws and rules governing service of process by each process server to whom it has distributed, assigned or delivered process for service [emphasis added]."   It is thus clear that process serving agencies are

19

responsible for ensuring that their process servers comply with the Process Server Rules and all applicable state and federal laws.

Moreover, the Process Server Rules to which plaintiffs object, which were adopted and became effective approximately three years ago in 2011, clearly and simply set forth what they prohibit and require. Specifically, 6 RCNY §§ 2-233 sets forth record keeping requirements for process servers consistent with the provisions of 89-cc of the General Business Law; 6 RCNY § 2-233a sets forth the requirements for maintaining electronic records; 6 RCNY § 2-233b sets forth the requirements for carrying a device to establish an electronic record of service; 6 RCNY § 2-234a sets forth the duties of process serving agencies; 6 RCNY § 2-235 sets forth the duties of a process server to report a process serving agency that assigns them service when applying for a process server license or renewal of a license; and 6 RCNY § 2-236 sets forth the requirements for the preparation of affidavits of service. The Process Server Rules' terms are neither obscure nor arcane, and persons of common intelligence can understand and conform their behavior to the requirements of the law. Accordingly, the Process Server Rules are not void for vagueness on their face or as applied to plaintiffs.

Finally, plaintiffs appear to assert state-based claims that challenge the viability of the Process Server Rules.[20] Plaintiffs claim that DCA violated CAPA, Charter § 1043(d)(1)(c), because of technical irregularities in the notice of adoption that accompanied pertinent regulations that were adopted and became effective in 2011. Am. Compl. at ¶¶ 131, 137(b). (The regulations are collectively attached as Exhibit "C.") To start, plaintiffs' time to challenge

---

[20] Even if accurate, such claims do not indicate that plaintiffs' federal rights were violated. See, e.g., McDarby v. Dinkins, 907 F.2d 1334, 1337 (2d Cir 1990) (city pension fund's "failure to adhere to [Administrative Code] requirements does not, without more, constitute a deprivation of procedural due process under the federal constitution").

any technical infirmities via state law has long since passed since such challenges are governed by the four month statute of limitations applicable to New York CPLR Article 78 proceedings. CPLR 217(1). <u>New York County Lawyers' Ass'n v. Bloomberg</u>, 30 Misc. 3d 921 (Sup. Ct. N.Y. Co. 2011) (applying Article 78 statute of limitations to challenge to adoption of City regulations). Moreover, Charter § 1043(d)(3) provides that this "subdivision shall not be construed to create a private right of action to enforce its provisions" and that inadvertent "failure to comply with this subdivision shall not result in the invalidation of any rule."

Plaintiffs also assert a state-based claim that DCA did not comply with Local Law 35 of 2013 since it purportedly did not prepare a report as mandated by that local law. Am. Compl. ¶ 132. That claim fails since such a report was prepared. Moreover, the process that was begun by Local Law 35 continues, and DCA recently proposed rule amendments that provide an opportunity to cure certain first-time violations. <u>See</u> Exhibit G.

**H.      The Amended Complaint Fails to State a Cause of Action for Defamation.**

Plaintiffs purport to assert a cause of action for defamation pursuant to New York State law. <u>See</u> Am. Compl. ¶¶ 117-132. To state a cause of action for defamation, the plaintiff must allege: (a) a defamatory statement; (b) of or concerning the plaintiff; (c) that was published by the defendant to a third party; and (d) that caused injury to the plaintiff. <u>See</u> <u>Weldy v. Piedmont Airlines, Inc.</u>, 985 F.2d 57, 61-62 (2d Cir. 1993); 43A N.Y. Jur. Defamation and Privacy § 4 (2003).

