UNITED STATES DISTRICT COURT                    Docket No. **14CV1266(DLC)(MHD)**
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
New York State Professional Process Servers Association on
behalf of itself and aggrieved former and current members,
and Howard D. Clarke, and Stephen Boyko, Inc. d/b/a
Consolidated Claims Service, Individually, and as
Representatives for all similarly situated Process Server
Individuals and Process Serving Agencies as defined by the
New York City Administrative Code, Title 20, §20-404,

                             Plaintiffs,

          Against

City of New York, and Michael T. Bloomberg, Bill deBlasio,
Jonathan Mintz, Alba Pico, Marla Tepper, Esq., Sanford
Cohen, Esq., Nancy Schindler, Esq., Bruce Dennis, Esq.,
James Plotkin, Esq., Nicholas J. Minella, Esq., Alvin Liu,
Esq., Shannon Bermingham, Jordan Cohen, Esq., Philip
Kimball, Esq., Lori Barrett, Esq., Megan Roberts, Esq.,
Wanda Day, Esq., Fred Cantor, Esq., Allison Rene Johnson,
Esq., Margarita Marsico, Esq., David Cho, K. James,
Wilfredo Lopez, Esq., Eunice Rivera, G. Pikulina, P. Kumar,
Michele Mirro, Esq., Mitchell B. Nisonoff, Esq., Lee Fawkes,
Esq., Steven T. Kelly, Esq., Nancy Tumelty, Esq., Susan
Kassapian, Esq., Maurice Nwikpo-Oppong, Esq., Eryn A.
DeFontes, Esq., Richard Zeitler, Jr., Esq., David Scott Paul,
Esq., Shanet Viruet, Esq., and Judith Gould, Esq., all
Individually and in their capacities as officials and employees
of the City of New York,

                            Defendants.
------------------------------------------------------------------------X


## PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION
## TO DEFENDANTS' MOTION TO DISMISS UNDER F.R.C.P. RULE 12(b)(6)


TRACY J. HARKINS, ESQ.
Attorney for Plaintiffs
48 Birch Hill Road
Mt. Sinai, NY 11766
(631) 476-3750

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT.................................................................................................3

ARGUMENT.......................................................................................................................5

I. PLAINTIFFS AMENDED COMPLAINT SETS FORTH SUFFICIENT
FACTS, WHEN TAKEN AS TRUE TO STATE A PLAUSIBLE CLAIM AGAINST
DEFENDANTS FOR UNLAWFUL ADMINISTRATIVE ACTION AGAINST PLAINTIFFS
ENTITLING PLAINTIFFS TO RELIEF.....................................................................................7

II. PLAINTIFFS' AMENDED COMPLAINT SETS FORTH SUFFICIENT FACTS,
WHEN TAKEN AS TRUE TO STATE A PLAUSIBLE CLAIM FOR RELIEF AGAINST
DEFENDANTS UNDER 42 U.S.C. §1983...........................................................................14

III. PLAINTIFFS' AMENDED COMPLAINT SETS FORTH SUFFICIENT FACTS
WHEN TAKEN AS TRUE TO STATE A PLAUSIBLE CLAIM FOR RELIEF AGAINST
THE INDIVIDUAL DEFENDANTS UNDER 18 U.S.C. §1964 FOR VIOLATIONS OF THE
RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT...............................17

a. PLAINTIFFS' AMENDED COMPLAINT STATES A PLAUSIBLE
CLAIM FOR MAIL FRAUD AND WIRE FRAUD 18 USC §§1341 AND 1343.............................18

b. PLAINTIFFS' AMENDED COMPLAINT STATES A PLAUSIBLE
CLAIM FOR WITNESS TAMPERING UNDER 18 U.S.C. §1512(b)(3)..........................................20

c. PLAINTIFFS' AMENDED COMPLAINT STATES A PLAUSIBLE
CLAIM FOR EXTORTION UNDER 18 U.S.C. §1951.................................................................22

IV. PLAINTIFFS' AMENDED COMPLAINT STATES A PLAUSIBLE CLAIM
AGAINST DEFENDANTS FOR DEFAMATION PER SE.............................................................25

V. PLAINTIFFS' AMENDED COMPLAINT STATES SUFFICIENT FACTS
WHEN TAKEN AS TRUE TO STATE A PLAUSIBLE CLAIM AGAINST DEFENDANTS
FOR ACTIONS AGAINST PLAINTIFFS WITH COMPLETE ABSENCE OF
JURISDICTION SO AS TO NEGATE ANY CLAIMS OF IMMUNITY.......................................25

CONCLUSION.................................................................................................................26

## I. **PRELIMINARY STATEMENT**

This Memorandum of Law is submitted on behalf of Plaintiffs in opposition to Defendants' motion to dismiss Plaintiffs' Amended Complaint pursuant to F.R.C.P 12(b)(6).

This case is about unlawful conduct by City of New York and Department of Consumer Affairs officials and employees in administratively taking control of the adjudication of alleged violations of process server regulations, including agency Rules not validly enacted, amended, or reviewed as rules creating violations for which a penalty may be imposed, where jurisdiction to adjudicate process server regulations has been delegated exclusively to the criminal courts under City and State law.

The New York City Charter, Chapter 64 establishes the Department of Consumer Affairs, and, together with the New York City Administrative Code, Title 20, Chapter 1, empowers the Commissioner of Consumer Affairs with licensing authority not otherwise conferred on others by law; to promulgate Rules "to carry out the powers and duties of the Department"; and to impose fines for violations, "the enforcement of which is within the jurisdiction of the department". NYC Charter, Ch. 64, §§ 2201, and 2203(c) and (f); New York City Administrative Code, Title 20, Ch. 1, § 20-104(e). The power of the Commissioner to promulgate Rules is also subject to general agency rulemaking provisions contained in the NYC Administrative Procedure Act (CAPA), Ch. 45, § 1043 of the New York City Charter. The Rules promulgated by the Commissioner of the Department of Consumer Affairs are codified in the Rules of the City of New York (hereafter "RCNY"), Title 6.

