```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------ X
New York State Professional Process  :
Servers Association, Inc. on behalf of :
itself and aggrieved members, and    :
Howard D. Clarke, and Stephen J.     :
Boyko, Inc. d/b/a Consolidated Claims :
Service, Individually, and as        :
Representatives for all similarly    :
situated Process Server Individuals  :
and Process Serving Agencies as      :
defined by the New York City         :
Administrative Code, Title 20, Chapter :
2, Section 20-404,                   :
                    Plaintiffs,      :
       -v-                           :
                                     :
City of New York and Michael T.      :
Bloomberg, Bill de Blasio, Jonathan E. :   14 Civ. 1266 (DLC)
Mintz, Alba Pico, Marla Tepper, Esq., :
Sanford Cohen, Esq. Nancy J.         :   OPINION & ORDER
Schindler, Esq. Bruce Dennis, Esq.,  :
James M. Plotkin, Esq. Nicholas J.   :
Minella, Esq., Alvin Liu, Esq. Shannon :
Bermingham, Jordan Cohen, Esq., Philip :
Kimball, Esq. Lori Barrett, Esq. Megan :
Roberts, Esq., Wanda Day, Esq., Fred :
R. Cantor, Esq., Allison Rene Johnson, :
Esq., Eunice Rivera, G. Pikulina, P. :
Kumar, Michele Mirro, Esq., Mitchell :
B. Nisonoff, Esq. Lee Fawkes, Esq.   :
Steven T. Kelly, Esq., Nancy Tumelty, :
Esq., Susan Kassapian, Esq., Maurice :
Nwikpo-Oppong, Esq., Eryn A. DeFontes, :
Esq., Richard Zeitler, Jr., Esq.,    :
David Scott Paul, Esq., Shanet Viruet, :
Esq., and Judith Gould, Esq., all    :
Individually and in their capacities :
as officials and employees of the City :
of New York,                         :
                                     :
                    Defendants.      :
------------------------------------ X
```

APPEARANCES:

For Plaintiffs New York State Professional Process Servers
Association, Howard D. Clarke, and Stephen Boyko, Inc.:

Tracy J. Harkins
48 Birch Hill Road
Mount Sinai, NY 11766

For Defendants New York City and Individual City Defendants:

Sherryl R. Neufeld
Mark W. Muschenheim
Jasmine M. Georges
Corporation Counsel of the City of New York
100 Church Street
New York, New York 10007

For Defendants Susan Kassapian and Michelle Miro:

Walter A. Kretz, Jr.
Scopetta Seiff Kretz & Abercrombie, LLP
444 Madison Avenue, 30th Floor
New York, NY 10022


DENISE COTE, District Judge:

     The New York State Professional Process Servers Association

("NYSPPSA"), Howard D. Clarke, and Stephen Boyko, Inc.

(collectively, "Plaintiffs") bring this putative class action

against the City of New York ("City") and thirty-eight

individual defendants associated with the enforcement of City

process server rules, including elected officials, City

employees, and administrative law judges ("City Defendants")

(collectively "Defendants") in their official and individual

capacities.  Plaintiffs contend that the City administratively

enforces process server laws and regulations without authority. On this basis Plaintiffs bring claims under 42 U.S.C. 1983 ("Section 1983"), and the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. 1961, et seq.  Plaintiffs also contend that certain provisions of the New York City Administrative Code ("Administrative Code") are unconstitutionally vague, and that penalties the City imposes on process servers violate the Excessive Fines Clause of the Eighth Amendment to the United States Constitution.  Finally, Plaintiffs bring a claim under New York state law for defamation, and challenge several of the Defendants' actions on state law grounds.

Defendants have moved to dismiss the Plaintiffs' amended complaint ("Amended Complaint").  For the following reasons, the Defendants' motion to dismiss is granted as to the federal claims.  The Court declines to exercise supplemental jurisdiction over the state claims.

## BACKGROUND

The following facts are taken from the Amended Complaint, or are undisputed facts on which the parties rely in addressing this motion to dismiss.  NYSPPSA is an association representing process serving agencies and individual process servers licensed

3

under New York City law.  Howard D. Clarke is an individual
process server licensed by the City.  Stephen J. Boyko, Inc. is
a process serving agency licensed by the City.  The City
Defendants are elected officials and New York City Department of
Consumer Affairs ("DCA") officials, including administrative law
judges.

Under the Administrative Code, process servers must obtain
a license issued by the City.  As a condition of obtaining a
license, process servers must pass a licensing test.  Process
servers are regulated by the DCA.  A description of the DCA's
system for administratively enforcing process server laws and
regulations follows.

In enforcing the City's process server laws and
regulations, DCA staff attorneys serve as prosecutors, and
administrative law judges adjudicate alleged violations.  These
violations include record keeping deficiencies, reporting
deficiencies, and the failure to comply with other relevant
provisions of the Administrative Code governing process servers.
DCA attorneys employ their investigatory powers in determining
whether to instigate an administrative prosecution.  These
powers include the issuing of subpoenas and the random auditing
of process server records.  According to Plaintiffs, the DCA
sometimes directs process servers not to disclose the existence

4

of the subpoenas to anyone.