The amended complaint should be dismissed for failing to plead with particularity a cause of action for defamation. According to Rule 3016(a) of the CPLR, in a cause of action for defamation "the particular words complained of shall be set forth in the complaint, but their application to the plaintiff may be stated generally." <u>See</u> <u>e.g.</u> <u>Sinrod v. Stone</u>, 20 A.D.3d 560, 562 (2d Dep't 2005). Here, plaintiffs fail to set forth the particular words which plaintiffs claim

21

are defamatory.   Indeed, plaintiffs simply state that "Defendants' 'Notice(s) of Hearing', 'Assurance of Discontinuance' agreements, 'Consent Orders', and 'Decision(s) and Order(s)' contain false statements and/or false representations by said Defendants that the said Plaintiffs violated, admitted violating, or were adjudicated in violation of New York City Rules Regulating process servers . . . ."   Am. Comp. ¶ 120.   The amended complaint does not allege what particular statement in each of the above-referenced documents is defamatory.   Therefore, the amended complaint does not satisfy the specificity requirement of CPLR 3016(a).   Moreover, to the extent that the amended complaint alleges conduct that occurred more than one year prior to the commencement of this action in support of the claim for defamation, the claim is time-barred by CPLR 215(3).   See Spinale v. Guest, 270 A.D.2d 39, 40 (1st Dep't 2000).   Finally, to the extent that the claims are premised on plaintiffs' theory that DCA could not civilly adjudicate process server violations, that too fails for the reasons set forth in Point A above.

I.   **Plaintiffs' Claims Against the Individual Defendants Based on Their Involvement in the DCA Enforcement Process are Shielded by Absolute Immunity.**

Finally, plaintiffs' claims against the individual defendants based on their purported involvement in the DCA enforcement process must be dismissed, as their alleged conduct is shielded by absolute judicial immunity.   See Montero v. Travis, 171 F.3d 757, 760 (2d Cir. 1999); Nash v. Califano, 613 F.2d 10, 15 (2d Cir. 1980) ("ALJs enjoy absolute immunity from liability in damages for actions taken in their quasi-judicial capacity"); Imbler v. Pachtman, 424 U.S. 409 (1976) (absolutely immunity for prosecutor).   "It is . . . well established that officials acting in a judicial capacity are entitled to absolute immunity against § 1983 actions . . . this immunity also extends to administrative officials performing functions closely associated with the judicial process because the role of the 'hearing examiner or administrative law judge . . . is 'functionally comparable' to that of a judge.'"   Montero, 171 F.3d at 760 (quoting Butz v.

22

Economou, 438 U.S. 478, 513 (1978)).  Furthermore, the absolute judicial immunity of ALJs and administrative officials "is not overcome by allegations of bad faith or malice," nor can an ALJ or administrative official be deprived of immunity "because the action he took was in error or was in excess of his authority."  Mireles v. Waco, 502 U.S. 9, 11, 13 (1991).  Plaintiffs' claims against the individual defendants are premised on their misguided interpretation of the Process Server Rules (Am. Compl. ¶¶ 26, 35 & 36); as set forth in Point A *supra*, there is no merit to the claims based on this interpretation.  And since plaintiffs allege that the individual defendants violated plaintiffs' rights while acting in their judicial or prosecutorial capacities (e.g. Am. Compl. ¶¶ 25), the individual defendants are shielded by absolute immunity, and the claims against these defendants must consequently be dismissed.

**J.      The Court Should Decline Supplemental Jurisdiction.**

To the extent that plaintiffs' amended complaint can be construed to assert any state law claims that are not dismissed by this Court, it should decline to exercise supplemental jurisdiction pursuant to 28 U.S.C. § 1367(c) since this case is in its early stage.  See Kolari v. New York-Presbyterian Hosp., 455 F.3d 118, 122 (2d Cir. 2006) (when "federal claims are eliminated in the early stages of litigation, courts should generally decline to exercise pendent jurisdiction over remaining state law claims").

## CONCLUSION

For the reasons set forth above, plaintiffs' amended complaint should be dismissed.

Dated:      New York, New York
            June 6, 2014

                          ZACHARY W. CARTER
                          Corporation Counsel of the
                            City of New York
                          Attorney for City Defendants
                          100 Church Street
                          New York, New York 10007
                          (212) 356-2210

By:  _____
                          Jasmine M. Georges (JG-5412)
                          Assistant Corporation Counsel

SHERYL R. NEUFELD
MARK MUSCHENHEIM
JASMINE M. GEORGES,
      Of Counsel