The New York City Administrative Code, Title 20, Ch. 1, § 20-106, entitled "Judicial Enforcement" governs enforcement of violations of Chapter 2 of the Code and the Rules promulgated thereunder, including process server regulations, unless otherwise specifically provided in Chapter 2. The Code, Title 20, Ch. 2, Subchapter 23, Sec. 409.1, effective  10/10/2010, entitled

"Violations and Penalties" sets forth the permissible penalties for violations of Subchapter 23, applicable to process servers.

Defendants use their investigatory powers, including issuing subpoenas and auditing records to conduct random audits of process server record keeping. Defendants' Subpoenas contained directives prohibiting the recipients of the Subpoenas from disclosing the existence of the Subpoenas to anyone during the pendency of the investigation. Since at least 2005 and continuing to the present time, Defendants have been administratively prosecuting and adjudicating alleged violations of the New York City Code and Rules regulating Process Servers by initiating administrative adjudication proceedings against Plaintiffs before the Department of Consumer Affairs Adjudication Tribunal, seeking adjudication of alleged violations and imposition of penalties for deficiencies in record keeping, reporting, and other alleged violations of the regulations. Staff attorneys in Defendants' Department of Consumer Affairs' legal division function as prosecutors, issuing Notices of Hearing and/or sometimes Letters charging Plaintiffs with violations of the Code and/or Rules regulating Process Servers. The Notices of Hearing are transmitted by mail with proposed settlement agreements and a cover letter indicating that if the process server does not settle the charges, additional charges may be asserted as well as additional fines. The settlement agreements require consent to injunctive directives placing stricter regulatory provisions on business practices beyond statutory provisions, waiver of rights, and also set fines for current and future violations in excess of statutory maximums to settle the charges and avoid loss of Plaintiffs' licenses. Plaintiffs who do not settle the violations are provided a hearing, presided over by an administrative law judge appointed and employed by the Department of Consumer Affairs. The administrative law judge renders findings of fact and recommendations for penalties, which are subject to approval or rejection and revision by the Commissioner of the Department of Consumer Affairs or designated

adjudication officials who are also employees of the Department. In almost all of the published decisions of the Tribunal, the Process Servers were adjudicated "guilty" of all violations charged, and ordered to pay maximum and cumulative fines, sometimes in excess of statutory maximums, as a condition of retaining their licenses. In many cases, licensees were penalized by immediate suspension or indefinite revocation of licenses in addition to the imposition of excessive fines. Where a licensee has previously signed a settlement agreement, and is charged with a subsequent violation, the Department of Consumer Affairs asserts duplicative charges against the licensee, alleging violation of the Rule and violation of the settlement agreement, and seeks double fines set under the settlement agreement in excess of statutory maximums.

Defendants also deny renewal of licenses based on their investigations, without affording a hearing if, in Defendants' judgment, a process server has not demonstrated fitness for renewal of a license.

Defendants' actions of taking control over the prosecution and adjudication of alleged violations of process server regulations, imposing injunctive directives placing stricter regulation on business practices beyond statutory authority, imposing fines for alleged violations of Rules which are not lawfully enacted, amended, or reviewed as Rules which create violations for which a penalty may be imposed, imposing fines in excess of statutory maximums, and denying license renewals without affording a hearing as required by statute have thwarted the statutory scheme, usurped legislative function, and deprived Plaintiffs' statutory and constitutional rights.

## ARGUMENT

Defendants move for dismissal of Plaintiffs' Amended Complaint pursuant to F.R.C.P. 12(b)(6), for failure to state a claim upon which relief can be granted. Under F.R.C.P. 8(a)(2), a pleading must contain a short and plain statement of the claim showing that the pleader is entitled to

relief. Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, <u>Ashcroft v. Iqbal</u>, 129 S. Ct. 1937, 1950 (2009). To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face", <u>Id.</u> at 1949 (citation omitted). A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. <u>Id.</u> The reviewing court must accept as true all of the allegations contained in a complaint, and consider the facts alleged in the light most favorable to Plaintiff. <u>Patane v. Clark</u>, 508 F. 3d 106, 111(2nd Circ., 2007). Determining whether a complaint states a plausible claim for relief is a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. <u>Iqbal v. Hasty</u>, <u>490 F.3d, 143, 157-158</u> (2nd Circ. 2007). When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief. <u>Ashcroft</u> at 1950. On a motion to dismiss, the review of such motion is limited, and "[t]he issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims," <u>Bernheim v. Litt</u>, 79 F. 3d 318, 321 (2<sup>d</sup> Cir. 1996) citing <u>*Villager Pond, Inc. v. Town of Darien,* 56 F.3d 375, 378 (2d Cir.1995)</u>(quoting <u>*Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974)</u>, *overruled on other grounds by* <u>*Davis v. Scherer,* 468 U.S. 183, 104 S.Ct. 3012, 82 L.Ed.2d 139 (1984)</u>). In assessing the legal sufficiency of a claim, the court may consider those facts alleged in the complaint, as well as "documents that the plaintiffs either possessed or knew about and upon which they relied in bringing the suit." <u>Patane</u>, 508 F 3d at 112.

To the extent Defendants argue the merits of Plaintiffs' claims in their Memorandum, if the Court does not exclude such arguments, and instead treats Defendants' motion as a motion under

Rule 56, under Rule 12(d), Plaintiffs must be given a reasonable opportunity to present material

pertinent to a motion under Rule 56.

## I. PLAINTIFFS' AMENDED COMPLAINT SETS FORTH SUFFICIENT FACTS WHEN TAKEN AS TRUE TO STATE A PLAUSIBLE CLAIM AGAINST DEFENDANTS FOR UNLAWFUL ADMINISTRATIVE ACTION AGAINST PLAINTIFFS ENTITLING PLAINTIFFS TO RELIEF

Plaintiffs' Amended Complaint alleges that the Administrative Code of the City of New

York, Title 20, Chapter 1, § 20-106[1] ("Code § 20-106"), and Chapter 2, Subchapter 23 govern the

adjudication and penalties for alleged violations process server regulations set forth in the

Administrative Code, Title 20, Chapter 2, Subchapter 23, and the Rules of the City of New York,

Title 6, Chapter 2, Subchapter W ("Code and Rules Regulating Process Servers") (Am. Compl. ¶13,

26).  The Administrative Code of the City of New York "has the force of a statute in the City of

New York" (_Bittrolff v Ho's Dev. Corp._, 77 NY2d 896, 899 n [1991]). In providing for a penalty of a

fine and/or imprisonment, the Code, § 20-106 classifies violations of process server regulations as

penal "offenses" [Penal Law § 10.00(1); See City of New York v. Verizon New York, Inc., 4 N.Y.3d

255, 259 (2005)]. Jurisdiction over adjudication of penal offenses is vested exclusively with the

criminal courts pursuant to N.Y. Crim. Proc. Law 10.30(1)(a). The provisions of Code § 20-106 are

subject **only** to provisions stating otherwise contained **in chapter two** (emphasis added).