Since at least 2005, and through the present, some violations of the City's process server rules have been administratively adjudicated in the DCA Tribunal ("Tribunal"). In the Tribunal, hearings are held before administrative law judges, who render findings of fact and recommendations for any penalties, which are subject to ultimate approval by the Commissioner of DCA. Penalties that are imposed can include the suspension of licenses and the imposition of fines. Plaintiffs state that the DCA has imposed fines in excess of statutory maximums. Plaintiffs also state that DCA has imposed cumulative penalties for the same offense. Tribunal proceedings do not afford parties the same procedural protections employed in criminal courts. City and DCA officials sometimes communicate with DCA administrative law judges regarding DCA policies and directives. Process servers can appeal the Tribunal's and DCA's determinations to New York state court in a Rule 78 proceeding. See N.Y. C.P.L.R. 7801, et seq.

Before a matter gets to the Tribunal stage, DCA officials sometimes resolve charges through "Consent Orders" and "Assurance of Discontinuance" agreements between DCA and process servers. These agreements can provide for the imposition of fines and injunctive directives. The fines and penalties

imposed on process servers who settle are generally lower than those imposed by the Tribunal.  If a process server has signed a settlement agreement and is charged with a subsequent violation, DCA will assert a charge for violation of the settlement agreement in addition to the violation of the underlying law or regulation and seek fines and/or penalties for violation of the settlement in addition to those imposed for violation of the underlying law or regulation.

DCA has also on occasion denied process servers the renewal of their licenses based on investigations into alleged delinquencies on the ground that a process server has failed to demonstrate the integrity and honesty necessary to hold a license.  Plaintiffs assert that DCA does not always provide process servers with hearings in connection with these renewal determinations.

Plaintiffs filed the original complaint in this action on February 26, 2014.  On March 7, the Court denied an application from Plaintiffs for a temporary restraining order and preliminary injunction enjoining the administrative enforcement of the City's process server laws and regulations.  Plaintiffs applied again for a preliminary injunction on March 21, which was denied on March 28.  Plaintiffs filed their Amended Complaint on May 19, 2014.  Defendants filed their motion to

6

dismiss on June 6.[1]   The motion was fully submitted on June 27.

## DISCUSSION

When deciding a motion to dismiss under Rule 12(b)(6), Fed. R. Civ. P., a court must "accept all allegations in the complaint as true and draw all inferences in the non-moving party's favor."  <u>LaFaro v. New York Cardiothoracic Grp., PLLC</u>, 570 F.3d 471, 475 (2d Cir. 2009).  To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009).  A complaint must do more, however, than offer "naked assertions devoid of further factual enhancement."  <u>Id.</u> (citation omitted).

I. <u>Absolute Immunity</u>

As a threshold matter, Defendants contend that the claims against the City Defendants in their individual capacities are barred by the doctrine of absolute immunity.  Absolute immunity gives "public officials entrusted with sensitive tasks a protected area of discretion within which to carry out their responsibilities."  <u>Mangiafico v. Blumenthal</u>, 471 F.3d 391, 394

---

[1] Defendants Susan Kassapian and Michele Mirro, both administrative law judges, filed a separate motion to dismiss on June 6, which joined the Defendants' motion to dismiss in its entirety.

(2d Cir. 2006) (citation omitted).  Persons "performing
adjudicatory functions" are entitled to absolute immunity from
damages liability for their judicial acts.  Butz v. Economou,
438 U.S. 478, 514 (1978); Spear v. Town of W. Hartford, 954 F.2d
63, 66 (2d Cir. 1992) (applying Butz to local executive
officers).  Absolute immunity thus applies "to administrative
law judges."  New York Civil Liberties Union v. New York City
Transit Auth., 684 F.3d 286, 300 (2d Cir. 2012).  And "agency
officials performing certain functions analogous to those of a
prosecutor" may claim absolute immunity with respect to such
acts.  Butz, 438 U.S. at 515.  Absolute immunity "is not
overcome by allegations of bad faith or malice."  Mireles v.
Waco, 502 U.S. 9, 11 (1991).  It may be overcome, however, if
the individual acts "in the complete absence of all
jurisdiction."  Id. at 12.

     Plaintiffs' claims against the City Defendants in their
individual capacities are barred by the doctrine of absolute
immunity.  Those claims are predicated on prosecutorial and
adjudicatory functions undertaken by Defendants in enforcing the
laws governing City process servers.  See Butz, 438 U.S. at 514.

     Plaintiffs contend that the City Defendants are not
entitled to absolute immunity because they "acted with a
complete absence of jurisdiction."  This contention rests on the

Plaintiffs' argument that the enforcement of the Administrative Code provisions that apply to process servers may only occur in criminal court.  Because this argument is groundless for the reasons explained below, the City Defendants are entitled to absolute immunity.  Accordingly, the claims against Defendants in their individual capacities are dismissed.

## II.  Statutory Interpretation

Plaintiffs' Amended Complaint is primarily predicated on the contention that Administrative Code § 20-106(a) ("Section 106(a)") requires all enforcement of City process server laws and regulations to occur in criminal court.  Based on this interpretation of Section 106(a), Plaintiffs contend that the DCA acts ultra vires in administratively enforcing those rules.  Plaintiffs predicate their Section 1983 and RICO claims on this proposition.  A description of Section 106(a) and the statutory framework regulating process servers in the City follows.

Title 20 of the Administrative Code governs the oversight of City licensees regulated by DCA.  New York City, N.Y., Code § 20 et seq. ("Title 20").  Chapter one of Title 20 ("Chapter One") of the Administrative Code is entitled "License Enforcement," and contains provisions for the enforcement of regulations that apply to licensed entities generally.  See id.