Defendants do not explain how Defendants' policy to administratively adjudicate process

server violations can be harmonized with Administrative Code § 20-106. See Committee for Taxi

---

[1] NYC Admin. Code § 20-106, entitled "Judicial enforcement" provides that: Except as otherwise specifically provided in chapter two of this title, or in  subdivision b of this section, any person, whether or not he or she holds a license issued under chapter two, who violates any provision of chapter two or any regulation or rule promulgated under it shall, upon conviction thereof, be punished for each violation by a fine of not less than twenty-five dollars nor more than five hundred dollars, or by imprisonment not exceeding fifteen days, or both; and any such person shall be subject also to  a civil penalty in the sum of one hundred dollars for each violation, to be recovered in a civil action.

Safety v. City of New York, 40 Misc. 3d 930, 935(New York County Supreme, 2013). Defendants'

argument that the New York City Charter and Chapter One of Title 20 of the Code empower

Defendants to administratively adjudicate process server violations is erroneous. First, as stated

previously, Chapter 2, §20-106 specifically applies to violations of Chapter 2 and the rules

promulgated thereunder **unless specifically provided otherwise in Chapter Two**. Second, the

New York City Charter specifically limits the powers of the Department of Consumer Affairs to

impose civil penalties for violations "the enforcement of which is in the jurisdiction of the

Department".[2] Third, Chapter 1 of Title 20 of the Code at §20-104(e) also limits the powers of the

Commissioner to impose fines or civil penalties for the violation of any provision of law, "the

enforcement of which is within the jurisdiction of the department"[3].  Finally, Defendants' argument

contradicts fundamental rules of statutory construction by suggesting that Defendants can simply

disregard and dismiss the provisions of Code § 20-106 and elect to adjudicate process server

violations administratively.

      Nevertheless, statutory interpretation is the province of the Court, and does not warrant

Court deference to the interpretations proffered by administrative agency Defendants. Where the

issue is one of law, the agency is not entitled to deference because that issue is for the court (see e.g.

Matter of Bikman v New York City Loft Bd., 14 NY3d 377 [2010] [agency is not entitled to

---

[2] The New York City Charter, Chapter 64, §2203(h)(1)(formerly subd.(g), added by referendum amendment effective 11/2/2010)  states: Notwithstanding any inconsistent provision of law, the department shall be authorized, upon due notice and hearing, to impose civil penalties for the violation of any laws or rules the enforcement of which is within the jurisdiction of the department pursuant to this charter, the administrative code or any other general, special or local law.

[3] Admin. Code §20-104(e)(1) states: "The commissioner shall be authorized, upon due notice and hearing, to suspend, revoke or cancel any license issued by him or her in accordance with the provisions of chapter two and to impose or institute fines or civil penalties for the violation of (i) any of the provisions of chapter two of this title and regulations and rules promulgated under chapter two of this title and (ii) any of the provisions of any other law, rule or regulation, the enforcement of which is within the jurisdiction of the department including but not limited to subchapter one of chapter five of this title (the consumer protection law) subchapter two of chapter five (the truth-in-pricing-law)".

deference in interpreting the Multiple Dwelling Law and the Rules of the City of New York; matters of statutory interpretation do not require specialized agency knowledge]). Where an issue is limited to "pure statutory interpretation," a court is not required to defer to an administrative agency but rather should consider the plain language of the statute. Morris v. NYC Dept. of Health & Mental Hygiene, 2013 NY Slip Op 51635 (NY: Supreme Court 2013) citing e.g., Dunne v. Kelly, 95 AD3d 563, 564 (1st Dep't 2012); and also Lynch v. City of NY, 965 N.Y.S.2d 441, 445 (1st Dep't 2013) (statute must be read and given effect as written by legislature). When there is reasonable doubt surrounding the interpretation of a statute, "the party, of whom the penalty is claimed, is to have the benefit of it" (City of New York v. Verizon New York, Inc., 4 N.Y.3d 255, 259 (2005) citing Goodspeed v Ithaca St. Ry. Co., 184 NY 351, 354 [1906]; see also McKinney's Cons Laws of NY, Book 1, Statutes § 271). The plain language of Code § 20-106 indicates a legislative intent to provide the procedural and substantive protections of a criminal proceeding over process server violations (see Eaton v New York City Conciliation & Appeals Bd., 56 NY2d 340, 345 [1982]).

   Where the legislature intended to give adjudicative authority to the Department of Consumer Affairs, it has specifically stated so.[4]  The legislature has not evidenced any intent to grant authority to the Department of Consumer Affairs to adjudicate alleged process server regulations. The only provision of Chapter 2 of the Code which specifically addresses violations of process server regulations is § 20-409.1,[5] which states only that a person found guilty of violating "this

---

[4] Admin. Code 20-207(b), applicable to violations by Retail Cigarette Dealers, states: "Notwithstanding the provisions of subdivision a and b of section 20-106 of this code, any person who violates any provision of this subchapter or any rules promulgated thereunder shall be subject to a civil penalty of not less than two hundred and fifty dollars but not more than two thousand dollars for each violation, to be recovered in a civil action or in an administrative tribunal with jurisdiction. See also Code §§20-616(2), 20-699.6(2), and 20-784(2) which expressly vest adjudication authority for specified violations by other business licensees in the Department of Consumer Affairs Tribunal.