9

§ 20-101, <u>et seq</u>.  Chapter two of Title 20 ("Chapter Two")

contains provisions applicable to specific classes of licensed

entities.  There are thirty-two classes of licensees regulated

under Chapter Two, including, for example, owners of sidewalk

cafés, auctioneers, owners of laundries, locksmiths, and debt

collectors.  <u>See id.</u> § 20-201, <u>et seq.</u>  Subchapter 23 of Chapter

Two governs the conduct of licensed process servers and provides

for penalties for violations of laws and regulations applicable

to process servers.  <u>Id.</u> 20-403 <u>et seq.</u>

At least three provisions of the Administrative Code

address the enforcement of the laws and regulations related to

entities licensed under Title 20.  Section 106(a) provides for

criminal penalties for violations of any provision of Chapter

Two or associated regulation:

> <u>Except as otherwise specifically provided in chapter
> two of this title</u>, or in subdivision b of this
> section, any person, whether or not he or she holds a
> license issued under chapter two, who violates any
> provision of chapter two or any regulation or rule
> promulgated under it shall, upon conviction thereof,
> <u>be punished for each violation by a fine of not less
> than twenty-five dollars nor more than five hundred
> dollars, or by imprisonment not exceeding fifteen
> days</u>, or both; and any such person shall be subject
> also to a civil penalty in the sum of one hundred
> dollars for each violation, to be recovered in a civil
> action.

<u>Id.</u> § 20-106 (emphasis supplied).

Administrative Code § 20-104(e) ("Section 104(e)") provides

10

the DCA with authority to <u>administratively</u> enforce violations of provisions of Chapter Two:

> e. (1) <u>The commissioner</u> shall be authorized, upon due notice and hearing, to <u>suspend, revoke or cancel any license</u> issued by him or her in accordance with the provisions of chapter two and <u>to impose or institute fines or civil penalties</u> for the violation of (i) any of the provisions of chapter two of this title and regulations and rules promulgated under chapter two of this title . . . .
>
> (5) Any of the remedies provided for in this section shall be in addition to any other remedies provided under any other provision of law.

<u>Id.</u> § 20-104(e) (emphasis supplied).

Finally, Administrative Code § 20-106(d) ("Section 106(d)") authorizes the City's Corporation Counsel to bring a civil action to enjoin violations of Title 20.  It provides that "[t]he corporation counsel is authorized to bring an injunction proceeding to restrain or enjoin any violation of this title." <u>Id.</u> § 20-106(d).

The New York City Charter ("Charter") also contains mechanisms to enforce the legal provisions in Title 20.  Charter § 2203(h)(1) ("Section 2203(h)(1)") vests DCA with the power to administratively impose penalties for the violation of laws or rules within its jurisdiction:

> (h)(1) Notwithstanding any inconsistent provision of law, <u>the department shall be authorized, upon</u>

11

> <u>due notice and hearing, to impose civil penalties</u>
> <u>for the violation of any laws or rules the</u>
> <u>enforcement of which is within the jurisdiction</u>
> <u>of the department</u> pursuant to this charter, the
> administrative code or any other general, special
> or local law. . . .  The remedies and penalties
> provided for in this subdivision shall be in
> addition to any other remedies or penalties
> provided for the enforcement of such provisions
> under any other law including, but not limited
> to, civil or criminal actions or proceedings.

New York City, N.Y., Charter § 2203(h)(1) (emphasis supplied).

Plaintiffs contend that Section 106(a) requires all process server violations to be adjudicated in criminal court because that Section provides for criminal penalties of "not less than twenty-five dollars nor more than five hundred dollars, or by imprisonment not exceeding fifteen days" "[e]xcept as otherwise specifically provided in chapter two of this title."  Id. § 20-106 (emphasis supplied).  Plaintiffs argue that because there is no specific authorization for the administrative adjudication of process server violations in Chapter Two, the City's administrative enforcement of its process servers rules is unauthorized.[2]

Plaintiffs have misread the clause "except as otherwise

---

[2] Plaintiffs' proposed construction of Section 106(a) is not limited to process servers; it would apply as well to the DCA's authority to administratively adjudicate violations by other entities licensed under Title 20.

specifically provided" in Section 106(a).  That clause serves
the limited purpose of referencing other criminal penalty
provisions in Chapter Two which impose different criminal
penalties for violations of rules governing the conduct of
specific licensed entities.  The clause does not foreclose
administrative or civil enforcement of process server rules by
DCA.

The Administrative Code "has the force and effect of
statute" under New York law.  Guzman v. Haven Plaza Hous. Dev.
Fund Co., Inc., 69 N.Y.2d 559, 566 (1987).  When interpreting a
state statute, a court must "predict how the forum state's
highest court would decide the issues before us and, to the
extent there is any ambiguity in the state statutes under
consideration, to carefully predict how the highest court of the
state would resolve the uncertainty or ambiguity."  Sprint PCS
L.P. v. Connecticut Siting Council, 222 F.3d 113, 115-16 (2d
Cir. 2000) (citation omitted).  "Our cardinal function in
interpreting a New York statute is to ascertain and give effect
to the intent of the legislature."  Kuhne v. Cohen & Slamowitz,
LLP, 579 F.3d 189, 193 (2d Cir. 2009) (citation omitted).  "As
the clearest indicator of legislative intent is the statutory
text, the starting point in any case of interpretation must
always be the language itself, giving effect to the plain

13

meaning thereof."  Id. (citation omitted).  New York's "Rules of
Construction" statute provides that "[a] statute or legislative
act is to be construed as a whole, and all parts of an act are
to be read and construed together to determine the legislative
intent."  N.Y. Stat. § 97.