[5] NYC Admin. Code § 20-409.1, effective 10/11/2010 under Local Law 7/2010, provides: Any person who, after notice and hearing shall be found guilty of violating any provision of **this subchapter**, shall be punished in accordance with the

subchapter" (i.e. Subchapter 23) shall be punished in accordance with Chapter 1 by a fine of seven hundred to one-thousand dollars for each violation. Under no theory of statutory interpretation can this language be interpreted as a "specific" provision superseding the "Judicial Enforcement" provisions of § 20-106. In fact § 20-409.1 can easily be read as simply increasing the penalty permitted under § 20-106 for violations of subchapter 23 to a fine between seven hundred dollars and one-thousand dollars. Violations of the Rules regulating process servers are unaffected by §20-409.1, and continue to be governed by the provisions of §20-106. In any case, violations of the Codes and Rules regulating process servers continue to fall within the definition of "offenses" under New York State Penal Law § 10.00(1), the adjudication of which are within the exclusive jurisdiction of the criminal courts.

A criminal proceeding affords the accused the strictest procedural and constitutional protections, such as prosecution burden to prove guilt by proof beyond a reasonable doubt, accused's right to confront witnesses, and accused's right against self-incrimination, and an administrative proceeding affords an accused probably the least. See Hannah v. Larche, 363 US 420, 440-442 (1960), and Matter of Rosenthal v. Hartnett, 36 NY 2d 269 (1975). Considering the significant role of process servers in government and legal administration and the ever evolving legal decisions on valid service of process, it makes sense that the City Council would delegate the adjudication of process server regulations to the court system which litigates and rules on the boundaries of proper service of process, understand the issues and challenges of process serving, and are entrusted with the duty to balance the rights of litigants across all legal disciplines.

---

provisions of chapter one of this title and shall be subject to a penalty of not less than seven hundred dollars nor more than one thousand dollars for each violation.

Notably, Defendants own Administrative Law Judges have repeatedly cited Code §20-106 in their decisions as a statute applicable to process servers, providing for criminal prosecution of violations.[6]

Defendants' arguments asserting Defendants are authorized to impose penalties beyond statutory limits, and impose injunctive directives restricting business practices beyond legislative provisions and beyond administrative authority also ignore basic principles of law. The Department of Consumer Affairs possesses only the powers expressly or impliedly conferred by the Legislature and the City Council. See Matter of Nicholas v. Kahn, 47 NY2d 24, 31 (1979). Defendants are unable to identify the source of their authority to issue directives ordering businesses to conduct business in a way that is not otherwise mandated by statute, or to impose fines in amounts and manner which exceed statutory provisions. Imposition of penalties or remedies which are not authorized by law are excessive as a matter of law. Further, a penal statute must be strictly construed in favor of the person against whom the penalty is sought to be enforced Matter of Adrian v. Bd. Of Educ. of the East Ramapo Cent. Sch. Dist., 60 AD2d 840 (2nd Dept. 1978), citing President, etc. Manhattan Co. v. Kaldenberg, 165 NY 1,7). Cumulative or consecutive penalties are specifically prohibited by Penal Law 70.25(3) with regard to offenses enforceable under N.Y.C. Admin. Code § 20-106.  See Matter of Walker v. Walker, 86 NY2d 624, 629 (1995). The Double Jeopardy Clause of the Fifth Amendment to the United States Constitution, which is applicable to the States through

---

[6] Attached to Harkins' Declaration in Opposition as Exhibit A are copies of ALJ decisions citing Code §20-106, and acknowledging it as a criminal prosecution statute in the Matter of Department of Consumer Affairs v. Bruce Schwartz, Vio. No. LL005324909 (E. DeFontes, ALJ, 2013); Department of Consumer Affairs v. Royale Process Serving, LLC, Vio. No. LL005324908 (R. Zeitler, Jr., ALJ, 2013); Department of Consumer Affairs v. Howard Clarke, Violation No. LL005307562 (N. Tumelty, ALJ and James Plotkin, DDA, 2013); Department of Consumer Affairs v. Alvin Gonzalez, Vio. No. LL002532639  (Steven T. Kelly, ALJ, 2011); and, Department of Consumer Affairs v. Robbie Lawson, Violation No. LL005130913, (Lee Fawkes, ALJ, 2010).

the Fourteenth Amendment, provides three separate constitutional protections: (1) protection against a second prosecution of the same offense after acquittal, (2) protection against a second prosecution for the same offense after conviction, and (3) protection against multiple punishments for the same offense (People v. Conrad, 169 Misc. 2d 1066, 1068 [2nd Dept. 1996] citing *North Carolina v Pearce*, 395 US 711, 717; *Benton v Maryland*, 395 US 784; *Helvering v Mitchell*, 303 US 391, 399; *Matter of Barnes v Tofany*, 27 N.Y.2d 74, 77-78). The United States Supreme Court has defined "same offense" as follows: "[t]he applicable rule is that, where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one is whether each provision requires proof of an additional fact which the other does not." (Conrad, id. citing *Blockburger v United States*, 284 US 299, 304.) Likewise the Court of Appeals has stated that, "[i]n essence, to be the `same offense' within the meaning of the Federal Double Jeopardy Clause the crimes must have essentially the same statutory elements or one must be a lesser included offense of the other" (Conrad, id. citing *Matter of Corbin v Hillery*, 74 N.Y.2d 279, 289). Since a legislature may authorize cumulative punishment under two statutes for a single course of conduct, the multiple-punishment inquiry in the context of a single proceeding focuses on whether the legislature actually authorized the cumulative punishment" (Conrad at 1069, citing *United States v Halper*, *supra*, at 451, n 10; *see also*, *Department of Revenue v Kurth Ranch*, 511 US 767, 781-782, n 21).

Plaintiffs' Amended Complaint alleges that on at least two occasions each, during the period February 27, 2005 and November 27, 2013, and continuing to the present,  specified Defendants have knowingly and intentionally caused, participated in, or directly administratively charged and adjudicated, and continue to administratively charge and adjudicate, and coercively solicit settlement agreements, for  alleged violations of the Code and Rules regulating process servers

against specified Plaintiffs and Plaintiff NYSPPSA current and former members (Am. Compl. ¶¶ 22-25, 31, 35), violations over which the criminal courts have exclusive jurisdiction under the express provision of the Code §20-106 (Am. Compl. ¶ 14).

Plaintiffs' Amended Complaint also alleges that specified Defendants have been prosecuting specified Plaintiffs for violations of Rules regulating process servers which have not been enacted, amended, or reviewed as rules creating a violation for which a penalty may be imposed as required by the NYC Charter, §1043(d) and Local Law 35/2013 (Am. Compl. ¶¶ , Matter of Council of the City of New York v. Dept. of Homeless Services of City of NY, 2013 NY Slip Op 7826 (2013) (rule unenforceable for failure to comply with notice and hearing requirements).