> [E]ach section of a legislative act must be considered
> and applied in connection with every other section of
> the act, so that all will have their due, and conjoint
> effect.  To determine the intent of a statute, inquiry
> must be made of the spirit and purpose of the
> legislation, which requires examination of the
> statutory context of the provision.

New York State Psychiatric Ass'n, Inc. v. New York State Dep't
of Health, 19 N.Y.3d 17, 24 (2012) (citation omitted).
Similarly, the Supreme Court has explained that statutes should
be construed "in a manner that gives effect to all of their
provisions."  Mac's Shell Serv., Inc. v. Shell Oil Products Co.
LLC, 559 U.S. 175, 188 (2010) (quoting U.S. ex rel. Eisenstein
v. City of New York, New York, 556 U.S. 928, 932 (2009)).

      Section 106(a)'s authorization of criminal penalties does
not require process server violations to be adjudicated in
criminal court.  Nothing in the text of Section 106(a) requires
that construction.  The plain meaning of the clause at issue --
"[e]xcept as otherwise specifically provided in chapter two of
this title" -- is to allow the City Council to impose different
criminal penalties for violations of rules pertaining to

14

specific classes of Title 20 licensees.  Taking advantage of
this freedom to prescribe other penalties, Chapter Two contains
a number of criminal penalties pertaining to classes of
licensees which differ from the criminal penalties provided for
in Section 106(a), that is, a maximum penalty of a $500 fine or
15 days imprisonment.  See, e.g., id. § 20-401(1)(a) (home
improvement contractors operating without a license subject to
six months' imprisonment); id. § 20-275 (violations by licensed
dealers in second hand articles punishable by "imprisonment of
at least fifteen days"); id. § 20-472 (violations by general
vendors punishable by varying lengths of imprisonment).

The structure of the statutory license enforcement scheme
set forth in the Administrative Code and Charter reinforces this
reading of Section 106(a).  The Administrative Code and Charter
provide for multiple avenues of enforcement of the provisions of
Title 20.  In addition to the criminal powers conferred by
Section 106(a), the Administrative Code and Charter contain
provisions expressly granting DCA administrative as well as
civil authority to enforce rules governing entities licensed
under Title 20.  Plaintiffs' construction of Section 106(a)
would nullify those provisions and would violate the fundamental
cannon of statutory construction that a statute is to be
construed to "give[] effect to all of [its] provisions."  Mac's

15

Shell Serv., 559 U.S. at 176.

The legislative history of Title 20 further supports this reading of Section 106(a).  Title 20 contains a provision titled "Legislative Intent," which provides that "the Council finds" that "sanctions and penalties applied by the commissioner and by the courts . . . must be sufficient to achieve these above-mentioned purposes of licensing."  New York City, N.Y., Code § 20-101 (emphasis supplied).  The "Legislative Intent" provision further provides the Council's sense that "the commissioner of consumer affairs requires powers, remedies and sanctions which are equitable, flexible and efficient."  Id. (emphasis supplied).

In sum, the text, structure, and legislative history underlying Title 20 make clear that Section 106(a)'s provision of criminal penalties does not divest DCA of authority to administratively enforce the laws and regulations governing process servers in Title 20.  Plaintiffs' claims will now be evaluated in this light.


III. Section 1983

To sustain a claim under Section 1983, a plaintiff must show that she was "deprived of rights, privileges, or immunities secured by the Constitution and laws [of the United States]" by

16

a person acting under color of state law.  Burg v. Gosselin, 591
F.3d 95, 97 (2d Cir. 2010) (citation omitted).  "Section 1983 is
only a grant of a right of action; the substantive right giving
rise to the action must come from another source."  Singer v.
Fulton Cnty. Sheriff, 63 F.3d 110, 119 (2d Cir. 1995).
Therefore, "the first step in any § 1983 claim is to identify
the specific constitutional right allegedly infringed."  Pabon
v. Wright, 459 F.3d 241, 252–53 (2d Cir. 2006) (citation
omitted).  In addition, "[t]o prevail against a municipality on
a § 1983 claim, a plaintiff must demonstrate both an injury to a
constitutionally protected right and that the injury was caused
by a policy or custom of the municipality or by a municipal
official responsible for establishing final policy."  Hartline
v. Gallo, 546 F.3d 95, 103 (2d Cir. 2008) (citation omitted).

Plaintiffs' Section 1983 claims are predicated on four
alleged constitutional violations.  First, based on Plaintiffs'
contention that DCA acts without authority in administratively
enforcing process server laws and regulations, Plaintiffs
contend that Defendants deprive Plaintiffs of the Fourteenth
Amendment due process protections of a criminal trial.
Plaintiffs also claim that the failure to provide process
servers with hearings in connection with a refusal to renew a
license violates process servers' procedural due process rights.