Plaintiffs' Amended Complaint also alleges that specified Defendant have been imposing fines against specified Plaintiffs in sums and manner which exceed of the amount of fines and manner of imposing fines allowed by law (Am. Compl. ¶ 31,33,34,51,58).

Plaintiffs' Amended Complaint alleges that the specified Defendants' actions have resulted in specified past and continuing direct injury to Plaintiff NYSPPSA (Am. Compl. ¶¶ 66-67, 112-114, 129-131) [Padberg v. McGrath-McKechnie, 203 F. Supp. 2d 261 (EDNY, 2002), referring to Havens, 455 U.S. at 379, 102 S.Ct. 1114; Ragin v. Harry Macklowe Real Estate Co., 6 F.3d 898, 905 (2d Cir.1993)], and that one or more members of Plaintiff NYSPPSA are suffering immediate or threatened injury as a result of Defendants' actions (Am. Compl. ¶ 64, 110, 127). An association has standing to sue on behalf of its members "when a) its members would otherwise have standing to sue in their own right; b) the interests it seeks to protect are germane to the organization's purpose; and c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit.", NYS Club Assn. v. City of New York, 487 U.S. 1, 9-10 (1988), see also Automobile Workers v. Brock, 477 U. S. 274 (1986). Plaintiff NYSPPSA has standing to bring this

suit on behalf of its individual members, since those individuals "are suffering immediate or threatened injury" to their (associational) rights as a result of the Law's enactment. NYS Club Assn. v. City of New York, 487 U.S. 1, 9-10 (1988), citing Warth v. Seldin, 422 U. S. 490, 511 (1975).

The allegations of Plaintiffs' Amended Complaint permit the reasonable inference that the specified Defendants are liable to the specified Plaintiffs for legal and equitable relief, including declaratory judgment for the specified Defendants' unlawful actions. Boreali v. Axelrod, 71 NY2d 1 (1987), Subcontractors Trade v. Koch, 62 NY2d 422 (1984), Peters v. Hobby, 349 U.S. 331 (1955).

## II. PLAINTIFFS' AMENDED COMPLAINT SETS FORTH SUFFICIENT FACTS, WHEN TAKEN AS TRUE STATE A PLAUSIBLE CLAIM FOR RELIEF AGAINST DEFENDANTS UNDER 42 U.S.C. §1983.

U.S. Code Section 1983 "is not itself a source of substantive rights," but merely provides "a method for vindicating federal rights elsewhere conferred." Albright v. Oliver, 510 U.S. 266, 271 (1994) citing Baker v. McCollan, 443 U. S. 137, 144, n. 3 (1979). A municipality can be sued under § 1983, but it cannot be held liable unless a municipal policy or custom caused the constitutional injury. Leatherman v. Tarrant County, 507 U.S. 163, 166-167 (1993). By the plain terms of § 1983, two—and only two—allegations are required in order to state a cause of action under that statute: first, the plaintiff must allege that some person has deprived him of a federal right, and second, he must allege that the person who has deprived him of that right acted under color of state or territorial law. Gomez v. Toledo, 446 U.S. 635, 640 (1980).

Plaintiffs' Amended Complaint alleges that Defendant City of New York requires only individual process server license applicants to pass an examination as a condition of licensing and renewal, to demonstrate knowledge of the applicant concerning proper service of process and familiarity with relevant laws and rules, which rationale would apply to all New York City business licensees who are not required to pass an examination as a condition of licensing and renewal,

resulting in arbitrarily and unfair disparate treatment of individual process server license applicants, depriving equal protection of the laws under New York State and the U.S. Constitutions (Am. Compl ¶¶ 39-44).

The allegations of Plaintiffs' Amended Complaint can be fairly construed as alleging that Defendant City of New York is liable to Plaintiff process server licensees for legislating in a manner which denies equal protection of the laws to individual process server license applicants, depriving Plaintiffs of a federal right, sufficient to state a claim for relief under traditional equal protection analysis. See Carrington v. Rash, 380 U.S. 89 (1965), and FS Royster Guano Co. v. Virginia, 253 U.S. 412 (1920).

Plaintiffs' Amended Complaint alleges that specified Defendants engaged in specified actions whereby they have administratively taken over the adjudication of alleged violations of process server regulations against specified Plaintiffs without jurisdiction (Am. Compl. ¶¶ 20-25), prosecuting Rules which have not been lawfully enacted, amended, or reviewed as Rules creating a violation for which a penalty may be imposed (Am. Compl. ¶¶ 15, 20, 22-23), and conducted administrative adjudications and ruled in favor of the Department of Consumer Affairs, with unlawful influence by specified Defendants' specified ex parte communications (Am. Compl. ¶¶ 25, 28-29,31), without sworn testimony or authenticated evidence, or without evidence at all (Am. Compl. ¶ 32), have imposed injunctive directives without authority and fines exceeding statutory limits (Am. Compl. ¶¶ 20-21,31,33-35), and denied process server license renewals without affording a hearing (Am. Compl. ¶ 37), exceeding the outer limits of Defendants' legitimate government action, outrageously arbitrarily, and with a gross abuse of government authority (Am. Compl. ¶¶ 48 - 60) and constitutionally insufficient administrative procedures (Am. Compl. ¶49-55, 57-60) [Wooten-Frances v. City of New York, No. 11-CV-2341 (EDNY, 2013)] including settlement

agreements requiring Plaintiffs to waive statutory and constitutional rights (Am. Compl. ¶51) all

pursuant to official policy or otherwise under color of law (Am. Compl. ¶¶ 45-59), in violation of

New York City law and New York State law (Am. Compl. ¶¶ 47-59), depriving specified Plaintiffs'

specified property rights (Am. Compl. ¶¶ 39, 61), and denying specified Plaintiffs' State and federal

rights to substantive and procedural due process under specified provisions of the New York State

and U.S. Constitutions (Am. Compl. ¶¶ 47-59), so as to satisfy the pleading requirements for a §1983

claim.