They next allege that the requirement that process servers pass
a test before receiving a license violates their rights under
the Equal Protection Clause of the Fourteenth Amendment.
Finally, Plaintiffs contend that certain Administrative Code
provisions and City regulations pertaining to process servers
are unconstitutionally vague and violate Plaintiffs' right to
fair notice of what conduct is prohibited.  These claims will be
addressed in turn.

   A. Due Process

   Based on their theory that DCA acts ultra vires in
administratively enforcing process server laws and regulations,
Plaintiffs contend that they have been deprived of the
protections of criminal court in violation of their Fourteenth
Amendment due process rights.  Because DCA does not act ultra
vires, this claim fails.

   Plaintiffs also allege that Defendants violated their
procedural due process rights in denying "process server license
renewals without affording a hearing."  Specifically, Plaintiffs
allege that Defendants denied a license renewal to former
NYSPPSA member Robert Winckelmann ("Winckelmann") and "putative
class members" on the ground that they "failed to demonstrate .
. . the integrity and honesty necessary to hold a process server
license in the City of New York" without first affording a

18

hearing.  Defendants argue that Plaintiffs lack a
constitutionally protected interest in the renewal of a process
server license.[3]

At least two provisions of the Administrative Code are
addressed to the renewal of process server license applications.
Neither provision provides that a license renewal may not be
denied on another basis.  Administrative Code § 20-409(a)
("Section 409(a)") provides:

> A license issued hereunder may be suspended or revoked
> or its renewal denied by the commissioner at any time
> for failure of the licensee to comply with any rule,
> regulation or order promulgated by the commissioner.

New York City, N.Y., Code § 20-409(a).  And Administrative Code
§ 20-104(g) ("Section 104(g)") provides that DCA "may refuse to
issue or renew any license . . . after due notice and
opportunity to be heard" where a process server commits an act
of identity theft.

"A Fourteenth Amendment due process claim entails a two-
part inquiry to first determine whether plaintiff was deprived
of a protected interest, and, if so, what process was his due."
Rosu v. City of New York, 742 F.3d 523, 526 (2d Cir. 2014)
(quoting Logan v. Zimmerman Brush Co., 455 U.S. 422, 428

---

[3] Defendants argue in a footnote that NYSPPSA does not have
standing to bring this claim but do not suggest that the
individual named Plaintiff lacks standing to bring this claim on
behalf of putative class members.

(1982)).  The Court of Appeals has explained in the context of a City license that "[w]hen alleging a property interest in a public benefit, the plaintiff must show a legitimate claim of entitlement to such interest that is grounded in established law."  Spinelli v. City of New York, 579 F.3d 160, 169 (2d Cir. 2009) (citation omitted) (gun dealer license).

> This [legitimate claim of entitlement] inquiry stems from the view that a property interest can sometimes exist in what is sought -- in addition to the property interest that exists in what is owned -- provided there is a legitimate claim of entitlement to the benefit in question.  The analysis focuses on the extent to which the deciding authority may exercise discretion in arriving at a decision, rather than on an estimate of the probability that the authority will make a specific decision.

Zahra v. Town of Southold, 48 F.3d 674, 680 (2d Cir. 1995) (citation omitted).  "Usually, entitlement turns on whether the issuing authority lacks discretion to deny the permit, i.e., is required to issue it upon ascertainment that certain objectively ascertainable criteria have been met."  Natale v. Town of Ridgefield, 170 F.3d 258, 263 (2d Cir. 1999).  A party does not have "a property right in a possible future license" when a City agency "is vested with broad discretion to grant or deny a license application."  Sanitation & Recycling Indus., Inc. v. City of New York, 107 F.3d 985, 995 (2d Cir. 1997).

Plaintiffs' procedural due process claim fails because they

20

lack a protected interest in the renewal of a process server
license due to DCA's discretion in determining whether to grant
a renewal application.  Neither the Administrative Code nor the
Charter requires DCA to renew a process server license upon the
"ascertainment of objectively ascertainable criteria."  Natale,
170 F.3d at 263.  While the Second Circuit does not appear to
have directly addressed the issue of a property interest in a
license renewal application, other Circuits have extended the
principles regarding agency discretion to the existence of a
property interest in a renewed license.  See, e.g., Thornton v.
City of St. Helens, 425 F.3d 1158, 1164-65 (9th Cir. 2005)
("[A]n applicant does not have a property interest in the
renewal of a license if the reviewing body has discretion to
deny renewal or to impose licensing criteria of its own
creation."); compare Movers Warehouse, Inc. v. City of Little
Canada, 71 F.3d 716, 720 (8th Cir. 1995) (applying Minnesota law
to a liquor license)  ("Where, as here, state law places no
substantive limitations on the discretion of the licensing
authority to deny renewal, such an expectation is not a
protected property interest.") with Stauch v. City of Columbia
Heights, 212 F.3d 425, 430 (8th Cir. 2000) (finding property
interest in renewal of license to rental property when applicant
"need only meet three objective criteria to qualify" and city

has no discretion to deny renewal).