Plaintiffs' Amended Complaint further alleges that the specific Rules regulating process

servers were not enacted, amended, or reviewed as rules creating a violation for which a penalty may

be imposed (Am. Compl. ¶¶ 131-136), are overbroad and lacking in standards easily understood by

individuals of ordinary intelligence, and permit arbitrariness in enforcement and lack of standards

for review of Department action (Am.. Compl ¶ 137), depriving specified state and federal rights of

specified Plaintiffs (Am. Compl.(¶ 139) [see Albright v. Oliver, 510 U.S. 266, 271 (1994)], and

depriving specified Plaintiffs' specified property rights by Defendants (Am. Compl. ¶¶ 39, 61, 69).

Although courts generally disfavor facial vagueness challenges outside the context of the

First Amendment," Genco Importing, Inc. v. City of N.Y., 552 F.Supp.2d 371, 384 (S.D.N.Y. 2008);

accord Farrell v. Burke, 449 F.3d 470, 496 (2d Cir.2006); see also Dickerson v. Napolitano, 604 F.3d 732,

741-42 (2d Cir.2010) (setting out reasons that facial vagueness challenges are generally disfavored),

the Second Circuit has acknowledged that the question of whether facial void-for-vagueness

challenges are permissible at all when a challenge is not based on the First Amendment is

"unsettled." Id. at 743. To the extent that such challenges are allowed, the Circuit has suggested that

they may be presented only when "no set of circumstances exists under which the law would be

valid," or when the challenge is "in the presence of a constitutionally-protected right." Id. at 743-44

(citing, *inter alia, City of Chicago v. Morales*, 527 U.S. 41, 53, 119 S.Ct. 1849, 144 L.Ed.2d 67 (1999)

(Stevens, J., plurality opinion); *United States v. Salerno*, 481 U.S. 739, 745, 107 S.Ct. 2095, 95 L.Ed.2d

697 (1987)) (internal quotation marks omitted).

   The allegations of Plaintiffs' Amended Complaint when taken as true permit the court to

draw the reasonable inference that there is no set of circumstances under which New York City

agency process server rules, not enacted, amended, reviewed as violations for which a penalty may

be imposed pursuant to law governing enactment of rules, which are overbroad and lack standards

easily understood by individuals of ordinary intelligence, and permit arbitrariness in enforcement,

and lack standards for review of Department action would be valid, entitling Plaintiff to relief.

Further Plaintiffs' Amended Complaint alleges specific facts underlying Plaintiffs' void-for-

vagueness challenge which implicate constitutionally protected rights and imposition of criminal

penalties in the form of fines and/or imprisonment against violators under Code § 20-106 as

discussed previously.

   Plaintiffs' Amended Complaint states sufficient facts permitting the Court to draw the

reasonable inference that the specified Defendants are liable for the specified actions against the

specified Plaintiffs under 42 U.S.C. § 1983, entitling said Plaintiffs to legal and/or equitable relief.

## III. PLAINTIFFS' AMENDED COMPLAINT SETS FORTH SUFFICIENT FACTS, WHEN TAKEN AS TRUE TO STATE A PLAUSIBLE CLAIM FOR RELIEF AGAINST THE INDIVIDUAL DEFENDANTS UNDER 18 U.S.C. §1964 FOR VIOLATIONS OF THE RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT.

   In order to plead a violation of RICO, plaintiffs must allege (1) conduct (2) of an enterprise

(3) through a pattern (4) of racketeering activity. *See Sedima, S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479,

496, 105 S.Ct. 3275 (1985), see also SQKFC, Inc. v. Bell Atl. TriCon Leasing Corp., 84 F. 3d 629,

633 (2d Circ. 1996). The RICO statute defines "racketeering activity" to include acts which are

indictable under 18 U.S.C. § 1341 relating to mail fraud, or 18 U.S.C. § 1343 relating to wire fraud. 18 U.S.C. § 1961(1)(B). A pattern of racketeering activity requires at least two predicate acts of racketeering. *See* 18 U.S.C. § 1961(5).

Plaintiffs' Amended Complaint alleges specifically identified individual defendants engaged in specified actions against specified individual Plaintiffs and specified Plaintiff NYSPPSA current and former members, whereby Defendants acquired and maintained control (Am. Compl. ¶ 95, 100), conducted and continue to conduct (Am. Compl. ¶ 103), and otherwise participated in (Am. Compl. ¶ 102, 105-107) acquiring control and conducting the enforcement, prosecution, and adjudication of alleged violations of the New York City Process Server regulations through the Department of Consumer Affairs Adjudication Tribunal, enterprises (Am. Compl. ¶¶ 73-75) as defined by 18 U.S.C. § 1961(4) affecting interstate commerce (Am. Compl. ¶ 107) through two or more acts by each Defendant over a period of more than two years (Am. Compl. ¶¶, 18-28, 30-35, 37-38) constituting mail fraud or wire fraud (Am. Compl. ¶¶ 76-80, 82- 87, 90-94, 98-100), witness tampering (¶¶ 81 and 89), and/or extortion (Am. Compl. ¶¶ 88, 97, and 108), racketeering activity, resulting in injury to Plaintiffs in their business and/or property (Am. Compl. ¶¶ 101), to sufficiently state a claim entitling Plaintiffs to relief against Defendants under 18 U.S.C. §1964.

### a. PLAINTIFFS' AMENDED COMPLAINT STATES A PLAUSIBLE CLAIM FOR MAIL FRAUD AND WIRE FRAUD 18 USC §§1341 AND 1343.

Among the predicate acts of racketeering are federal mail fraud under 18 U.S.C. § 1341 or federal wire fraud under 18 U.S.C. § 1343. 18 U.S.C. 1961(1)(B). The federal mail and wire fraud statutes prohibit the use of the mail or interstate wires for purposes of carrying out any scheme or artifice to defraud. *See* 18 U.S.C. §§ 1341, 1343.

A complaint alleging mail and wire fraud must show (1) the existence of a scheme to defraud, (2) defendant's knowing or intentional participation in the scheme, and (3) the use of interstate mails or transmission facilities in furtherance of the scheme. SQKFC, Inc. v. TriCon Leasing Corp., 84 F 3d 629, 633 (2d. Circ. 1996) citing *United States v. Gelb*, 700 F.2d 875, 879 (2d Cir. 1983), *cert. denied,* 464 U.S. 853, 104 S.Ct. 167, 78 L.Ed.2d 152 (1983).