While the Administrative Code specifies certain circumstances under which DCA may refuse to renew license applications, it does not render those circumstances exclusive. Nor have the Plaintiffs pointed to any other provision in the Administrative Code that renders those or any other circumstances exclusive.  This conclusion is reinforced by the City Council's expression of intent that DCA's power over licensing be "equitable, flexible and efficient."  New York City, N.Y., Code § 20-101.  Moreover, New York state courts have broadly held that there "there is no property interest in the renewal of an expired [City] license and no constitutional due process right to a hearing."  Testwell, Inc. v. New York City Dep't of Bldgs., 913 N.Y.S.2d 53, 58 (1st Dept. 2010) (concrete testing laboratory license); see also M.S.B.A. Corp. v. Markowitz, 806 N.Y.S.2d 77, 78 (2d Dept. 2005) ("[D]ue process does not mandate . . . a hearing before the denial of a renewal license.") (mercantile license).  For these reasons, Plaintiffs lack any "legitimate claim of entitlement" to a renewed license which would create a cognizable property interest.  Spinelli, 579 F.3d at 169.[4]

---

[4] Moreover, process is available to Plaintiffs through the vehicle of a CPRL Article 78 proceeding to challenge an adverse

B. Equal Protection

Plaintiffs claim that their right to equal protection under the law guaranteed by the Fourteenth Amendment to the United States Constitution is violated because they are required to pass a test to obtain a process server license when other licensed entities are not required to take a test.  Plaintiffs claim that there "is no rational basis" for a process server to be required to pass a test to obtain a license when persons in other occupations requiring a license do not have to pass a test.

"Although the Equal Protection Clause is essentially a direction that all persons similarly situated should be treated alike, it does not require that all persons be dealt with identically, but it does require that a distinction made have some relevance to the purposes for which the classification is made."  Kwong v. Bloomberg, 723 F.3d 160, 169 (2d Cir. 2013) (quoting City of Cleburne, Tex. v. Cleburne Living Ctr., 473 U.S. 432, 429 (1985); Baxstrom v. Herold, 383 U.S. 107, 111 (1966)).  "[A] classification neither involving fundamental rights nor proceeding along suspect lines cannot run afoul of the Equal Protection Clause if there is a rational relationship

renewal determination.  In fact, Winckelmann has commenced an Article 78 proceeding in New York State Supreme Court, which is currently pending.

between the disparity of treatment and some legitimate

governmental purpose." Armour v. City of Indianapolis, Ind.,

132 S. Ct. 2073, 2080 (2012) (citation omitted). "A municipal

regulation classification subject to rational basis review must

be upheld against equal protection challenge if there is any

reasonably conceivable state of facts that could provide a

rational basis for the classification." Town of Southold v.

Town of E. Hampton, 477 F.3d 38, 54 (2d Cir. 2007) (citation

omitted). A state "need not produce evidence to sustain the

rationality of a statutory classification." Connolly v. McCall,

254 F.3d 36, 42 (2d Cir. 2001) (quoting Heller v. Doe by Doe,

509 U.S. 312, 320 (1993)). "Accordingly, it can be appropriate

to dismiss an equal protection challenge on the pleadings and

prior to discovery." Id.

     Plaintiffs' challenge to the process server license

examination requirement implicates neither a fundamental right

nor a suspect classification and therefore rational basis review

applies. See Armour, 132 S. Ct. at 2080. Defendants have set

forth a rational basis for the examination requirement. They

contend that the City Council imposed an examination requirement

on process servers because of "pervasive problems" in the

service of process in New York City. They point to a City

Council Report of March 2, 2010, which details "an increasing

24

prevalence of illegal 'sewer service' -- the deliberate failure to deliver the notification of a court filing followed by a false affidavit of successful delivery." NYC Council Comm. on Consumer Affairs Comm. Rep. of the Governmental Affairs Div. (March 2, 2010).  The City Council's finding of pervasive compliance problems in the service of process in New York City constitutes a rational basis for imposing an examination requirement to ensure that process servers adequately understand the applicable laws, even where an examination is not required in connection with other licensed professions.  This is sufficient to defeat the equal protection claim.[5]

C. Vagueness

Plaintiffs attack two Administrative Code provisions and five Rules of the City of New York, Title 6 ("Rules") as unconstitutionally vague, both facially and as applied.[6]  These claims fail as well.

---

[5] Moreover, it is doubtful that process servers are "similarly situated" to persons in other license classes -- such as pawnbrokers or owners of electronic stores -- who perform very different functions.  The Second Circuit, however, has advised that the "similarly situated" question is "generally" "a factual issue that should be submitted to the jury" or decided at summary judgment.  Harlen Associates v. Inc. Vill. of Mineola, 273 F.3d 494, 499 n.2 (2d Cir. 2001).  Accordingly, the question does not bear on the outcome of this motion.

[6] Plaintiffs also describe the provisions and Rules as "overbroad."  Overbreadth and vagueness are two separate

Plaintiffs challenge Administrative Code § 20-406.2, which governs "Responsibilities of process serving agencies."  In its challenged part, the provision reads:

> Every process serving agency licensed under this subchapter shall:
>
> a. Comply with all applicable state and federal laws;
> b. Be legally responsible for any failure to act in accordance with the laws and rules governing service of process by each process server to whom it has distributed, assigned or delivered process for service.

New York City, N.Y., Code § 20-406.2.  Plaintiffs also challenge Administrative Code § 20-101, which is titled "Legislative Intent," and provides in challenged part that:

> The council finds that for the protection and relief of the public from deceptive, unfair and unconscionable practices, for the maintenance of standards of integrity, honesty and fair dealing among persons and organizations engaging in licensed activities . . . licensing by the department of consumer affairs is a necessary and proper mode of regulation with respect to certain trades, businesses, and industries.