Plaintiffs' Amended Complaint alleges specified individual Defendants engaged in specified fraudulent actions against specified Plaintiffs and Plaintiff NYSPPSA current and former members, including the approximate dates the fraudulent representations were communicated, the identity of the Defendants making the fraudulent representations, the substance of the fraudulent communications, the mode of communication of the fraudulent representations, the circumstances demonstrating the specified Defendants' knowledge of the falsity of the representations, the identity of the Plaintiffs to whom the fraudulent representations were made, the purpose of the fraudulent scheme, and the individual Defendants' knowing and intentional participation in the scheme, and the specified loss of business and property caused to specified Plaintiffs, with sufficient specificity to provide Defendants notice of the precise misconduct alleged against them, and satisfy the enhanced pleading requirements of F.R.C.P. 9(b), demonstrating the existence of a scheme to defraud, and alleges Defendants transmission of the fraudulent communications to Plaintiffs using the U.S. mail or other interstate carrier, and/or interstate wire transmission (Am. Compl. ¶¶ 18-23, 25-27, 30-31, 37-38, 76-86, 90, 92, 96, 98-99, 101, 104-105).

The allegations of Plaintiffs' Amended Complaint permit the Court to draw the reasonable inference that the specified individual Defendants knowingly or intentionally participated in a scheme to defraud the specified Plaintiffs or Plaintiff current and former members using the U.S.

Mail, other interstate carrier, and/or interstate wire transmissions entitling said Plaintiffs to legal relief.

## b. PLAINTIFFS' AMENDED COMPLAINT STATES A PLAUSIBLE CLAIM FOR WITNESS TAMPERING UNDER 18 U.S.C. §1512(b)(3).

18 U.S.C. §1512(b)(3) makes it unlawful to use intimidation, threats, or corrupt persuasion toward another person, or attempt to do so, or engage in misleading conduct toward another person, "with intent to ... hinder, delay or prevent the communication to a law enforcement officer ... of the United States of information relating to the commission or possible commission of a Federal offense. Subparagraph (f) further provides, "for the purposes of this section, (1)an official proceeding need not be pending or about to be instituted at the time of the offense", and; subparagraph (g) states, "no state of mind need be proved with respect to the circumstance (2) that the judge is a judge of the United States or that the law enforcement officer is an officer or employee of the Federal Government or a person authorized to act for or on behalf of the Federal Government or serving the Federal Government as an adviser or consultant."

Plaintiffs' Amended Complaint alleges that on at least two occasions each, specifically identified individual Defendants issued Subpoenas to specifically identified Plaintiffs and Plaintiff NYSPPSA current and former members (Am. Compl. ¶ 18) directing the specified Plaintiffs not to disclose the existence of the subpoenas to anyone under threat of civil penalties and sanctions (Am. Compl. ¶ 19, 79), and contained fraudulent representations that the specified Defendants who issued the Subpoenas, or caused the Subpoenas to be issued, had authority to prohibit disclosure of the existence of the subpoenas under threat of civil penalties and sanctions (Am. Compl. ¶79); which directives prohibiting disclosure of the existence of the subpoenas were made to intimidate, threaten, or corruptly persuade, or an attempt to do so with intent to hinder, delay, or prevent

communication by said Plaintiffs to a law enforcement officer or judge of the United States of information relating to specified Defendants' deprivation or possible deprivation, and conspiracy to deprive Plaintiffs of their constitutional or civil rights, Federal offenses pursuant to 18 U.S.C. §§ 241 and 242 (Am. Compl. ¶81).

Plaintiffs' Amended Complaint also alleges that on at least two occasions each over a period between September, 2008 and June 12, 2013, specifically identified Defendants engaged in unlawful ex parte communications with specifically identified individual co-Defendant Administrative Law Judges, directing said co-Defendants to rule in favor of the Department of Consumer Affairs and to impose maximum fines against specifically identified Plaintiffs in adjudication proceedings under threat of economic harm in the form of adverse employment action (Am. Compl. ¶¶ 28, 89), with the intent to intimidate, threaten, or corruptly persuade said Administrative Law Judges, or an attempt to do so, with intent to hinder, delay, or prevent communications to a law enforcement officer or judge of the United States, of information relating to Defendants' deprivation or possible deprivation, and conspiracy to deprive specified Plaintiffs of their constitutional or civil rights, Federal offenses pursuant to 18 U.S.C. §§ 241 and 241 (Am. Compl. ¶ 89).

The allegations of Plaintiffs' Amended Complaint permit the court to draw the reasonable inference [Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009)] that if the potential informant Plaintiffs or Administrative Law Judges communicated with an attorney or a government official regarding the unlawful actions of the specified Defendants, at least one of these communications would have been communicated to a federal law enforcement officer to satisfy the federal jurisdictional element of § 1512(b)(3), and state a plausible claim against the specified Defendants for witness tampering under 18 U.S.C. 1951(b)(3). See U.S. v. Diaz, 176 F. 3d 52, 91 (2d Circ. 1999).

**c. PLAINTIFFS' AMENDED COMPLAINT STATES A PLAUSIBLE CLAIM FOR EXTORTION UNDER 18 U.S.C. §1951.**

18 U.S.C. § 1951 makes is unlawful to obstruct, delay, or affect commerce or the movement of any article or commodity in commerce, by robbery or extortion or attempt or conspire to do so. Extortion is defined as "the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear, or under color of official right." 18 U. S. C. § 1951(b)(2).

Plaintiffs' Amended Complaint alleges that process serving is a public function and a state function, and affects interstate commerce (Am. Compl. ¶ 72). Plaintiffs' Amended Complaint also alleges that the New York City Department of Consumer Affairs is an enterprise, the activities of which affect interstate commerce (Am. Compl. ¶ 73); and, the adjudication of the New York City Codes and Rules regulating Process Servers is an enterprise, the activities of which affect interstate commerce (Am. Compl. ¶ 74).