Id. § 20-101.  Plaintiffs contend that the "honesty and fair dealing" language is used arbitrarily by DCA to deny license renewals.

---

concepts.  See City of Chicago v. Morales, 527 U.S. 41, 52 (1999) (Stevens, J.).  Courts have not "recognized an 'overbreadth' doctrine outside the limited context of the First Amendment."  United States v. Salerno, 481 U.S. 739, 745 (1987).  Plaintiffs' overbreath allegations are not predicated on the First Amendment and do not state a claim.

Plaintiffs challenge Rule § 2-233, which sets forth record keeping requirements.  Plaintiffs complain that the requirement in this provision of "legible records" is unconstitutionally vague because "what may be legible to some, may not be legible to others."  Plaintiffs also complain that the provision does not specify in sufficient detail which abbreviations are permissible.  Plaintiffs challenge Rule § 2-233(a), which permits the amendment of electronic records, on the ground that it does not specify a time frame for the amendment of the records and permits process servers to be sanctioned before they have a chance to cure any deficiencies.  Plaintiffs challenge Rule § 2-233b(a), which requires process servers to carry "a device to establish electronically and record the time, date, and location of service or attempted service" as unconstitutionally vague because it requires the use of GPS or cell tower signals but does not make provision for when those signals are unavailable.  Plaintiffs challenge Rule § 2-234a(a)(3), which requires a process server to demonstrate "integrity and honesty in his or her process serving activities" on the ground that those terms are vague.  Finally, Plaintiffs attack Rule § 2-234a(b)(2)(v), which requires process serving agencies to report any process server "who does not comply with

the law governing process servers" on the ground that the underlying laws are susceptible to differing interpretations.[7]

"The Due Process Clause of the Fourteenth Amendment requires that every criminal statute (1) give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, and (2) provide explicit standards for those who apply the statute." Dickerson v. Napolitano, 604 F.3d 732, 741 (2d Cir. 2010)(quoting Grayned v. City of Rockford, 408 U.S. 104, 108  (1972)).  As Plaintiffs acknowledge in their opposition brief, courts generally disfavor facial vagueness challenges outside the context of the First Amendment.  See id. at 741-42.  "The first possible standard for evaluating facial challenges outside of the First Amendment context is that such challenges are permitted only when no set of circumstances exists under which the law would be valid."  Id. at 743 (citation omitted).  Under this test, the Plaintiffs must also plead that the statute is "unconstitutionally vague as applied." Id. at 744.  A facial challenge may also be permissible when a "constitutional right is implicated."  Id.

The Amended Complaint does not adequately allege that the challenged Administrative Code provisions and Rules are

---

[7] Plaintiffs also cite to Rules §§ 2-235 and 2-236 in the Amended Complaint, but do not propose a theory for why they are vague specifically.

unconstitutionally vague.  Plaintiffs' facial challenges easily fail under the high standard applicable to such challenges. Plaintiffs do not plead that the challenged provisions are "impermissibly vague in all of [their] applications."  Id. at 743.  And Plaintiffs have not pled plausible as-applied challenges under Rule 8, Fed. R. Civ. P.  The Amended Complaint does not articulate facts illustrating specific instances in which individual process servers have been subjected to an unconstitutionally vague provision of law as applied to them. See United States v. Rybicki, 354 F.3d 124, 129 (2d Cir. 2003).

Finally, Plaintiffs have not identified a constitutional right that is implicated by the enforcement of these provisions and Rules.  Plaintiffs rely solely on their contention that enforcement of licensing Rules through administrative processes instead of criminal proceedings violates the Due Process Clause. As explained above, Plaintiffs have failed to state a claim based on this theory.  As a result, Plaintiffs' vagueness claims fail.

IV.  RICO

Plaintiffs bring a claim under RICO.  Plaintiffs allege a violation of 18 U.S.C. § 1962(c).  To state a viable RICO claim pursuant to Section § 1962(c), a plaintiff must allege (1)

conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity.  Id. at § 1962(c).  An "enterprise" includes "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity."  Id. at § 1961(4).  "Racketeering" is defined to include a variety of activities.  The definition enumerates a number of federal statutory offenses, including four alleged here: extortion under the Hobbs Act, 18 U.S.C. § 1951, mail fraud under 18 U.S.C. § 1341, wire fraud under 18 U.S.C. § 1343, and witness tampering under 18 U.S.C. § 1512.

Plaintiffs' allegations of mail fraud, wire fraud, and Hobbs Act extortion are predicated on the notion that the City acts ultra vires in administratively enforcing the City's process server laws and regulations.  For the reasons described above, that proposition fails.[8]

---

[8] Plaintiffs' allegation that the Defendants are guilty of obstruction of justice under 18 U.S.C. §1512(b)(3) does not depend on the proposition that Defendants acted ultra vires in administratively enforcing process server laws and regulations. Plaintiffs allege that the DCA orders process servers not to publicly disclose the existence of subpoenas, and that in ex parte communications City officials urge administrative law judges to rule against process servers.  Plaintiffs' obstruction of justice allegation fails as a RICO predicate violation because, as explained below, a RICO claim cannot lie against a municipality and its officers acting in their official capacities.