Plaintiff's Amended Complaint alleges that specified Defendants issued specified documents and publications on at least two occasions each during the period between February 27, 2005 and February 18, 2014  against specified Plaintiffs and Plaintiff NYSPPSA current and former members (Am. Compl. ¶¶ 18, 20-22, 30-34, 37-38) containing explicit and implicit threats by said Defendants to subject said Plaintiffs to investigations, to charge said Plaintiffs with violations of the New York City Codes and Rules regulating process servers, to impose maximum fines and other sanctions on said Plaintiffs, to allege additional charges and additional fines if Plaintiffs do not enter settlement agreements, to destroy said Plaintiffs' businesses by imposition of larger fines, to publish disparaging information conveying dishonesty, fraud, and misconduct in said Plaintiffs' business practices among government agencies, attorneys and courts, to revoke or deny renewal of licenses,

and disqualify said Plaintiffs from receiving any business license issued by the New York City

Department of Consumer Affairs, which documents and publications were issued under color of

right, and enabled said Defendants to obtain property from said Plaintiffs with said Plaintiffs'

consent in the form of payment of fines and/or loss of licenses, and payment of costs for additional

overhead to follow said Defendants injunctive directives to facilitate said Defendants oversight and

disciplinary action in the process serving industry, to pay for background checks on employees or

sub-contractors, pay for training, prepare extensive records and additional forms, and provide

additional documentation for audit, all with said Plaintiffs' consent, said Plaintiffs' being aware that

said Defendants had the ability to destroy said Plaintiffs' businesses, and also had control over said

Plaintiffs' licenses, and also had influence on New York City officials and in New York City and

State Courts, and said Defendants' threats and removal of property from said Plaintiffs did and does

affect interstate commerce and cause said Defendants to be in violation of 18 U.S.C.§ 1951 (Am.

Compl. ¶88).

Plaintiffs' Amended Complaint also alleges the conduct of specified Defendants

constituted a scheme to defraud by exploiting said Defendants control over process servers licenses

to corruptly persuade specified Plaintiffs to pay fines and agree to injunctive directives using their

authority and influence as officials and employees of the City of New York, and by issuing

subpoenas prohibiting communication and disclosure under threat of sanctions and penalties,

issuing Notices ordering said Plaintiffs to appear for hearing before the Department of Consumer

Affairs Adjudication Tribunal, charging violations and informing Plaintiffs they were subject to

maximum fines and revocation of their licenses; issuing Letters coercively soliciting settlement

agreements with injunctive provisions and unlawful fines with the caveat that if settlement

agreements were not signed, Plaintiffs may be subject to additional charges and additional fines;

engaging in ex parte communications directing and coercing Administrative Law Judges to find in

favor of the Department of Consumer Affairs; conducting administrative adjudications by  shifting

the burden of proof on the accused; imposing fines in the tens of thousands of dollars and revoking

business licenses for inconsequential record keeping errors; rendering decisions creating legal

precedent for future adjudications and appeals; publicizing violations, consent orders, and

adjudication orders on a public website, and imparting dishonesty, fraud, and misconduct in

Plaintiffs' business practice, in furtherance of Defendants' scheme to acquire, maintain, and conduct

prosecution and adjudication of violations of process server regulations, and collect unlawful fines

and retain maximum proceeds of fines collected (Am. Compl. ¶ 96), placing specified Plaintiffs and

Plaintiff NYSPPSA former and current members in fear of exposure to fines in the tens of

thousands of dollars, and loss of their licenses and their livelihoods, compelling said Plaintiffs to

consent to sign settlement agreements further regulating and restricting their business practices

beyond statutory provisions and waiving their constitutional and statutory rights, surrendered

licenses, and paid fines (Am. Compl. ¶¶ 97, 99).

Defendants do not provide any authority for Defendants' argument that FRCP Rule 9(b)

applies to claims based on extortion.[7] The enhanced pleading requirements of FRCP Rule 9(b) are

limited to the two specific instances of claims based on fraud or mistake.

The allegations of Plaintiffs' Amended Complaint, taken as true allow the court to draw

the reasonable inference that the specified individual Defendants are liable for the misconduct

alleged. Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009).

---

[7] FRCP Rule 9(b) (b) entitled FRAUD OR MISTAKE; CONDITIONS OF MIND states" In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally.

**IV. PLAINTIFFS' AMENDED COMPLAINT STATES A PLAUSIBLE CLAIM AGAINST DEFENDANTS FOR DEFAMATION PER SE**

Plaintiffs' Amended Complaint alleges that commencing on or about October 10, 2010 and continuously to the present, specified Defendants published specified documents created by specified Defendants, some of which were acknowledged and validated by specified Plaintiffs as a result of specified conduct by said Defendants constituting duress, containing specified false and fraudulent statements conveying fraud, dishonesty, misconduct or unfitness by specified Plaintiffs and Plaintiff NYSPPSA current and former members in said Plaintiffs' business practices on Defendants' website (Am. Compl. ¶¶ 38, 117- 131), which, taken as true permit the Court to draw a reasonable inference that the specified Defendants are liable to the specified Plaintiffs for the actions alleged.

**V. PLAINTIFFS' AMENDED COMPLAINT STATES SUFFICIENT FACTS WHEN TAKEN AS TRUE TO STATE A PLAUSIBLE CLAIM THAT DEFENDANTS ACTED AGAINST PLAINTIFFS WITH COMPLETE ABSENCE OF JURISDICTION SO AS TO NEGATE ANY CLAIMS OF IMMUNITY**

Plaintiffs' Amended Complaint alleges that specified Defendants, acting in prosecutorial and quasi-judicial capacities, acted with a complete absence of jurisdiction by administratively prosecuting and adjudicating alleged violations of the process server regulations against specified Plaintiffs and Plaintiff NYSPPSA current and former members in the Department of Consumer Affairs Adjudication Tribunal because the statutory provisions of N.Y.C. Admin. Code §20-106 govern enforcement and adjudication of process server violations, and vest exclusive jurisdiction with the criminal courts (Am. Compl. ¶¶14, 20-23, 25, 31, 35), negating any claims of the specified Defendants to immunity from suit.

## <u>CONCLUSION</u>

For the reasons set forth above, the Defendants' motion to dismiss Plaintiffs' Amended

Complaint pursuant to FRCP 12(b)(6) should be denied in its entirety.

Dated: Mt. Sinai, NY
      June 20, 2014

s/Tracy J. Harkins
TRACY J. HARKINS, ESQ.
Attorney for Plaintiffs
48 Birch Hill Road
Mt. Sinai, NY 11766
(631) 476-3650
tjharkinsesq@optonline.net