More fundamentally, Plaintiffs' RICO claim fails because a civil RICO claim cannot be brought against a government entity or officials acting in official capacities.  This is because it is well settled that a government entity cannot form the requisite intent to be liable for any RICO predicate violation.  Although the Second Circuit has not addressed this issue in any published opinion, other Circuit courts and district courts in the Second Circuit have uniformly held that a municipality is not capable of forming the requisite intent to support the underlying offense giving rise to a civil RICO action.  See, e.g., Pedrina v. Chun, 97 F.3d 1296, 1300 (9th Cir. 1996) ("government entities are incapable of forming the malicious intent necessary to support a RICO action") (citation omitted); Liang v. City of New York, 2013 WL 5366394, at *12 (E.D.N.Y. Sept. 24, 2013); Frooks v. Town of Cortlandt, 997 F. Supp. 438, 457 (S.D.N.Y. 1998) (collecting cases and finding that "every court in this Circuit that has considered the issue has held that a municipality cannot form the requisite criminal intent to establish a predicate [RICO] act.").  And because a civil RICO claim cannot be brought against a municipality, it cannot be brought against municipal officials acting in their official capacities.  See Hafer v. Melo, 502 U.S. 21, 25 (1991) ("Suits against state officials in their official capacity . . . should

31

be treated as suits against the State.").  Plaintiffs did not respond to this argument in their opposition brief.

  V. Eighth Amendment

     Plaintiffs claim that Defendants' enforcement of the City process server laws and regulations constitutes a violation of the Excessive Fines Clause of the Eighth Amendment to the United States Constitution.  Plaintiffs' Amended Complaint does not clearly articulate the basis for the Eighth Amendment claim, but Plaintiffs appear to base it on their allegation that DCA "impose[s] multiple punishments for the same offense," and "impose[s] monetary fines and/or civil penalties against Plaintiffs in excess of the amounts permitted under the Administrative Code."

> The touchstone of the constitutional inquiry under the
> Excessive Fines Clause is the principle of
> proportionality: The amount of the forfeiture must
> bear some relationship to the gravity of the offense
> that it is designed to punish.  The rule is that a
> punitive forfeiture violates the Excessive Fines
> Clause if it is grossly disproportional to the gravity
> of a defendant's offense.

United States v. Castello, 611 F.3d 116, 120 (2d Cir. 2010) (quoting United States v. Bajakajian, 524 U.S. 321, 334 (1998)) (citation omitted).

     Plaintiffs have failed to plausibly plead that Defendants

32

impose "grossly disproportionate" penalties on Plaintiffs. Plaintiffs' conclusory allegations of cumulative penalties and penalties in excess of statutory maximums are devoid of specific factual material in their support.  See Iqbal, 556 U.S. at 681 ("allegations [which] are conclusory [are] not entitled to be assumed true.").  Plaintiffs fail to provide examples of instances of the imposition of impermissibly cumulative penalties, or of instances in which fines were levied in excess of statutory maximums.  In light of the important public function provided by process servers, and the potential harm to litigants who are not served and found to be in default, Plaintiffs' bare allegations are inadequate to state a plausible claim that the process server penalties are disproportionate to the gravity of the offenses they are designed to punish, much less "grossly" disproportionate.  In opposition to this motion, Plaintiffs do not seek to preserve this claim.  For these reasons, Plaintiffs' claim for an Eighth Amendment Excessive Fines Clause violation is dismissed.

   VI.  <u>Supplemental Jurisdiction</u>

     Plaintiffs also bring several state claims.  They bring a claim for defamation under New York law, and assert several other challenges to Defendants' actions under state law.  A

33

federal district court's supplemental jurisdiction over state law claims is governed by 28 U.S.C. § 1367.  Under that provision, a district court "may decline to exercise supplemental jurisdiction over a claim" if, inter alia, "the district court has dismissed all claims over which it has original jurisdiction."  28 U.S.C. § 1367(c)(3).  "In deciding whether to exercise jurisdiction over supplemental state law claims, district courts should balance the values of judicial economy, convenience, fairness, and comity -- the 'Cohill factors.'"  Klein & Co. Futures, Inc. v. Bd. of Trade of City of New York, 464 F.3d 255, 262 (2d Cir. 2006) (citing Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350, (1988)).  "It is well settled that where . . . the federal claims are eliminated in the early stages of litigation, courts should generally decline to exercise pendent jurisdiction over remaining state law claims."  Klein & Co. Futures, 464 F.3d at 262.

> It is well to recall that in the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine -- judicial economy, convenience, fairness, and comity -- will point toward declining to exercise jurisdiction over the remaining state-law claims.

Pension Ben. Guar. Corp. ex rel. St. Vincent Catholic Med. Centers Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc., 712 F.3d 705, 727 (2d Cir. 2013).

34

The federal claims having been dismissed, this Court declines to exercise supplemental jurisdiction over Plaintiffs' state law claims.  This litigation is at an early stage, and principles of judicial economy do not counsel in favor of the exercise of jurisdiction.  There is no reason why convenience favors resolution of the state law claims in federal court as opposed to New York state court.  And issues of fairness and comity do not weigh in either direction.

## CONCLUSION

Defendants' June 6, 2014 motion to dismiss all federal claims is granted.  The Court declines to exercise supplemental jurisdiction on the state law claims.  The Clerk of Court shall close the case.


SO ORDERED:

Dated:   New York, New York
         August 18, 2014


                              _____
                                        DENISE COTE
                              United States District Judge